LAWRENCE G. WASDEN
ATTORNEY GENERAL

STEVEN L. OLSEN, ISB #3586
DAYTON P. REED, ISB #10775
SCOTT ZANZIG, ISB #9361
Deputy Attorneys General
954 W Jefferson, 2nd Floor
P.O. Box 83720
Boise, ID  83720-0010
Telephone:     (208) 334-2400
Facsimile:     (208) 854-8073
steven.olsen@ag.idaho.gov
dayton.reed@ag.idaho.gov
scott.zanzig@ag.idaho.gov

Attorneys for Defendants

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| LINDSAY HECOX, and JANE DOE with her next friends JEAN DOE and JOHN DOE,<br><br>Plaintiffs,<br><br>v.<br><br>BRADLEY LITTLE, in his official capacity as Governor of the State of Idaho; SHERRI YBARRA, in her official capacity of the State of Idaho and as a member of the Idaho State Board of Education; THE INDIVIDUAL MEMBERS OF THE STATE BOARD OF EDUCATION, in their official capacities; BOISE STATE UNIVERSITY; MARLENE TROMP, in her official capacity as President of Boise State University; INDEPENDENT SCHOOL DISTRICT OF BOISE CITY #1; COBY DENNIS, in his official capacity as superintendent of the Independent School District of Boise City #1; THE INDIVIDUAL MEMBERS OF THE | Case No. 1:20-cv-00184-DCN<br><br>**MEMORANDUM IN SUPPORT OF MOTION TO DISMISS** |

**MEMORANDUM IN SUPPORT OF MOTION TO DISMISS – 1**

| | |
|---|---|
| BOARD OF TRUSTEES OF THE INDEPENDENT SCHOOL OF DISTRICT OF BOISE CITY #1; in their official capacities; THE INDIVIDUAL MEMBERS OF THE IDAHO CODE COMMISSION, in their official capacities,<br><br>                    Defendants. | |

Plaintiffs bring a facial challenge to a newly-enacted statute that has not yet come into effect, but they lack standing, their claims are not ripe, and HB 500 will have indisputably constitutional applications under clear Ninth Circuit precedent. Plaintiffs cannot establish an injury in fact because HB 500 cannot affect them until third parties act under not-yet-promulgated rules and regulations. Plaintiffs' claims are not yet ripe for similar reasons, their alleged future harms being fatally speculative. Finally, the Ninth Circuit Court of Appeals has directly upheld the exclusion of boys from girls' sports teams—a potential future application of HB 500's plain language.

For these reasons, Plaintiffs' complaint should be dismissed because the Court lacks subject-matter jurisdiction, and because Plaintiffs' complaint fails to state a claim upon which relief can be granted.

## I.     FACTUAL BACKGROUND

Plaintiffs brought this complaint shortly after HB 500 was passed, and before its July 1, 2020 effective date. They assert in their complaint that they intend to try out for women's sports teams in the fall, and that HB 500 will apply to them.

HB 500 defines three categories of sports teams in Idaho public schools and institutions of higher learning: men's, women's and mixed. It provides that "Athletic teams or sports designated for females, women, or girls shall not be open to students of the male sex." HB 500

**MEMORANDUM IN SUPPORT OF MOTION TO DISMISS – 2**

provides that the State Board of Education must promulgate rules and regulations to specify a process for situations in which a third party intends to bring a "dispute regarding a student's sex."

To guide the State Board of Education in promulgating these regulations, HB 500 instructs that the dispute can be resolved in one of two ways, either by "requesting that the student provide a health examination and consent form" or by some "other statement signed by the student's personal health care provider that shall verify the student's biological sex." HB 500 suggests factors that the health care provider may use "as part of a routine sports physical examination" in determining the athlete's biological sex, and provides that if a health care provider uses this process he would be allowed to base the verification on one of three factors—but it does not expressly require that this is the only process upon which that determination can be based: "The health care provider *may* verify the student's biological sex as part of a routine sports physical examination relying only on one (1) or more of the following: the student's reproductive anatomy, genetic makeup, or normal endogenously produced testosterone levels." (Dkt. 1, Exhibit A, § 33–6203(3)). The signed form or statement is all that is required to be provided to the school or institution in order to verify an athlete's sex; HB 500 does not require the health care provider to disclose to anyone any private medical information, including the underlying basis for the verification, or to use the three specified factors in providing an "other statement" verifying "the student's biological sex."

