Richard Eppink (Bar No. 7503)
AMERICAN CIVIL LIBERTIES UNION
OF IDAHO FOUNDATION
P. O. Box 1897
Boise, ID 83701
T: (208) 344-9750 ext. 1202
REppink@acluidaho.org

Gabriel Arkles*
James Esseks*
Chase Strangio*
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
125 Broad St.,
New York, NY 10004
T: (212) 549-2569
garkles@aclu.org
jesseks@aclu.org
cstrangio@aclu.org

Kathleen Hartnett*
COOLEY LLP
101 California Street 5th Floor
San Francisco, CA 94111-5800
T: (415) 693-2000
F: (415) 693-2222
khartnett@cooley.com

Elizabeth Prelogar*
COOLEY LLP
1299 Pennsylvania Avenue, NW Suite 700
Washington D.C. 20004-2400
T: (202) 842-7800
F: (202) 842-7899
eprelogar@cooley.com

Andrew Barr*
COOLEY LLP
380 Interlocken Crescent, Ste. 900
Broomfield, CO 80021-8023
T: (720) 566-4000
F: (720) 566-4099
abarr@cooley.com

Catherine West*
LEGAL VOICE
907 Pine Street, Unit 500
Seattle, WA 98101
T: (206) 682-9552
F: (206) 682-9556
cwest@legalvoice.org

* Admitted *pro hac vice*

*Attorneys for Plaintiffs*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| LINDSAY HECOX, et al., | Case No.: 1:20-cv-00184-CWD |
| *Plaintiffs,* | **PLAINTIFFS' OPPOSITION TO MOTION TO INTERVENE [Dkt. 30]** |
| v. | |
| BRADLEY LITTLE, et al., | |
| *Defendants.* | |

**INTRODUCTION**

Proposed intervenors Madison ("Madi") Kenyon and Mary ("MK") Marshall seek to intervene to defend H.B. 500, but their alleged interests are insufficient under Federal Rule of Civil Procedure ("FRCP") 24.  And their claims that H.B. 500 will not be adequately defended are unwarranted, because Defendants ("the State") are already vigorously defending the law. These students' motion to intervene should be denied.

Madi and MK, who are both already attending college on athletic scholarships, claim a generalized and non-cognizable "concern for the survival in law of *female* as a truthful, objective, and historically recognizable category" and "the meaningfulness of female bodies as *female*." (Docket ("Dkt.") 30-1 at 17, 4 (emphasis in original).)  They also claim an interest in not having to directly compete against women who are transgender[1] who they characterize as "physiologically advantaged male participants." (Dkt. 30-1 at 7.)  But that is not a significantly protectable interest—and in any event, this purported interest would not be protected even if Defendants prevailed in this lawsuit.

No court has ever recognized any legal interest in cisgender people excluding transgender people from single-sex spaces or activities.  And MK

---

[1] Gender identity is the medical term for a person's internal, innate sense of belonging to a particular sex.  A **transgender** person has a gender identity that does not align with the sex they were assigned at birth.  A **cisgender** person has a gender identity that aligns with the sex they were assigned at birth.  (Dkt. 22-1 at 2 n.1.)

and Madi compete primarily against athletes from other states where the governing National Collegiate Athletic Association ("NCAA") policy allows women who are transgender to participate on women's teams. Thus, regardless the fate of H.B. 500, MK and Madi may have to compete against women who are transgender.

Finally, the State will fully protect the interests these two students claim. As a matter of law, the State's defense of its law is presumed adequate, and as a matter of fact, the State is vigorously defending H.B. 500. It has already filed both a motion to dismiss and an opposition to Plaintiffs' motion for preliminary injunction. The State's submissions, including its expert declaration, are consistent with proposed intervenors' stated objectives and tactics.[2]

Not only have proposed intervenors failed to establish the requirements for intervention as of right, but the Court should deny permissive intervention as well.

