Bruce D. Skaug
bruce@skauglaw.com
ID Bar No. 3904
Raul R. Labrador
raul@skauglaw.com
ID Bar No. 5469
Skaug Law, P.C.
1226 E. Karcher Road
Nampa, ID 83687
(208) 466-0030
(208) 466-8903 Fax

Roger G. Brooks*
rbrooks@ADFlegal.org
NC Bar No. 16317
Jeffrey A. Shafer*
jshafer@ADFlegal.org
IL Bar No. 6230713
Alliance Defending Freedom
15100 N. 90th St.
Scottsdale, AZ 85260
(480) 444-0020
(480) 444-0028 Fax

Kristen K. Waggoner*
kwaggoner@ADFlegal.org
D.C. Bar No. 242069
Parker Douglas*
pdouglas@ADFlegal.org
MI Bar No. P83242
Christiana M. Holcomb*
cholcomb@ADFlegal.org
D.C. Bar No. 176922
Alliance Defending Freedom
440 First St. NW, Suite 600
Washington, D.C. 20001
(202) 393-8690
(202) 347-3622 Fax


*Admitted *pro hac vice*

*Attorneys for Proposed Intervenors*

## UNITED STATES DISTRICT COURT
## DISTRICT OF IDAHO

| | |
|---|---|
| LINDSAY HECOX, and JANE DOE with her next friends JEAN DOE and JOHN DOE, | |
| *Plaintiffs*, | Case No. 1:20-cv-00184-CWD |
| v. | |
| BRADLEY LITTLE, in his official capacity as Governor of the State of Idaho, et al., | **REPLY MEMORANDUM IN SUPPORT OF MOTION TO INTERVENE** |
| *Defendants*. | |

## INTRODUCTION

In their opening memorandum, Madison (Madi) Kenyon and Mary (MK) Marshall ("Proposed Intervenors" or "Intervenors") set out the Ninth Circuit's standard governing intervention of right, and facts amply establishing their right to intervene. Neither of Plaintiffs' arguments in opposition have merit, and combining two deficient responses does not change the conclusion.

Madi and MK are women who have suffered the negative impacts of competition by male athletes, who are protected by the Fairness in Women's Sports Act, and who will suffer the consequences if the protections of that Act are enjoined. Because these determinative facts cannot be denied, Plaintiffs attempt to distract from them by disputing the validity under Rule 24 of an interest that Madi and MK did not offer for that purpose (*i.e.*, their view of the physicality of "female"), and then by arguing that the Fairness Act does not actually protect Madi and MK's interests.

Plaintiffs next argue that the State will "adequately" represent the interests of Madi and MK, but to do so they must ignore the test for "adequacy" established by the Ninth Circuit. Proposed Intervenors' Mem. in Supp. of Intervention at 8-9, ECF No. 30-1 ("Intervenors' Mem."). It is not necessary to disparage the State's vigor in order to recognize that Madi and MK will bring additional arguments and facts to the litigation—and important ones.

Against the even lower bar of permissive intervention, Plaintiffs assert that Intervenors' extremely prompt motion was somehow late. It was not. And finally, Plaintiffs threaten that if Intervenors dare to speak clearly in this litigation about the biological, binary, sexual categories of humanity which give rise to the unfairness in athletics that the Fairness Act addresses, then Plaintiffs will disrupt the litigation by launching collateral motions to force Intervenors to speak using words according to Plaintiffs' preferred ideological framework of gender identity, rather

than within the framework of biological sex around which the Fairness Act is built. But Plaintiffs

threat is no basis to deny Proposed Intervenors' request to participate.

## I.     Proposed Intervenors are entitled to intervene as of right.

The Ninth Circuit embraces a liberal reading of Federal Rule 24 "in favor of

intervention," *United States v. Alisal Water Corp*., 370 F.3d 915, 919 (9th Cir. 2004), concluding

that this advances "efficient resolution of issues." *Forest Conservation Council v. U.S. Forest

Serv.*, 66 F.3d 1489, 1496 n.8 (9th Cir. 1995). The court follows Rule 24's advisory committee

note that "[i]f an absentee would be substantially affected in a practical sense by the

determination made in an action, he should, as a general rule, be entitled to intervene." *Sw. Ctr.

for Biological Diversity v. Berg*, 268 F.3d 810, 822 (9th Cir. 2001). Madi and MK will be

practically and substantially affected, and so are entitled to intervene as of right under this

standard.