To support its distinction between men's, women's, and mixed teams, as well as the exclusion of male athletes from women's teams, HB 500 includes legislative findings regarding the physiological advantage male athletes have over female athletes, and the interest in providing opportunities for women to meaningfully participate in sports.

**MEMORANDUM IN SUPPORT OF MOTION TO DISMISS – 3**

## II.   STANDARD

### A.  12(b)(1)

A motion to dismiss based on non-justiciability is brought under Fed. R. Civ. Pro. 12(b)(1). *Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011) (explaining that Rule 12(b)(1) is the appropriate vehicle for a motion to dismiss based on lack of Article III standing); *Valentin v. Hosp. Bella Vista*, 254 F.3d 358, 362–63 (1st Cir. 2001) (explaining that Rule 12(b)(1) is the appropriate vehicle for a motion to dismiss on grounds of ripeness or mootness). When subject matter jurisdiction is challenged pursuant to Rule 12(b)(1), the plaintiff bears the burden of persuasion. *Indus. Tectonics, Inc. v. Aero Alloy*, 912 F.2d 1090, 1092 (9th Cir. 1990) (citing *McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936)).

"A Rule 12(b)(1) jurisdictional attack may be facial or factual. . . . In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). In resolving a facial attack, the Court must accept the factual allegations of the complaint as true and draw all reasonable inferences in plaintiffs' favor. *Doe v. Holy See*, 557 F.3d 1066, 1073 (9th Cir.2009).

"By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Meyer*, 373 F.3d at 1039. In resolving a factual attack on jurisdiction, the court need not presume the truthfulness of the plaintiff's allegations, and may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment. *Id.*

**MEMORANDUM IN SUPPORT OF MOTION TO DISMISS – 4**

B. **12(b)(6)**

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Dismissal is appropriate if there is a lack of any cognizable legal theory or a failure to plead sufficient facts to support a cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988). In deciding a motion to dismiss for failure to state a claim under Rule 12(b)(6), the court generally should not consider materials outside the pleadings. *See Cooper v. Pickett*, 137 F.3d 616, 622 (9th Cir. 1997). However, the court may consider attachments to the complaint and any document referred to in (even if not appended to) the complaint, where the authenticity of such a document is not in question. *Id.* at 622–23. A court may also take judicial notice of matters of its own records, *In re Korean Air Lines Co., Ltd., Antitrust Litigation*, 642 F.3d 685, 689 n.1 (9th Cir. 2011), and public records, such as records and reports of administrative bodies, *Barron v. Reich*, 13 F.3d 1370 (9th Cir. 1994).

### III. ARGUMENT

A. **Plaintiffs lack standing.**

The "irreducible constitutional minimum" of standing consists of three elements: (1) the plaintiff must have suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant and not the result of the independent action of some third party not before the court, and (3) that is likely to be redressed by a favorable judicial decision. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). The plaintiff has the burden of establishing all three elements. *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016). Standing is examined at the commencement of the litigation. *White v. Lee*, 227 F.3d 1214, 1243 (9th Cir. 2000).

To survive a 12(b)(1) motion at the pleading stage (a facial challenge to subject-matter jurisdiction) the plaintiff must have clearly alleged facts demonstrating each element of standing in the complaint. *Spokeo*, 136 S. Ct. 1540, 1547 (2016). Here, Plaintiffs have failed to clearly allege facts demonstrating injury in fact.