---

[2] The State has submitted a short response to proposed intervenors' Motion, arguing that intervention should be permitted for only one reason: to allow consideration of the claimed harm to proposed intervenors if H.B. 500 is enjoined. (Dkt. 44.) Notably, the State does not claim inadequate representation—a requirement for intervention. In any case, the State's filings already account for the interests of MK and Madi, including by reference to their declarations (Dkt. 41 at 20), which may be considered without granting them intervenor status to which they are not legally entitled. Plaintiffs do not seek to "silence opposing voices" (Dkt. 44 at 2) simply by arguing, correctly, that the equities support an injunction and that MK and Madi do not meet the legal requirements for intervention.

## BACKGROUND

H.B. 500

During the 2020 legislative session, the Idaho legislature passed two bills specifically designed to eliminate legal rights of transgender Idahoans. On March 30, 2020, Governor Little signed both bills, including H.B. 500, into law.  Idaho is now one of only three states that completely bars transgender people from updating their gender marker on state-issued birth certificates.[3]  And, through H.B. 500, it is the only state that categorically bars women and girls who are transgender from participating in school-sponsored women's athletics.

Prior to H.B. 500, women and girls who are transgender could compete in women's school sports in Idaho, including at both the high school and collegiate levels in Idaho.  The policies of both the NCAA and the Idaho High School Activities Association ("IHSAA") allow women who are transgender to compete in women's events after suppressing testosterone for one year.  That is still the governing NCAA policy and is comparable to elite sports policies

---

[3] Idaho's reenactment of a categorical bar on transgender persons' right to correct their birth certificates (H.B. 509) was a direct attack on a permanent injunction this Court issued prohibiting the State from imposing any such categorical bar.  (*See* Order at 13 n.7, *F.V. v. Barron*, No. 1:17-cv-00170-CWD (D. Idaho Jun. 1, 2020), ECF No. 57 (June 1, 2020 order clarifying injunction) ("HB 509 was drafted, at least in part, in response to and for the purpose of circumventing the Order and Judgment in this case").)  This Court clarified that the State "cannot avoid the Injunction's permanent prohibition on automatic denials of transgender individuals' applications by arguing the new law, HB 509, was not specifically enjoined by the Court's March 5, 2018 Order."  (*Id.* at 12.)

such as that of the International Olympic Committee.  (Dkt. 1 at ¶ 59.)  In contrast, Idaho now stands alone in categorically barring women and girls who are transgender from competing on women's athletic teams, even when they have undergone hormone therapy to suppress testosterone for one year or more (or have suppressed their endogenous puberty altogether).  (Dkt. 1 at ¶¶ 2, 73–74.)  So as of July 1, 2020, Idaho women who are transgender can qualify to compete on women's teams in the Olympics, but they are completely barred from competing on women's teams in Idaho's high schools and colleges.

On April 15, 2020, Plaintiffs Lindsay Hecox and Jane Doe filed this lawsuit.  Plaintiffs challenge H.B. 500 because, among other things, it violates their rights under the Equal Protection Clause.  Lindsay is a transgender woman who wants to run track and cross country in the upcoming school year at Boise State University, but is precluded from doing so under H.B. 500.  Jane is a cisgender woman and high school student athlete who does not want to endure invasive gender-testing under H.B. 500 to continue playing girls' sports.  Both Plaintiffs want to be treated equally to men and boys, but H.B. 500 singles out transgender women, and women and girls generally, for unequal treatment.  (Dkt. 1 at ¶ 2.)

Proposed Intervenors

Proposed intervenors Madi and MK moved to intervene as Defendants six weeks after Plaintiffs filed their Complaint.  (Dkt. 30.)  Like Lindsay and Jane, Madi and MK are "female athletes for whom sports is a passion and

life-defining pursuit." (Dkt. 30-1 at 2.)  Both Madi and MK are competitive

runners who run track and cross-country on athletic scholarships at Idaho

State University at Pocatello ("Idaho State"), which is a NCAA Division I

school. (*Id.*)

Neither Madi nor MK can assert that H.B. 500—which can regulate

only Idaho athletes and teams—will prevent them from having to compete

against women who are transgender.  Pertinent here, Idaho State (Madi and

MK's school) is one of ten member schools in the Big Sky Conference.  Only

one other school in Idaho competes in the Big Sky Conference—the

University of Idaho.[4]  Because most meets are intra-conference and the Big

Sky Conference includes universities in six states other than Idaho, Madi and

MK will continue to face the prospect of competing against women who are

transgender irrespective whether H.B. 500 is found to be unconstitutional or

otherwise invalid.