### A.     Intervenors Madi and MK are entitled to intervene because Plaintiffs' claims threaten a significant interest of Intervenors that is protected by law.

As one critical factor in determining intervention as of right, the Ninth Circuit asks

whether the applicant has a "significant protectable interest" in the underlying action. *Prete v.

Bradbury*, 438 F.3d 949, 954 (9th Cir. 2006). That is, is there "a relationship between" a legally

protected interest of Intervenor "and the plaintiff's claims." *Cal. ex rel. Lockyer v. United States*,

450 F.3d 436, 441 (9th Cir. 2006). As set forth in their May 26, 2020 memorandum, Proposed

Intervenors have a personal stake as female athletes in the fair competition that is protected by

the Fairness in Women's Sports Act. Intervenors' Mem. at 7. If Plaintiffs are granted the relief

they demand, Intervenors will lose that protection, and will lose the experience of "level playing

field" competition during their collegiate athletic careers. *Id.* at 11. This is a direct and qualifying interest.[1]

Plaintiffs attempt to dodge this decisive equation by simply denying that the Fairness in Women's Sports Act is aimed to exclude male participants from female athletics. Instead, they assert, it excludes "women and girls who are transgender." Pls.' Opp'n to Mot. to Intervene at 10, ECF No. 45 (Opp'n Mem.). Plaintiffs may use words as they wish, but they cannot change the reality that the Fairness Act forbids athletes of the male sex from competing in events denominated for the female sex, and that Madi and MK are athletes of the female sex who are interested in and benefit from this legal protection. And the suggestion that, as a class, male athletes do not have a physiological advantage over female athletes is simply false, as amply demonstrated in the Declaration of Professor Gregory Brown.[2]

Alternatively, Plaintiffs propose that defeating Plaintiffs' claims "will not advance [the] claimed interests" of Madi and MK, *id.*, because their competitors from schools outside of Idaho are not subject to regulation under the Fairness Act. *Id.* at 11. But the fact that a particular law only partially protects an intervenor from harm does not mean—either logically or legally—that the intervenor has no interest in preserving that partial protection. The Fairness Act requires a

---

[1] Plaintiffs attempt to distract from this concrete and legally protected interest by discussing instead a more general concern about the unique experiences of women that was mentioned by Madi Kenyon in her declaration. *See* Opp'n Mem. at 9. As the Court will find, however, the only "interest" relied on by Intervenors in making this motion is their interest in enjoying athletic competition "shielded from physiologically advantaged male participants to whom they stand to lose." *See* Intervenors' Mem. at 6-7.

[2] *See* Expert Decl. of Dr. Gregory A. Brown, ECF No. 41-1. In fact, Plaintiffs implicitly concede the existence of the male physiological advantage each time they emphasize Plaintiff Hecox's claimed artificial suppression of endogenous testosterone production, or point to the NCAA regulations that require proof of extended pharmaceutical interference with this natural feature of male physiology. As Dr. Brown details, such hormonal manipulation does not neutralize the male physiological advantage. *E.g.*, *id.* at ¶¶11(c), 18, 20 (h)(m-p).

female-only composition to the Idaho teams on and against which Madi and MK compete—a
condition that will protect Intervenors and similarly situated Idaho women and girls against
unfair competition in one segment of athletic competitions. The law may and often does pursue
incremental improvements, and the beneficiaries of incremental protections are entitled to defend
them. If this were not a consequential law and protection, then Plaintiffs would not have brought
this lawsuit.

> **B.      The interests of Madi and MK are not adequately protected by the State**
> **defendants.**

Intervenors demonstrated in their opening memorandum that they are entitled to
intervene because it is not possible to say that the State "will undoubtedly make all of a proposed
intervenor's arguments." *Arakaki v. Cayetano*, 324 F.3d 1078, 1086 (9th Cir. 2003). Defendants
respond by ignoring that legal standard, and attempting to change the topic.