"To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Id.* at 1548 (quoting *Lujan*, 504 U.S. at 560). "A plaintiff threatened with future injury has standing to sue if the threatened injury is 'certainly impending,' or there is a 'substantial risk that the harm will occur.'" *In re Zappos.com, Inc.*, 888 F.3d 1020, 1024 (9th Cir. 2018) (quoting *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014)). A plaintiff cannot establish standing by alleging a threat of future harm based on a chain of speculative contingencies. *Nelsen v. King Cty.*, 895 F.2d 1248, 1251–53 (9th Cir. 1990).

Plaintiffs have not alleged an injury in fact because all alleged harms are conjectural, hypothetical, or based on a chain of speculative contingencies. Further, because HB 500 has not yet come into effect, all alleged harm is future harm—and Plaintiffs have not shown that the alleged injuries are certainly impending, or that there is a substantial risk of harm occurring.

The harm Plaintiffs assert in Counts I through IV is described as being subject to exclusion from participation on a women's sports team and being required to verify their sex. However, Plaintiffs acknowledge in their complaint that these two harms would occur only if a third party disputed their sex. (Dkt. 1, ¶¶ 144–45.) In order for this alleged harm to occur, Plaintiffs must try out for and make the respective teams, and a third party must dispute Plaintiffs' respective sexes according to regulations that the State Board of Education has not yet promulgated.

**MEMORANDUM IN SUPPORT OF MOTION TO DISMISS – 6**

Doe asserts her injury would occur when she was required to "submit to invasive treatment," or be "forc[ed]" to "undergo invasive internal and external reproductive examinations," (Dkt. 1, ¶¶ 144, 157, 168, 181). Her assertion ignores language in HB 500 that allows her to simply provide a health examination and consent form from her sports physical, or an "other statement" from her "personal health care provider," which the statute provides is sufficient to verify one's sex (Dkt. 1, Exhibit A, § 33–6203(3)). Her allegations assume a speculative string of contingencies that might not, and need not, come to pass.

Hecox asserts her injury would occur when a dispute resulted in her ultimately being excluded from participation on the team. (Dkt. 1, ¶¶ 144–45, 180.) While possible in the future, this outcome is far from imminent. Hecox has not alleged that she has been accepted onto the cross-country or track team.[1] She has not alleged that a third party has disputed her sex, nor could she until the statute comes into effect. She has not alleged that any such dispute has been properly brought, nor could she until the State Board of Education promulgates the rules governing such disputes.

The future harm asserted under Counts I through IV is contingent on speculations about the actions of third parties under a regulatory scheme that has not been promulgated yet. It is speculative and hypothetical, not imminent.

---

[1] Additionally, although Hecox alleges that she is otherwise eligible to participate on the women's team, her conclusory allegation does not allege facts sufficient to support this. For example, she does not allege facts—including dates—showing that she has been undergoing hormone treatment for one calendar year prior to participation, as would be required under NCAA regulations. Further, she has not alleged sufficient facts to show that she would be otherwise eligible in light of Title IX. Her participation on a women's team may be precluded by Title IX, making her ineligible to participate before even considering HB 500. The United States Department of Education recently opined that allowing transgender high school athletes in Connecticut to participate in women's sports violated the rights of female athletes under Title IX (see *US: Transgender Sports Inclusion Violates Others' Rights*, ASSOCIATED PRESS, https://apnews.com/5c1d9682fb92ed9c277c7e139bdab9ed (May 28, 2020)).

**MEMORANDUM IN SUPPORT OF MOTION TO DISMISS** – 7

The harm alleged under Counts II and III include an allegation that Plaintiffs are "forced" to turn over private medical information to the government in order to play sports. (Dkt. 1, ¶¶ 157, 168.) However, this allegation is not based in HB 500's text, which requires a "health examination and consent form or other statement signed by the student's personal health care provider" when there is a dispute, and does not require that the health care provider expound further or disclose any underlying health information. *If* Plaintiffs make the respective teams and *if* either is subject to the dispute process to be described in future rules and regulations from the State Board of Education, the only people that need know the private medical information underlying the sex verification are the athlete and the doctor. The allegation that Plaintiffs would be required to disclose personal medical information is speculative at best, and is not supported by the text of HB 500.