Indeed, regardless of this lawsuit's outcome, transgender college

athletes from schools outside of Idaho will remain eligible to participate in

collegiate competition consistent with their gender identity under governing

NCAA policy, including against Madi and MK and other Idaho student

athletes, and including at competitions in Idaho and around the country.

Likewise, H.B. 500 would have had no effect on the experience Madi and MK

---

[4] Boise State University, where Lindsay seeks to participate in cross country
and track, competes in the Mountain West Conference.

had competing against a transgender athlete (University of Montana student June Eastwood), because H.B. 500 does not regulate non-Idaho collegiate athletes or teams.

<u>Soule v. Connecticut Interscholastic Athletic Conference</u>

Proposed intervenors' counsel also represent cisgender runners from Connecticut who have sued to enjoin a Connecticut policy that permits high school athletes to compete consistent with their gender identity regardless of hormone treatment.  (*See* Complaint, *Soule v. Connecticut Association of Schools, Inc. ("Soule")*, No. 3:20-cv-00201-RNC (D. Conn. Feb. 12, 2020), ECF No. 1.)  The *Soule* plaintiffs seek, among other things, to block two specific women who are transgender, Andraya Yearwood and T.M., from competing in girls' track and field and to erase past records of their accomplishments.  (*Id.*)  Represented by some of Plaintiffs' counsel here, Andraya and T.M. moved to intervene as Defendants in *Soule* because of their significant legal and personal interests in their own records and ability to participate in sports at all.  (*Id.*, Motion to Intervene, ECF No. 36.)

During the hearing on the Motion to Intervene in *Soule*, the court admonished counsel at Alliance Defending Freedom to refrain, as a matter of civility, from gratuitously referring to Andraya and T.M. as "males," as opposed to "transgender athletes" or even "biological males."[5]  Counsel subsequently moved to disqualify the District Judge, claiming the instruction

---

[5] After the hearing, on April 22, 2020, the court granted Andraya and T.M.'s motion to intervene.  (*Soule*, Order, ECF No. 95.)

to not refer to Andraya and T.M. as "males" displayed a lack of impartiality.[6]
(*See id.*, Motion to Transfer/Disqualify/Recuse Judge, ECF No. 103.)  The rest
of the proceedings in *Soule* are on hold pending resolution of that motion.

## ARGUMENT

### I.     Proposed Intervenors Are Not Entitled to Intervention as of Right.

Proposed intervenors have failed to meet the requirements for
intervention as of right under FRCP 24(a)(2).  Intervention as of right is only
appropriate where (1) proposed intervenors' motion is timely, (2) proposed
intervenors have a "significantly protectable" interest related to the subject of
the action, (3) the disposition of the action may impair proposed intervenors'
ability to protect that interest, and (4) the existing parties in the lawsuit will
not adequately represent proposed intervenors' claimed interests.  *Southwest
Center for Biological Diversity v. Berg*, 268 F.3d 810, 817 (9th Cir. 2001).
"Failure to satisfy any one of the requirements is fatal to the application."