Plaintiffs emphasize that the State defendants share the "identical" "ultimate objective"
as Intervenors (i.e., defense of the Fairness Act) and are "vigorously" defending that Act. Opp'n
Mem. at 12-13, 17. But that much is equally true in most cases where intervention is granted, and
is not the test. What the caselaw identifies as relevant is the content of the advocacy, and whether
named parties are likely or unlikely to present all of a proposed intervenor's arguments.
Intervenors' Mem. at 8-9.

As Proposed Intervenors set out in their May 26, 2020 memorandum, the elected officials
and government entities named as defendants are not similarly situated to Madi and MK, have
not personally experienced the impact of unfair athletic competition, and are not postured to
make the full array of arguments that Proposed Intervenors will make. *Id.* at 10-11, 15-16.
Indeed, Intervenors have shown that State officials are likely to be constrained by both past
statements and current institutional obligations in a manner that will limit the State Defendants'

ability to unequivocally advance certain arguments that Intervenors intend to make in defense of the Act. *Id*. at 11-14.

Concretely, while Plaintiffs note that Defendants have filed memoranda opposing Plaintiffs' claims (again, a given in almost every case addressing intervention) as though this demonstrated adequacy of representation, examination of those memoranda simply confirms the different viewpoint and arguments that Intervenors bring to the table. It takes nothing away from the professionalism of the State's memoranda to observe that there is more to be said. For example, Defendants have not raised the argument, made by Proposed Intervenors in their [Proposed] Memorandum in Opposition to Plaintiffs' Motion for Preliminary Injunction dated June 9, 2020 at 9-17, ECF No. 46 ("Int. [Proposed] PI Opp'n"), that Plaintiffs have completely inverted the standard governing a facial equal protection challenge. Nor do Defendants bring into sharp focus—as Intervenors do—the fact that Plaintiffs are attempting to invoke Equal Protection to replace the rational division of sports by sex (justified by physiological differences between the sexes, as explained in the legislative findings of the Fairness Act) with an irrational division of sports by gender identity (justified by nothing coherent). *See* Intervenors' Mem. at 16; *see also* Int. [Proposed] PI Opp'n at 14-17.

The necessity of Intervenors' participation has if anything been heightened by the State Defendants' recent filings, in which Defendants appear to endorse a narrowing reading of the Act that Intervenors would argue is not justified by the wording of the Act, and would unjustifiably limit the protections accorded to Intervenors by the Fairness Act. *Cf. Lockyer*, 450 F.3d at 444 ("That the government will offer such a limiting construction of the Amendment is not just a theoretical possibility; it has already done so."). Defendants suggest that "HB 500 would come into play only if a 'dispute regarding [Hecox's] sex' were to arise," Resp. to Mot.

for Prelim. Inj. at 5, ECF No. 41, and that as a result "it is far from clear whether HB 500 would have any effect on [Hecox's] ability to participate" on the BSU women's cross-country team. *Id.* at 9-10. Intervenors, by contrast, believe that the Fairness in Women's Sports Act categorically prohibits Hecox's participation in female athletics in Idaho (Idaho Code § 33-6203(2)), and that the provision of a dispute resolution mechanism does not grant a license to violate the statute unless and until that provision is invoked. This divergent understanding of the Act is "far more than [a] difference[ ] in litigation strategy." *Lockyer*, 450 F.3d at 444. It is instead a disagreement that implicates the degree of protection that the Fairness in Women's Sports Act will provide to female athletes like Madi and MK. *See id.* at 445.

In short, Proposed Intervenors have made a strong showing that it is far from "undoubted" that Defendants will make "all of" the arguments that Madi and MK will make. *Arakaki*, 324 F.3d at 1086. It would be more accurate to say that Defendants "undoubtedly will *not*" make all of those arguments. Intervenors have more than demonstrated that the representation of their interests and positions by the State "may be" inadequate, satisfying the test in this Circuit. *Id.*; *see also Berg*, 268 F.3d at 824 (Intervenor need only show that "it is likely that Defendants will not advance the same arguments as Applicants.").

## II.      Madi and MK are entitled to permissive intervention.

To address the even more lenient standard governing permissive intervention (Intervenors' Mem. at 18), Plaintiffs add only two more arguments. Neither has merit.