Finally, Plaintiffs allege in Count V that HB 500 injures them by chilling them from participating in sports. However, this allegation conflicts with Plaintiffs' statement in their complaint that they both intend to try out for sports this fall. (Dkt. 1, ¶¶ 6–7.) If Plaintiffs no longer intend to try out for any sports this fall, then Counts I through IV would fail because Plaintiffs' alleged future injuries depend on attempting to participate in sports. If Plaintiffs intend to try out for sports this fall, then a future operation of HB 500 did not chill them after all. Plaintiffs cannot consistently assert both while alleging a future harm.

In summary, Plaintiffs have failed to allege facts sufficient to establish an injury in fact and have no standing. Therefore the Court lacks subject-matter jurisdiction based on the face of the complaint.

### B. Plaintiffs' claims are not ripe.

Motions raising the ripeness issue are brought under Rule 12(b)(1), and can be based on the complaint's allegations alone or supported by evidence. *St. Clair v. City of Chico*, 880 F.2d 199, 201 (9th Cir. 1989). "It then becomes necessary for the party opposing the motion to present affidavits or any other evidence necessary to satisfy its burden of establishing that the court, in fact, possesses subject matter jurisdiction." *Id.* The burden of establishing ripeness rests on the party asserting the claim. *Colwell v. Dep't of Health & Human Servs.*, 558 F.3d 1112, 1121 (9th Cir. 2009).

"[R]ipeness doctrine reflects both constitutional and prudential considerations." *Id.* at 1123. The constitutional aspect of ripeness is similar to the injury in fact requirement under Article III standing: it requires concrete legal issues presented in actual cases, not abstractions. *Id.* "A claim is not ripe for adjudication if it rests upon 'contingent future events that may not occur as anticipated, or indeed may not occur at all.'" *Texas v. United States*, 523 U.S. 296, 300 (1998) (quoting *Thomas v. Union Carbide Agricultural Products Co.*, 473 U.S. 568, 580–81 (1985)).

To determine whether a case is ripe under prudential ripeness, courts consider two factors: (1) the fitness of the issues for judicial decision, and (2) the hardship to the parties stemming from the withholding of court consideration. *Knapp v. City of Coeur d'Alene*, 172 F. Supp. 3d 1118, 1130 (D. Idaho 2016) (citing *Addington v. U.S. Airline Pilots Ass'n*, 606 F.3d 1174, 1179 (9th Cir.2010)).

Plaintiffs' claim is not yet ripe for similar reasons that they have failed to show an injury in fact. The alleged controversy has not yet become concrete. First, HB 500 is not yet effective. Second, once it is effective, HB 500 cannot have any effect on Plaintiffs until they have chosen

**MEMORANDUM IN SUPPORT OF MOTION TO DISMISS** – 9

to try out for a team, make the team,[2] and are subjected to a dispute over their respective sexes. For a dispute to be brought, a third party must comply with rules and regulations that are not yet promulgated by the State Board of Education. A chain of speculative contingencies lie between the time Plaintiffs filed their complaint and the hypothetical harm alleged. For this reason, this case is not ripe under Article III.

Further, the case is not yet fit for judicial decision. The State Board of Education's forthcoming rules and regulations may alleviate some or all of Plaintiffs' concerns. And because a third party will be required to comply with these regulations in order to dispute either Plaintiff's sex, a court needs the opportunity to determine whether the procedural requirements were met before Plaintiffs would suffer any of the alleged harms. Plaintiffs would need to choose to try out for sports and make teams before there would be any opportunity for a dispute. This all assumes that fall sports even take place—which is an uncertainty at this point in time.

Any hardship of withholding court consideration is minimal. Just as Plaintiffs desire preliminary relief in this case, they could seek similar preliminary relief if at some point the speculative contingencies are fulfilled and Plaintiffs are faced with a dispute brought properly through the forthcoming regulations.