---

[6] Such instructions are not unusual.  *See*, *e.g.*, *Canada v. Hall*, No. 18-cv-
2121, 2019 WL 1294660, at *1 n.1 (N.D. Ill. Mar. 21, 2019) ("Although
immaterial to this ruling, the Court would be derelict if it failed to note the
defendants' careless disrespect for the plaintiff's transgender identity, as
reflected through implications that the plaintiff might not actually be
transgender and the consistent use of male pronouns to identify the plaintiff.
The Court cautions counsel against maintaining a similar tone in future
filings."); *Lynch v. Lewis*, No. 7:14-CV-24 (HL), 2014 WL 1813725 at *2 n.2
(M.D. Ga. May 7, 2014) ("The Court and Defendants will use feminine
pronouns to refer to the Plaintiff in filings with the Court.  Such use is not to
be taken as a factual or legal finding.  The Court will grant Plaintiff's request
as a matter of courtesy, and because it is the Court's practice to refer to
litigants in the manner they prefer to be addressed when possible.").

*Perry v. Proposition 8 Official Proponents*, 587 F.3d 947, 950 (9th Cir. 2009).

Here, the disposition of this case will not affect any "significantly protectable"

interests that the proposed intervenors could claim, and the State is already

adequately representing any cognizable interests they may have by

vigorously defending H.B. 500.

### A. Proposed Intervenors Do Not Have a Significantly Protectable Legal Interest That This Action's Disposition Could Impair.

The proposed intervenors claim interests that are neither cognizable

under the law nor impaired by the disposition of the present lawsuit. To

warrant intervention as of right, a movant must show both "an interest that

is protected under some law" and "a 'relationship' between its legally

protected interest and the plaintiff's claims." *California ex rel. Lockyer v.*

*United States*, 450 F.3d 436, 441 (9th Cir. 2006) (citing *Donnelly v. Glickman*,

159 F.3d 405, 409 (9th Cir 1998)). Proposed intervenors can show neither.

Proposed intervenors have articulated two interests. One is merely

symbolic: that allowing women who are transgender to participate in sports,

as is permitted under the NCAA policy that applies nationwide and the

Olympic policy that applies across the globe, "symbolically refutes or

discredits the meaningfulness of female bodies as *female*." (Dkt. 30-1 at 4.)

In other words, they personally prefer the trans-exclusive conception of

womanhood advanced in H.B. 500 because of what it symbolizes. This

claimed interest is not legally protectable, and proposed intervenors cite no

authority showing that it is.

The other interest Madi and MK assert, "to have and maintain female-only competitions and a competitive environment shielded from physiologically advantaged male participants to whom they stand to lose," distorts what H.B. 500 does.  (*See* Dkt. 30-1 at 7.)  This case (and H.B. 500) is not about excluding "physiologically advantaged male participants," (*id*.), from female athletics; it is about excluding women and girls who are transgender, regardless of their physiological characteristics or how good they are at sports.  In characterizing this interest, Madi and MK also misrepresent the alleged "physiological advantage" of the one transgender woman they have knowingly competed against.  June Eastwood, a University of Montana transgender athlete who has since graduated, was defeated by a cisgender woman in the very race in which Madi and MK also competed.[7]

Not only do proposed intervenors have no legally protectable interests, but the outcome of this lawsuit will not advance their claimed interests.[8] Cisgender students do not have any significant or legally protectable interest

---

[7] Madi and MK competed against June in the 1-mile at the 2020 Stacy Dragila Open during the 2020 Indoor Track & Field season.  June, who was a senior at the time, came in second, losing to MK and Madi's teammate, Molly Olsen.  MK came in twentieth and Madi came in eighth.  Though June outperformed both Madi and MK, they were also defeated by many cisgender women, and June was also bested by their cisgender teammate.  (See 2020 Stacy Dragila Open, athletic.net, https://www.athletic.net/TrackAndField/meet/394226/results/f/1/1mile (last accessed Jun. 8, 2020).)