Plaintiffs assert, without citation to caselaw authority, that Proposed Intervenors' motion to intervene—filed a mere six weeks after the initiation of the lawsuit—is tardy. Opp'n Mem. at 17-18. On the contrary, as the precedents reviewed by Intervenors in their opening memorandum confirm, Intervenors' motion was timely, and indeed expeditious. Intervenors' Mem. at 6. As

demonstrated by Intervenors' filing of their conditional opposition to Plaintiffs' motion for a preliminary injunction, granting Intervenors participation need not delay this litigation in the least.

Plaintiffs' next argue that the Court should deny permissive intervention because, they assert, counsel for Intervenors "have a history of misgendering" (Opp'n Mem. at 18) and "incivility" (Opp'n Mem. at 7) in a separate litigation.

Counsel for Intervenors have neither said nor intended anything discourteous. They have spoken with necessary accuracy. The problem addressed by the Fairness Act is exclusively concerned with athletics and objective facts about human bodies—specifically, the large difference in physical and athletic capabilities that the bodies of males possess. These advantages are sex-specific, not gender identity-specific. For this reason, not only the Fairness Act but the federal regulations that govern the application of Title IX to athletics (as well as many other laws) divide humanity, and accord rights, according to *sex*—not gender identity or any other subjective category. Meanwhile, the very definition that Plaintiffs offer of "transgender" is that an individual experiences a gender identity that is the opposite of his or her sex. Opp'n Mem. at 2 n.1.

So, to speak coherently about the goals, justifications, and validity of the Fairness in Women's Sports Act, it is necessary rather than "uncivil" to use words in a way that clearly differentiates between the objective and "immutable" categories of "sex," *Frontiero v. Richardson*, 411 U.S. 677, 686 (1973) (plurality)—that is, male and female—on the one hand, and the subjective, experiential category of gender identity on the other.

Further, it goes far beyond "civility" to demand that Proposed Intervenors (and the State as it defends the statute) surrender the game as the price of admission. Lawyers and the law

above all must believe that words matter, shape analytic frameworks, and affect outcomes. The Fifth Circuit in its *Varner* decision was correct that the choice to refer to a male individual as "female" does not merely confuse the discussion, but conveys "tacit approval" of the position that the subjective, experiential category of gender identity is more real, more important, than the objective, immutable category of sex. *See United States v. Varner*, 948 F.3d 250, 256 (5th Cir. 2020). In the context of athletics, the Fairness Act (like Title IX's athletics regulations) rests on the opposite premise, and both the State defendants and Proposed Intervenors are entitled to defend both the Act and its premise.

The Court will find a necessary clarity when counsel speaks about the (male) sex of transgender individuals who are competing against girls and women, but the Court will find no discourteous word written or spoken by counsel. If feelings are bruised by the bare fact of confrontation with an opposing point of view or factual disagreement (indeed, one that is codified in the challenged Act itself), this is regrettable, but sadly often inevitable in litigation. It is Plaintiffs who have chosen to inject themselves into public discussion and controversy on this topic by bringing this lawsuit.

Plaintiffs' suggestion that any reference to the sex (as opposed to gender identity) of an individual asserting a transgender identity is "mentally devastating" to that person (Opp'n Mem. at 19 n.15) is of doubtful relevance; Plaintiffs point to no authority that would permit them to appropriate either women's athletics or the speech of others as therapeutic tools. To the extent it is relevant, Plaintiffs' allegation of harm will be disputed as a matter of science. Dr. Levine explains in detail the scientific basis to believe that for many young people, at least, "affirmation" in a transgender identity in fact steers them down a life-path with severely negative

long term mental and physical health outcomes. Expert Aff. of Dr. Stephen B. Levine, M.D., ECF No. 46-2.[3]

Plaintiffs' assertion that Proposed Intervenor's presence in the lawsuit will "likely require[ ] the parties to litigate to prevent these abusive discovery tactics" (Opp'n Mem. at 19) is untrue, or is a perverse threat. Intervenors do not intend to try to compel Plaintiffs to use the language of sex and gender identity in the way that Intervenors believe is accurate. If Plaintiffs, by contrast, intend to precipitate motion practice to compel opposing parties to use language in the way that affirms Plaintiffs' theories, that sideshow controversy will be of their own choice, and that threat can hardly be a valid reason to exclude from the litigation and the courtroom the voice of young women athletes who have experienced unfair competition, who are protected by the Fairness in Women's Athletics Act, and who will be harmed if that Act is enjoined.