This case is not ripe for purposes of subject-matter jurisdiction under Article III, and prudential concerns similarly weigh against ripeness. The complaint must be dismissed for lack of subject-matter jurisdiction.

---

[2] As explained in Note 1, *supra*, Hecox has not alleged sufficient facts to establish that, setting aside HB 500, she would be otherwise eligible to participate. She has not alleged facts by which the Court can determine that she has been participating in hormone therapy for a full calendar year as required under NCAA rules, and she has not alleged sufficient facts to show that Boise State University could allow her to participate in tryouts in August without violating Title IX. Her eligibility, independent of HB 500, is entirely speculative based on the facts of her complaint.

**MEMORANDUM IN SUPPORT OF MOTION TO DISMISS – 10**

**C. Plaintiffs' facial challenge to HB 500 fails because its provisions can be constitutionally applied.**

Plaintiffs' complaint should be dismissed under Rule 12(b)(6) because their facial challenge of HB 500 fails.

Plaintiffs bring a facial challenge against HB 500. Plaintiffs' prayer for relief asks the Court to declare the provisions "of HB 500 as discussed above" unconstitutional, to enjoin their enforcement, and to require that publication of the statute note this unconstitutionality. (Dkt. 1, p. 53.) The complaint quotes provisions of HB 500, including the provision defining three separate teams for males, females, and coed; the provision stating "Athletic teams or sports designated for females, women, or girls shall not be open to students of the male sex"; and the provision describing disputes over an athlete's sex. (Dkt. 1, ¶ 87.)

The complaint's allegations assert injury to more than just the Plaintiffs; they contend HB 500 will negatively impact "those competing in women's sports," (Dkt. 1, ¶ 144), and "women and girls," (Dkt. 1, ¶¶ 157, 168).

Given Plaintiffs' allegations and their request that this court hold HB 500 unconstitutional as a whole, Plaintiffs' challenge to HB is facial. "A facial challenge to a legislative Act is, of course, the most difficult challenge to mount successfully, since the challenger must establish that no set of circumstances exists under which the Act would be valid." *United States v. Salerno*, 481 U.S. 739, 745 (1987). "In determining whether a law is facially invalid, we must be careful not to go beyond the statute's facial requirements and speculate about 'hypothetical' or 'imaginary' cases." *Washington State Grange v. Washington State Republican Party*, 552 U.S. 442, 449–50 (2008). The Ninth Circuit Court of Appeals has explained:

> Facial challenges are disfavored for two reasons. First, when considering complex and comprehensive legislation, we may not resolve questions of constitutionality

**MEMORANDUM IN SUPPORT OF MOTION TO DISMISS – 11**

>with respect to each potential situation that might develop, especially when the moving party does not demonstrate that the legislation would be unconstitutional in a large fraction of relevant cases. Second, facial challenges often rest on speculation. Consequently, they raise the risk of premature interpretations of statutes on the basis of factually barebones records, and threaten to short circuit the democratic process by preventing laws embodying the will of the people from being implemented in a manner inconsistent with the Constitution.

*Jackson v. City & Cty. of San Francisco*, 746 F.3d 953, 962 (9th Cir. 2014) (internal quotation marks and citations omitted).

Plaintiffs' facial challenge fails because there is a set of circumstances under which HB 500 constitutionally excludes some athletes from participating in women's sports. In *Clark ex rel. Clark v. Arizona Interscholastic Ass'n*, 695 F.2d 1126 (9th Cir. 1982), *cert. denied*, 464 U.S. 818 (1983), the Ninth Circuit held that an Arizona policy of excluding boys from playing on girls' high school sports teams was constitutionally permissible. The court explained that taking into account "actual differences between the sexes, including physical ones," is permissible, "not invidious, but rather realistically reflects the fact that the sexes are not similarly situated in certain circumstances." *Id.* at 1129 (quoting *Michael M. v. Sonoma County Superior Court*, 450 U.S. 464, 468–69 (1981)). The court acknowledged the important government interest in "redressing past discrimination against women in athletics and promoting equality of athletic opportunity between the sexes." *Id.* at 1131. Further, the court recognized that

>due to average physiological differences, males would displace females to a substantial extent if they were allowed to compete for positions on the volleyball team. Thus, athletic opportunities for women would be diminished. As discussed above, there is no question that the Supreme Court allows for these average real differences between the sexes to be recognized or that they allow gender to be used as a proxy in this sense if it is an accurate proxy.