[8] Madi's and MK's interests are wholly distinguishable from the intervenors' interests in *Soule*, because the resolution the plaintiffs in that case seek would bar Andraya and T.M. from competition altogether and strip away any record of their past achievements.

in excluding transgender students from single-sex spaces or activities.  *See*

*Parents for Privacy v. Barr*, 949 F.3d 1210, 1228 (9th Cir. 2020) (rejecting

Title IX and constitutional claims of cisgender students based on having to

share single sex spaces with transgender students); *Doe ex rel. Doe v.*

*Boyertown Area Sch. Dist.*, 897 F.3d 518 (3d Cir. 2018) (same), *cert. denied*,

139 S. Ct. 2636 (2019).  And as collegiate athletes attending an NCAA

member institution, both Madi and MK will compete against non-Idaho

teams and athletes who are subject to the rules of the NCAA, which allow

participation of women who are transgender after one year of testosterone

suppression.  (Dkt. 1 at ¶ 2.)  The NCAA policy is not challenged in this

lawsuit.  Madi and MK compete almost exclusively against schools that will

not be affected by H.B. 500, and thus, regardless of the outcome of this

lawsuit, they may still compete against women who are transgender.

Indeed, as their own submissions confirm, Madi's and MK's grievances

appear to lie primarily with the NCAA's policy, which will continue to require

them to compete against qualified transgender athletes regardless of the

outcome of this lawsuit.  (*See* Dkt. 30-2 at ¶ 29 ("[B]ecause NCAA rules do not

promise female athletes any advance notice if a male is registered to compete

on the women's team, it is entirely possible that I and other female runners

could face competition from other male athletes in the upcoming season").)

Nothing about the outcome of this case will "prevent any individual from

initiating suit against" either the NCAA or other entities responsible for the

injuries they claim. *United States v. City of Los Angeles, Cal.*, 288 F.3d 391,

402 (9th Cir. 2002). Because opposing the relief sought in this case does not

advance the proposed intervenors' claimed interest, they have failed to show

any legally protectable interest, which is a requirement to be granted

intervention as of right.[9]

### B.   The State Defendants Adequately Protect Proposed Intervenors' Claimed Interests.

"When the party and the proposed intervenor share the same 'ultimate

objective,' . . . a presumption of adequacy of representation applies." *ALDF v.

Otter*, 300 F.R.D. 461, 464 (D. Idaho 2014) (internal citations omitted). "[A]

very compelling showing to the contrary" is required to overcome this

presumption. *California ex rel. Lockyer*, 450 F.3d at 443–44 (internal

citations and quotation marks omitted); *see also Butler, Fitzgerald & Potter v.

Sequa Corp.*, 250 F.3d 171, 179–80 (2d Cir. 2001) ("[E]vidence of collusion,

adversity of interest, nonfeasance, or incompetence" is generally required "to

overcome the presumption of adequacy."). Here, the "ultimate objective" of

Madi, MK, and the State is identical—defending H.B. 500 and the principle

that women who are transgender should not be considered female. *Perry*, 587

F.3d at 951. Thus, the presumption of adequate representation applies, and

---

[9] Likewise, the goal of "prevent[ing] or simplify[ing] future litigation involving related issues," *City of Los Angeles, Cal.*, 288 F.3d at 398, is not achieved where, as here, the proposed intervenors' articulated injury is distinct from the question presented to the Court. Here, the only question before the Court is whether the State (through H.B. 500) *may* bar transgender athletes from competition, not whether an inclusive policy such as the NCAA's is unlawful.

proposed intervenors have failed to overcome it with a "very compelling showing" to the contrary.  Nor could they do so:  the State is vigorously defending H.B. 500.  The State has already moved to dismiss Plaintiffs' claims (Dkt. 40), retained an expert witness (Dkt. 41-1), and opposed Plaintiffs' motion for a preliminary injunction (Dkt. 41).