## CONCLUSION

For the foregoing reasons, Proposed Intervenors Madi Kenyon and MK Marshall respectfully request that this Court grant their application to intervene.

Respectfully submitted this 16th day of June, 2020.

By: */s/Bruce D. Skaug*

Roger G. Brooks*                          Bruce D. Skaug

---

[3] Plaintiffs' attempt to preemptively discredit Dr. Levine, *see* Plaintiffs' [Proposed] Supplemental Response to Motion to Intervene, ECF No. 51-1, is baseless. While it is true that one district court did not agree with Dr. Levine's conclusions on the facts of that particular case, in another case the First Circuit sitting *en banc* quoted and relied on Dr. Levine's expert opinions extensively. *Kosilek v. Spencer*, 774 F.3d 63 (1st Cir. 2014) (*en banc*). As his Affidavit discloses, Dr. Levine founded the Case Western Reserve University Gender Identity Clinic in 1974, has published extensively and for many years concerning gender dysphoria, chaired the Standards of Care Committee that developed an earlier version of the much-cited standards of care now published by the World Professional Association for Transgender Health (WPATH), has been retained by the State of Massachusetts as a consultant on the treatment of transsexual inmates since 2007, and was retained as a court-appointed expert on treatment of transgender inmates by the Honorable Mark Wolf of the Eastern District of Massachusetts in 2006. *See* Expert Aff. of Dr. Stephen B. Levine, M.D. at ¶¶ 1-5, ECF No. 46-2.

rbrooks@ADFlegal.org
NC Bar No. 16317
Jeffrey A. Shafer*
jshafer@ADFlegal.org
IL Bar No. 6230713
ALLIANCE DEFENDING FREEDOM
15100 N. 90th St.
Scottsdale, AZ 85260
(480) 444-0020
(480) 444-0028 Fax

Kristen K. Waggoner*
kwaggoner@ADFlegal.org
D.C. Bar No. 242069
Parker Douglas*
pdouglas@ADFlegal.org
MI Bar No. P83242
Christiana M. Holcomb*
cholcomb@ADFlegal.org
D.C. Bar No. 176922
ALLIANCE DEFENDING FREEDOM
440 First St. NW, Suite 600
Washington, D.C. 20001
(202) 393-8690
(202) 347-3622 Fax

*Attorneys for Proposed Intervenors*

bruce@skauglaw.com
ID Bar No. 3904
Raul R. Labrador
raul@skauglaw.com
ID Bar No. 5469
SKAUG LAW, P.C.
1226 E. Karcher Road
Nampa, ID 83687
(208) 466-0030
(208) 466-8903 Fax

*Admitted *pro hac vice*

## CERTIFICATE OF SERVICE

I hereby certify that on June 16, 2020, I filed the foregoing electronically through the CM/ECF system, which caused the following parties or counsel to be served by electronic means, as more fully reflected in the Notice of Electronic Filing:

Andrew Barr
abarr@cooley.com

Catherine West
cwest@legalvoice.org

Chase Strangio
cstrangio@aclu.org

Elizabeth Prelogar
eprelogar@cooley.com

Gabriel Arkles
garkles@aclu.org

James Esseks
jesseks@aclu.org

Kathleen Hartnett
khartnett@cooley.com

Richard Eppink
reppink@acluidaho.org

*Attorneys for Plaintiffs*

Dayton Reed
dayton.reed@ag.idaho.gov

Steven Olsen
steven.olsen@ag.idaho.gov

W. Scott Zanzig
scott.zanzig@ag.idaho.gov

*Attorneys for Defendants*

Matthew Wilde
mattwilde@boisestate.edu

*Attorney for Defendants Boise State University and Marlene Tromp*

s/ *Bruce D. Skaug*
Attorney for Proposed Intervenors