*Id.* In conclusion, the court stated, "While equality in specific sports is a worthwhile ideal, it should not be purchased at the expense of ultimate equality of opportunity to participate in

**MEMORANDUM IN SUPPORT OF MOTION TO DISMISS – 12**

sports. As common sense would advise against this, neither does the Constitution demand it." *Id.* at 1132.

*Clark* squarely holds that excluding boys from the girls' team is constitutional, acknowledging the same government interests that HB 500 advances in its legislative findings, such as protecting women's opportunity to compete in sports in spite of physiological differences that give men a physical advantage on average. (Dkt. 1, pp. 57–58.) Setting aside the issue of transgender athletes, HB 500 specifically excludes boys from girls' teams. Any application of HB 500 to exclude boys from girls' teams would be a set of circumstances in which it operated constitutionally. Therefore, Plaintiffs' facial challenge fails.

## IV.   CONCLUSION

For the foregoing reasons, Plaintiffs' complaint should be dismissed with prejudice for lack of subject-matter jurisdiction or for failure to state a claim upon which relief can be granted.

DATED this 1st day of June, 2020.

                                        STATE OF IDAHO
                                        OFFICE OF THE ATTORNEY GENERAL

                            By:  /s/  *Dayton P. Reed*
                                   DAYTON P. REED
                                   Deputy Attorney General

CERTIFICATE OF SERVICE

       I HEREBY CERTIFY that on June 1, 2020, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which sent a Notice of Electronic Filing to the following persons:

Richard Eppink
AMERICAN CIVIL LIBERTIES UNION
OF IDAHO FOUNDATION
REppink@acluidaho.org

Gabriel Arkles
James Esseks
Chase Strangio
AMERICAN CIVIL LIBERTIES FOUNDATION
garkles@aclu.org
jesseks@aclu.org
cstrangio@aclu.org

Kathleen Hartnett
COOLEY LLP
khartnett@cooley.com

*Attorneys for Plaintiffs*

Elizabeth Prelogar
COOLEY LLP
eprelogar@cooley.com

Andrew Barr
COOLEY LLP
abarr@cooley.com

Catherine West
cwest@legalvoice.org

Matthew K. Wilde
Boise State University
Office of General Counsel
mattwilde@boisestae.edu

*Attorney for Defendants Boise State University and Marlene Tromp*

Daniel J. Skinner
Cantril Skinner
danskinner@cssklaw.com

*Attorney for Defendants Independent School District of Boise City #1, Coby Dennis, and the Individual Members of the Board of Trustees of the Independent School District of Boise City #!*

**MEMORANDUM IN SUPPORT OF MOTION TO DISMISS – 14**

Bruce D. Skaug
bruce@skauglaw.com
Raul R. Labrador
raul@skauglaw.com

Roger G. Brooks
rbrooks@ADFlegal.org
Jeffrey A. Shafer
jshafer@ADFlegal.org
ALLIANCE DEFENDING FREEDOM 15100

Kristen K. Waggoner
kwaggoner@ADFlegal.org
Parker Douglas*
pdouglas@ADFlegal.org
Christiana M. Holcomb
cholcomb@ADFlegal.org
ALLIANCE DEFENDING FREEDOM

*Attorneys for Proposed Intervenors*

/s/ *Dayton P. Reed*
DAYTON P. REED

**MEMORANDUM IN SUPPORT OF MOTION TO DISMISS – 15**