Proposed intervenors cite primarily out-of-circuit precedent to contend that their interests are not adequately represented by the State.  The main Ninth Circuit case they rely on, *Citizens for Balanced Use v. Montana Wilderness Ass'n*, 647 F.3d 893 (9th Cir. 2011), does not help them.  In *Citizens for Balanced Use*, the Court determined the Forest Service would not adequately represent the proposed intervenors' interests because the agency was only defending the policy at issue because it was compelled to by a prior district court decision—a decision that the Forest Service actually sought to overturn.  *Id.* at 899.  By contrast here, the State is willingly and aggressively defending H.B. 500 without being compelled to do so by any court ruling.  The State's preliminary injunction filing refers to the experiences of both proposed intervenors (who can be called as non-party witnesses), uses arguments that align with the positions MK and Madi expressed in their motion to intervene (positions that they can also express as *amici*), and includes a 68-page declaration from the same expert relied on by the proposed intervenors' counsel in *Soule*.  (*See Soule*, Motion for Preliminary Injunction Exhibit A, ECF No. 12-2 (submitting nearly identical

13

declaration of Dr. Gregory Brown in support of Plaintiffs' Motion for
Preliminary Injunction).)

"In order to make a 'very compelling showing' of the government's
inadequacy, the proposed intervenor must demonstrate a likelihood that the
government will abandon or concede a potentially meritorious reading of the
statute." *California ex rel. Lockyer*, 450 F.3d at 444.  The only evidence
proposed intervenors reference in support of their assumption that the State
will abandon a potentially meritorious defense of H.B. 500 is an opinion letter
about the bill from the Office of the Idaho Attorney General, which a
legislator requested.  (Dkt. 41 at 14–15.)  Though Idaho's Attorney General
must provide opinions to Idaho legislators upon request, Idaho Code § 67-
1401(6), he must also represent the State in all courts, Idaho Code § 67-
1401(1).  Fulfilling one of these duties does not mean that the Attorney
General will neglect the other.  As this Court has previously explained, there
is no reason to doubt the vigorous defense of a law by the Governor and
Attorney General, particularly where "the State's proactive filing of a motion
to dismiss . . . suggest[s] precisely the opposite conclusion." *ALDF*, 300
F.R.D. at 465.

Proposed intervenors also focus on their preferred tactics for defending
H.B. 500 (including what types of evidence they would like to proffer), but
"mere differences in litigation strategy are not enough to justify intervention
as a matter of right," *Perry*, 587 F.3d at 954 (cleaned up) (citation omitted), or

14

to overcome the presumption of the State's adequate defense.[10]  In any event, the State's filings confirm their alignment with Madi and MK's proposed tactics.  For example, proposed intervenors claim that "[n]one of Defendants have revealed that they share proposed intervenors' particular commitments on the personal and legal significance of the sex binary."  (Dkt. 30-1 at 11.) But the State's filings reveal precisely that.  The State argues that "HB 500 properly protects opportunities for biological females by creating a process designed to verify female status of participants in female-only sports."  (*See* Dkt. 41 at 2.)  Like proposed intervenors, the State focuses its argument on the idea that "[b]iological males have an indisputable physical advantage over biological females," which they claim "persists even in transgender females."  (*Id.*)  And, like proposed intervenors, the State refers to transgender women as "biological males" with physiological advantages over "biological females" in athletic competition.  (*See* Dkt. 41 at 2, 9, 13–18, 20.)[11]

Finally, Madi and MK cannot overcome the adequate defense presumption because Boise State uses inclusive and non-discriminatory

---

[10] To the extent proposed intervenors believe they have claimed expertise in relevant topics, the State can "acquire additional specialized knowledge through discovery (*e.g.*, by calling upon intervenor-defendants to supply evidence) or through the use of experts."  *ALDF*, 300 F.R.D. at 465 (citation omitted).  The proposed intervenors can also seek to share their "particular commitments" as *amici*.

[11] To the extent proposed intervenors are arguing that the State's defense will be inadequate if they do not refer to Lindsay and other women who are transgender by masculine pronouns, that is an objection to civility, not to the robust defense of H.B. 500.  *See infra* Section II.

language and engages in some inclusive and non-discriminatory practices.
(Dkt. 30-1 at 11–13.)  Attacking such language and policies is irrelevant to
the issues before the Court.  And introducing irrelevant matters and
disruptive tactics into this lawsuit will only impede, not advance, its civil,
professional, and efficient litigation.  Even if Madi and MK were correct in
their speculation that Boise State is less enthusiastic than the other
Defendants about defending H.B. 500, the Attorney General represents all of
the Defendants, including Governor Little, whose signature made H.B. 500
law.[12]  There is simply no reason to believe that the State's defense of this
suit will be "more aligned with Plaintiffs than proposed intervenors."  (Dkt.
30-1 at 10.)

## II.  Proposed Intervenors Are Not Entitled to Permissive Intervention.

Where the existing parties adequately represent proposed intervenors'
interests, or where "intervention will unduly delay or prejudice the
adjudication of the rights of the original parties," FRCP 24(b)(3), the court

---

[12] That an educational institution's assertion of non-discrimination on its
website has no bearing on the rigor of its defense of discrimination claims in
court is exemplified by the University of North Carolina at Chapel Hill
(UNC)'s defense of North Carolina House Bill 2 and House Bill 142, which
barred transgender individuals from public restrooms and other facilities in
the state of North Carolina.  *See generally Carcaño v. McCrory*, No. 16-cv-
236-TDS-JEP (M.D.N.C. Mar. 28, 2016).  UNC has extensive online resources
for LGBTQ students, https://lgbtq.unc.edu/about-us/center-history, including
an LGBTQ Center with resources comparable to those at Boise State.  Yet
UNC has spent four years vigorously defending House Bill 2 and House Bill
142.

should decline to exercise its discretion to grant permissive intervention. *See Perry*, 587 F.3d at 955 (citation omitted) ("[T]he court may also consider other factors in the exercise of its discretion, including 'the nature and extent of the intervenors' interest' and 'whether the intervenors' interests are adequately represented by other parties.'").

As explained above, the State will adequately represent the proposed intervenors' interests. The State is vigorously defending the law signed into force by Governor Little. The State has moved to dismiss and has opposed Plaintiffs' motion for a preliminary injunction. Thus, regardless whether proposed intervenors' participation will delay or prejudice Plaintiffs, denying permissive intervention is appropriate. *See ALDF*, 300 F.R.D. at 465 (finding no prejudice or delay, but ultimately determining that the Court "will deny [proposed intervenors'] motion for permissive intervention" because "the State and [proposed intervenors'] goals in this proceeding are identical, and the State can adequately represent those interests.").

Proposed intervenors' participation also will likely delay and prejudice the adjudication of Plaintiffs' claims. Plaintiffs filed their lawsuit within two weeks of the passage of H.B. 500 and promptly sought a preliminary injunction to prevent H.B. 500 from interfering with their participation in fall sports starting August 10. (*See* Dkt. 1 (dated April 15, 2020), Dkt. 22 (dated April 30, 2020).) In contrast, Madi and MK waited six weeks to seek

intervention.[13]  Both Lindsay and Jane will be prejudiced if they are unable to obtain a ruling from this Court before the fall sports season begins in August.  The briefing of the motions to dismiss and the motion for preliminary injunction are currently underway and any disruption in the existing schedule could delay resolution of Plaintiffs' emergency relief.

Further, counsel for proposed intervenors have a history of misgendering and referring to transgender persons by their former names, tactics that delay and impair efficient resolution of litigation.  *See supra* p. 6–7 (discussing delays in *Soule* following the court's admonishment of counsel's tactics, and counsel's subsequent motion to disqualify, which has left the remaining proceedings in that case on hold indefinitely).  The Motion to Intervene is replete with references to transgender women as "male," uses June Eastwood's deadname,[14] and refers to Plaintiff Lindsay Hecox using the masculine pronoun.  (*See* Dkt. 30-1 at 16 ("Hecox, though a person of the male sex, must be admitted to female competitions because *he* asserts a "female" gender identity) (emphasis added).)  These gratuitous insults, known to harm people who are transgender (*see, e.g.,* Dkt. 22-2 at ¶¶ 27–

---

[13] Plaintiffs appreciate that the Court expedited resolution of the motion to intervene.

[14] A **deadname** is the name that a transgender person was given at birth and no longer uses upon transitioning.  Deadname, Merriam-Webster, https://www.merriam-webster.com/dictionary/deadname (last accessed Jun. 8, 2020).  To refer to someone by their deadname is known as **deadnaming**. (*Id.*)

28),[15] will not advance this case's efficient resolution.  Instead, they will impair it, including by likely requiring the parties to litigate to prevent these abusive discovery tactics as well as likely unnecessarily emotionally harming existing parties.

Denial of permissive intervention is proper where intervention is likely to consume resources and delay proceedings.  *See, e.g., Perry*, 587 F.3d at 955–56 (affirming denial of permissive intervention where district court found that "the participation of [proposed intervenors] . . . in all probability would consume additional time and resources of both the Court and the parties that have a direct stake in the outcome of these proceedings"); *Coburn v. DaimlerChrysler Servs. N. A., L.L.C.*, 218 F.R.D. 607, 610 (N.D. Ill. 2003) ("Given the scope of the present lawsuit, intervention would greatly expand the scope of discovery and prolong and complicate the trial.  Plaintiffs and Defendant are entitled to a 'just' and 'speedy' determination.  Fed.R.Civ.P. 1.").

---

[15] *See T.B., Jr. v. Prince George's Cty. Bd. of Educ.*, 897 F.3d 566, 577 (4th Cir. 2018) (describing student's harassment of transgender female teacher by referring to her as "Mr.," "sir," "he," and "him," as "pure meanness."); *Hampton v. Baldwin*, No.18-cv-550, 2018 WL 5830730, at *2 (S.D. Ill. Nov. 7, 2018) (referencing expert testimony that "misgendering transgender people can be degrading, humiliating, invalidating, and mentally devastating"); *Prescott v. Rady Children's Hosp.-San Diego*, 265 F. Supp. 3d 1090, 1099 (S.D. Cal. 2017) (describing hospital staff's discrimination against patient "by continuously referring to him with female pronouns, despite knowing that he was a transgender boy and that it would cause him severe distress.").

Proposed intervenors can adequately present their interests and perspectives in this matter as *amici*.

## CONCLUSION

For the foregoing reasons, the Motion to Intervene should be denied.

Dated:  June 9, 2020

Respectfully submitted,
 /s/ Richard Eppink

Richard Eppink (Bar No. 7503)
AMERICAN CIVIL LIBERTIES UNION OF
IDAHO FOUNDATION

Gabriel Arkles*
James Esseks*
Chase Strangio*
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION

Kathleen Hartnett*
Elizabeth Prelogar*
Andrew Barr*
COOLEY LLP

Catherine West*
LEGAL VOICE

*Admitted *pro hac vice*

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 9th day of June, 2020, I filed the foregoing electronically through the CM/ECF system, which caused the following parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

Dan Skinner
danskinner@cssklaw.com
cssklaw@cssklaw.com
*Attorney for Boise School District,*
*Individual members of the Board of*
*Trustees of Boise School District,*
*Coby Dennis*

Steven L. Olsen
steven.olsen@ag.idaho.gov
W. Scott Zanzig
scott.zanzig@ag.idaho.gov
Dayton P. Reed
dayton.reed@ag.idaho.gov
*Attorneys for Bradley Little,*
*Sherri Ybarra,*
*Individual members of the State*
*Board of Education,*
*Boise State University,*
*Marlene Tromp,*
*Individual members of the Idaho*
*Code Commission*

Bruce D. Skaug
bruce@skauglaw.com
Raul Labrador
raul@skauglaw.com
Roger G. Brooks
rbrooks@ADFlegal.org
Jeffrey Shafer
jshafer@ADFlegal.org
Kristin Waggoner
kwaggoner@ADFlegal.org
Parker Douglas
pdouglas@ADFlegal.org
Christiana Holcomb
cholcomb@ADFlegal.org
*Attorneys for Proposed Intervenors*

DATED this 9th day of June, 2020        /s/ Richard Eppink