ERIC S. DREIBAND, IL Bar No. 6210456
Assistant Attorney General
Civil Rights Division

BART M. DAVIS, ID Bar No. 2696
United States Attorney
District of Idaho

PETER L. WUCETICH, ID Bar No. 10557
Assistant United States Attorney
District of Idaho

MATTHEW J. DONNELLY, IL Bar No. 6281308
Attorney
United States Department of Justice
Civil Rights Division
950 Pennsylvania Avenue, NW
Washington, DC 20530
Telephone: (202) 616-2788
Email: matthew.donnelly@usdoj.gov

Attorneys for the United States

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF IDAHO**

| | |
|---|---|
| LINDSAY HECOX, *et al.*,<br>Plaintiffs,<br>v.<br>BRADLEY LITTLE, *et al.*,<br>Defendants. | Case No. 1:20-cv-00184-DCN<br><br>**STATEMENT OF INTEREST** |

The United States files this Statement of Interest pursuant to 28 U.S.C. § 517, which authorizes the Department of Justice "to attend to the interests of the United States in a suit pending in a court of the United States." The United States enforces Title IX of the Civil Rights Act of 1964, 42 U.S.C. § 2000h-2, which authorizes the Attorney General to intervene in cases

of general public importance involving alleged denials of the "equal protection of the laws under the fourteenth amendment to the Constitution on account of . . . sex." *See also United States v. Virginia*, 518 U.S. 515, 523 (1996) (lawsuit by United States pursuant to Title IV of the Civil Rights Act, 42 U.S.C. § 2000c-6, raising equal-protection challenge to Virginia Military Institute's sex-based admission policy).

On March 30, 2020, Idaho enacted the Fairness in Women's Sports Act (Fairness Act), Idaho Code Ann. § 33-6202 *et seq*.[1] Plaintiffs filed their Complaint on April 15, alleging that that the Fairness Act violates, among other things, the Equal Protection Clause. Compl. ¶¶ 138-51, ECF No. 1. Plaintiffs moved for a preliminary injunction on their equal-protection claim on April 30. Pls.' Mem. in Support of Motion for Preliminary Inj. at 1, ECF No 22-1 (Br.). The United States submits this Statement to aid this Court in its application of the Equal Protection Clause in deciding the preliminary-injunction motion as well as in this case more generally.

**INTRODUCTION**

It is common ground that some sex-based classifications are constitutional because certain "differences between men and women" are "enduring." *Virginia*, 518 U.S. at 533. Applying this principle, the Ninth Circuit has held that the Equal Protection Clause permits an athletics policy that "preclude[s] boys from playing on girls' teams, even though girls are permitted to participate on boys' athletic teams" in light of the real biological differences between men and women. *Clark ex rel. Clark v. Arizona Interscholastic Ass'n*, 695 F.2d 1126, 1127 (9th Cir. 1982) (*Clark I*); *see also Clark ex rel. Clark v. Arizona Interscholastic Ass'n*, 886 F.2d 1191, 1192 (9th Cir. 1989) (*Clark II*) (same).

---

[1] The Fairness Act does not go into effect until July 2020. The United States' citations refer to where the Act will appear in the Idaho statutory code.

Plaintiffs neither challenge this precedent nor dispute that Idaho's Fairness Act adopts the same framework. Instead, they appear to ask this Court to create an exception to this settled understanding of the Equal Protection Clause when the biological males who seek to participate on a female-specific team identify as transgender. But the Fairness Act is on all fours with the policy the Ninth Circuit upheld in the *Clark* decisions, and nothing about an athlete's transgender status requires a different result here. The Equal Protection Clause does not require States to abandon their efforts to provide biological women with equal opportunity to compete for, and enjoy the life-long benefits that flow from, participation in school athletics in order to accommodate the team preferences of transgender athletes. Put differently, the Constitution does not require Idaho to provide the *special treatment* Plaintiffs request, under which biological males are allowed to compete against biological females if and only if the biological males are transgender.

**STATUTORY BACKGROUND**

Idaho's Fairness Act contains two key substantive provisions. First, covered athletic teams "shall be expressly designated as one (1) of the following based on biological sex: (a) Males, men, or boys; (b) Females, women, or girls; or (c) Coed or mixed." Idaho Code Ann. § 33-6203(1). Second, "[a]thletic teams or sports designated for females, women, or girls shall not be open to students of the male sex." *Id.* § 33-6203(2). The Fairness Act does not contain a comparable limitation for biological females who wish to participate on a team designated for biological males.

In codified legislative findings, the Idaho Legislature explained why it was adopting the Fairness Act. Idaho Code Ann. § 33-6202. Specifically, the Act explains: "Having separate sex specific teams furthers efforts to promote sex equality. Sex-specific teams accomplish this by providing opportunities for female athletes to demonstrate their skill, strength, and athletic

abilities while also providing them with opportunities to obtain recognition and accolades, college scholarships, and the numerous other long-term benefits that flow from success in athletic endeavors." *Id.* § 33-6202(12). In support of this conclusion, the Act cites authority establishing that inherent physiological differences between men and women generally include a difference in "strength, speed, and endurance" that results in "different athletic capabilities," which generally give men a significant advantage in head-to-head competition. *Id.* § 33-6202(1)-(10) (citations omitted). In addition, the Act's findings reference a 2019 study that concluded biological males retain their athletic performance advantage over biological females even after engaging in hormone treatments that attempt to diminish a biological male's natural testosterone. *Id.* § 33-6202(11) (citing Tommy Lundberg *et al.*, *Muscle strength, size and composition following 12 months of gender-affirming treatment in transgender individuals: retained advantage for the transwomen*, Karolinksa Institutet (Sept. 26, 2019)).

## DISCUSSION

### Idaho's Fairness Act Complies with the Equal Protection Clause.

### A. The Equal Protection Clause Does Not Prohibit States From Generally Requiring Separate Athletic Teams For Biological Females And Biological Males.

The Equal Protection Clause allows Idaho to recognize the average physiological differences between the biological sexes in athletics. Because of these differences, the Fairness Act's limiting of certain athletic teams to biological females provides equal protection because the limitation is based on the same exact interest that allows the creation of sex-segregated athletic teams in the first place—namely, the goal of ensuring that biological females have equal athletic opportunities. Plaintiffs' arguments to the contrary directly conflict with Ninth Circuit precedent. Indeed, the Ninth Circuit's *Clark* decisions upheld athletic policies that were materially indistinguishable from the Fairness Act.

**1.** The Equal Protection Clause provides that a State cannot "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. The Clause "is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). The converse, of course, is that States may treat differently situated persons differently. And for sex-based classifications, the Supreme Court has recognized that "the sexes are not similarly situated in certain circumstances." *Michael M. v. Superior Court*, 450 U.S. 464, 469 (1981) (plurality opinion). Notably, "[p]hysical differences between men and women . . . are enduring," and the "two sexes are not fungible." *Virginia*, 518 U.S. at 533 (citation omitted).

Accordingly, the Ninth Circuit has repeatedly rejected equal-protection challenges to an athletics policy that "preclude[d] boys from playing on girls' teams, even though girls are permitted to participate on boys' athletic teams." *Clark I*, 695 F.2d at 1127; *see also Clark II,* 886 F.2d at 1192. In upholding one such policy that prohibited biological males from participating on volleyball teams limited to biological females, the Ninth Circuit explained that "due to average physiological differences" between the sexes, "males would displace females to a substantial extent if they were allowed to compete for positions on the [female] team" and "athletic opportunities for women would be diminished." *Clark I*, 695 F.2d at 1131; *see also Clark II*, 886 F.2d at 1192 (reaffirming this conclusion).

**2.** In light of this background, the substantive provisions of Idaho's Fairness Act easily comply with the Equal Protection Clause. Even assuming *arguendo* that these provisions trigger intermediate scrutiny—on the theory that they permit only biological females (and not biological males) to participate on teams designated for the opposite sex, *see* Br. 16—they readily withstand this form of review. To survive this standard, Idaho must show only that the

alleged sex discrimination "serves important governmental objectives and that the discriminatory means employed are substantially related to the achievement of those objectives." *Virginia*, 518 U.S. at 524 (citation and quotation marks omitted). Plaintiffs' Motion does not dispute that the objective of the Fairness Act—"promot[ing] sex equality" through "[s]ex-specific teams" that "provid[e] opportunities for female athletes to demonstrate their skill, strength, and athletic abilities while also providing them with opportunities to obtain recognition and accolades, college scholarships, and the numerous other long-term benefits that flow from success in athletic endeavors"—is an important governmental objective. Idaho Code Ann. § 33-6202(12); *see* Br. 17. Nor could it, given that the Ninth Circuit has already held that "[t]here is no question" that "promoting equality of athletic opportunity between the sexes" is an "important governmental interest." *Clark I*, 695 F.2d at 1131; *see also Virginia*, 518 U.S. at 533 ("Sex classifications may be used to" promote "equal employment opportunity," and "to advance full development of the talent and capacities of our Nation's people.") (citations omitted). Instead, Plaintiffs contend only that the Fairness Act's alleged sex classification is "not substantially related" to this undeniably important goal. Br. 17. Each of their arguments lacks merit.

*First*, Plaintiffs contend that Idaho could use "circulating testosterone levels" as a better proxy for physical ability than biological sex. Br. 18. But even assuming that premise were true,[2] the Ninth Circuit has already held that biological sex is a constitutionally acceptable proxy

---

[2] Here, the Idaho Legislature found otherwise. In its findings, the Act explains: "The benefits that natural testosterone provides to male athletes is not diminished through the use of puberty blockers and cross-sex hormones. A recent study on the impact of such treatments found that even 'after 12 months of hormonal therapy,' a man who identifies as a woman and is taking cross-sex hormones 'had an absolute advantage' over female athletes and 'will still likely have performance benefits' over women." Idaho Code Ann. § 33-6202(11) (quoting Tommy Lundberg *et al.*, *Muscle strength, size and composition following 12 months of gender-affirming treatment in transgender individuals: retained advantage for the transwomen*, Karolinksa Institutet (Sept. 26, 2019)). Plaintiffs never address this study in their Motion.

that satisfies intermediate scrutiny's "substantially related" requirement. In *Clark I*, the Ninth Circuit explained that with respect to "average physiological differences," "there is no question that the Supreme Court allows for these average real differences between the sexes to be recognized or that they allow gender to be used as a proxy in this sense if it is an accurate proxy"—even if biological sex is not a *perfect* proxy in every case. 695 F.2d at 1131.

In fact, the Ninth Circuit expressly rejected the argument Plaintiffs advance here—namely, that the "substantially related" requirement demands that participation on athletic teams "be limited on the basis of specific physical characteristics other than sex." *Id.* Although the court of appeals knew that a "sexual classification could be avoided by classifying directly on the basis of physical differences such as height or weight," for example, *id.* at 1130, it explained that "[t]he existence of these alternatives shows only that the exclusion of boys is not *necessary* to achieve the desired goal." *Id.* at 1131. And given that "absolute necessity is not required before a gender based classification can be sustained" under intermediate scrutiny, "even the existence of wiser alternatives than the one chosen does not serve to invalidate the policy here since it is substantially related to the goal." *Id.* at 1131-32. Thus, even if Plaintiffs believe that the Fairness Act "may not maximize equality," the Equal Protection Clause entitles Idaho to make "trade-offs between equality and practicality" under intermediate scrutiny. *Id.* Accordingly, Plaintiffs' lengthy discussion of circulating testosterone levels (Br. 17-19) is beside the point.

*Second*, Plaintiffs assert (Br. 19-20) that the premise that biological males "are physically superior" to biological females is a "paternalistic" "sexual stereotype." Again, *Clark I* forecloses this assertion. The Ninth Circuit specifically held that the exclusion of biological males from teams designated for biological females did not rest on "archaic and overbroad' generalizations," "sexual stereotypes," "invidious discrimination against women," "or stigmatization of women."

695 F.2d at 1131 (citations omitted). Rather, that exclusion "simply recogniz[ed] the physiological fact that males would have an undue advantage competing against women." *Id.* Indeed, the Supreme Court itself engaged in similar reasoning in *Virginia* when it observed that admitting women to a previously all-male military academy "would undoubtedly require" that institution "to adjust aspects of the physical training programs." 518 U.S. at 550 n.19. And, the Fourth Circuit took the same approach in *Bauer v. Lynch*, 812 F.3d 340 (4th Cir. 2016), when it explained: "Men and women simply are not physiologically the same for the purposes of physical fitness programs. The Supreme Court recognized as much in its discussion of the physical training programs addressed in the [*Virginia*] litigation." *Id.* at 350.

Moreover, if Plaintiffs were correct that the Equal Protection Clause prevented recognizing these physiological differences, then Idaho (and every other State) would be constitutionally compelled to maintain *only* co-ed teams and sports—a situation that would obviously harm women. Indeed, the Ninth Circuit considered and rejected the same assertion because such a scheme would diminish opportunities for girls and women: It is "clear" that "males would displace females to a substantial extent" and thus "athletic opportunities for women would be diminished." *Clark I*, 695 F.2d at 1131.

*Third*, Plaintiffs urge (Br. 20-21) that the Fairness Act deprives biological males who wish to participate on female-only teams of various "benefits" associated with "school athletics"—namely, the availability of a forum for "students to develop skills, make friends, increase physical activity, and learn valuable life lessons." That is simply false, however, as the Fairness Act in no way deprives biological males who are transgender of those benefits, but rather simply requires them to obtain those benefits on a male-only or co-ed team, just as biological males who are not transgender must do. Indeed, for that reason, this is a far *easier*

case than in *Clark*, where the male plaintiffs had no ability whatsoever "to participate on their high school volleyball teams" because "[t]heir schools only sponsor[ed] interscholastic volleyball teams for girls." *Clark I*, 695 F.2d at 1127; *see also Clark II*, 886 F.2d at 1192 (same). The policy in the *Clark* cases obviously deprived those plaintiffs of the "benefits" associated with "school athletics" in the particular sport of their choice, but the Ninth Circuit still upheld the policy as substantially related to an important interest, given that those plaintiffs could participate in many other sports (including some not available to women). *See Clark II*, 886 F.2d at 1193 (noting that at the plaintiff's school, biological females were not permitted to compete on the wrestling team); *Clark I*, 695 F.2d at 1131 (explaining that in the plaintiffs' situation, "boys' overall opportunity" for athletic participation was "not inferior to girls'"). Plaintiffs here need not even choose a different sport; they simply must play on the team that corresponds to their biological sex, just like everyone else.

As the *Clark* cases confirm, the Equal Protection Clause permits Idaho to ensure equal athletic opportunities for girls and women by limiting some athletic competitions and teams to biological females. As part of ensuring equal opportunities, Idaho may prevent biological "males [from] displac[ing] females." *Clark I*, 695 F.2d at 1131. Plaintiffs have not provided and cannot provide any explanation for why the Equal Protection Clause entitles transgender athletes to these benefits at the expense of their biological female peers.

**B. An Athlete's Transgender Status Does Not Change The Analysis.**

Given the discussion above, Plaintiffs do not (and cannot) seriously maintain that every biological male has a constitutional right to participate on athletic teams limited to biological females. Instead, Plaintiffs appear to ask this Court to create an exception to equal-protection precedent for biological males who identify as transgender. But an athlete's transgender status does not alter the equal-protection analysis here. Refusing to provide *a special exemption* for

biological males if and only if they are transgender is hardly a denial of *equal protection* on the basis of sex, especially when such an exemption would *harm* biological females. Rather, Plaintiffs' requested special exemption would actually require Idaho to engage in discrimination on the basis of gender identity, by compelling the State to discriminate against biological males whose gender identity reflects their biological sex.

**1.** To start, Plaintiffs cannot evade the Ninth Circuit's *Clark* decisions by claiming that it is "unlikely that significant numbers" of biologically male transgender individuals will "ever participate in athletics in Idaho, let alone displace" female athletes, particularly with respect to scholarship opportunities. Br. 23. Even assuming that this speculative assertion were true, it would get Plaintiffs nowhere. The equal-protection analysis in the *Clark* decisions does not turn on whether biological males displace biological females across the board or only at the margins. *Contra* Br. 20 n.15 (contending that under *Clark I*, female athletes must be displaced "'to a substantial extent'" for a policy to survive intermediate scrutiny). Notably, in *Clark II*, the Ninth Circuit upheld the exclusion of a single male from the women's volleyball team on the ground that "[i]f males are permitted to displace females on the school volleyball team *even to the extent of one player like Clark*, the goal of equal participation by females in interscholastic athletics is set back." 886 F.2d at 1193 (emphasis added). That holding was consistent with the analysis in *Clark I*, where the Ninth Circuit explained that even though schools could allow "boys' participation . . . in limited numbers" while still preserving athletic opportunities for women, the Equal Protection Clause did not prohibit the categorical exclusion of biological males from teams limited to biological females. 695 F.2d at 1131.

Adopting Plaintiffs' desired exception also would considerably weaken the justification—plainly viewed as legitimate by the Ninth Circuit—for excluding biological males

who identify as male from female-specific teams. After all, Plaintiffs have not identified any non-transgender biological male who wishes to participate on female-only teams. Nor have Plaintiffs provided any reason to believe that the population of non-transgender biological males who wish to participate on female-only teams, whether in Idaho or elsewhere, is a substantial one. Yet the displacement of even some biological females from school athletics, and from all of the educational benefits that flow from such participation, would have real consequences for those women and for the ability of government to remedy past discrimination against women in athletic educational opportunities and "to advance full development of" their talents and capacities. *Virginia*, 518 U.S. at 533.

Moreover, to create Plaintiffs' proposed transgender exception, this Court would have to order Idaho to engage in discrimination on the basis of gender identity. Specifically, Plaintiffs would have this Court allow only those biological males who identify as female to participate on female-specific teams. Under those circumstances, Idaho would be denying non-transgender biological males (such as the *Clark* plaintiffs) the same opportunity solely because their gender identity reflected their biological sex. That penalty would be in addition to the penalty imposed on non-transgender biological females who are displaced from their teams by biological males.

**2.** Plaintiffs fare no better in repeatedly contending that the Fairness Act discriminates on the basis of transgender status. The Fairness Act's substantive provisions do not even mention a student's transgender status or gender identity, much less draw classifications on those bases. Idaho Code Ann. § 33-6203(1), (2). Indeed, Plaintiffs complain that the Act does "not permit consideration of gender identity." Br. 4. Instead, the Fairness Act's substantive provisions draw permissible classifications based on biological sex. Idaho Code Ann. § 33-6203(1), (2). The provisions prohibit *all* biological males from participating on a team

designated for biological females, regardless of whether those biological males are transgender or not. *Id.* Likewise, the provisions treat *all* biological females the same, regardless of whether those biological females are transgender or not. *Id.* An athlete's transgender status and gender identity are irrelevant.

The Fairness Act therefore does not, as Plaintiffs contend, exclude students from participating in sports "for no other reason than because they are transgender." Br. 21. Despite Plaintiffs' repeated declaration (*e.g*., Br. 1, 4, 10, 12) that the Act "categorically" "bars" all transgender athletes who identify as female from competing in any athletic activities, no such bar exists. Transgender athletes are permitted under the Act to compete in any athletic activities consistent with their biological sex. While the United States does not doubt the personal objection that some transgender athletes who identify as female may have to competing on male teams—though, under the Fairness Act, such teams are open to all biological males and all biological females—this personal objection does not transform the Fairness Act into a categorical bar. Transgender athletes retain the option of participating on teams that align with their biological sex or co-ed teams.

Even if the requirement that athletes participate on the teams that align with their biological sex were to have a disparate *impact* on transgender individuals, it is blackletter law that such an effect does not violate the Equal Protection Clause. As the Supreme Court has repeatedly explained, "the Fourteenth Amendment guarantees equal laws, not equal results." *Personnel Adm'r of Mass. v. Feeney*, 442 U.S. 256, 273 (1979). For this reason, the Supreme Court in *Washington v. Davis*, 426 U.S. 229 (1976), explained that "our cases have not embraced the proposition that a law or other official act, without regard to whether it reflects a racially

discriminatory purpose, is unconstitutional solely because it has a racially disproportionate impact." *Id.* at 239.

Thus, while Plaintiffs may dislike that the Fairness Act does "not permit consideration of gender identity," Br. 4—and thus does not exempt transgender athletes from the ordinary rule—the Equal Protection Clause guarantees *equal* treatment, not *special* treatment.

Contrary to Plaintiffs' assertion, *Karnoski v. Trump*, 926 F.3d 1180 (9th Cir. 2019), did not unsettle that basic principle by holding that a "policy forcing people to serve in the military consistent with 'biological sex' amounted to discrimination based on transgender status." Br. 14. Rather, the Ninth Circuit concluded only that the challenged policy "on its face treats transgender persons differently than other persons" based on its belief that the policy required only "*[t]ransgender persons*"—as opposed to all servicemembers—to "serve in their biological sex." 926 F.3d at 1201 (ellipsis omitted). In fact, the court in *Karnoski* stated that "[b]ecause the 2018 Policy discriminates on the basis of transgender status on its face, we need not address whether" facial discrimination on the basis of "gender dysphoria and transition" "constitutes discrimination against transgender persons." 926 F.3d at 1201 n.18. That express reservation would have been unnecessary if, as Plaintiffs maintain, *Karnoski* had held that any facially neutral requirement that all individuals adhere to the standards associated with their biological sex invariably constitutes discrimination based on transgender status.

Such a holding also would have put the Ninth Circuit at odds with the D.C. Circuit, which held that the same military policy did not constitute "a blanket transgender ban" simply because it required servicemembers "to serve in their biological sex." *Doe 2 v. Shanahan*, 755 Fed. Appx. 19, 24 (D.C. Cir. 2019) (per curiam). As the D.C. Circuit explained, "not all transgender persons seek to transition to their preferred gender"; rather, the typical definition of

"transgender persons"—including the one offered by Plaintiffs—is simply those individuals who "'identify[]' with a gender other than their biological sex." *Id.*; *see also* Br. 2 n.1 ("A transgender person has a gender identity that does not align with the sex they were assigned at birth."). As multiple sources confirm, "the transgender community is not a monolith in which every person wants to take steps necessary to live in accord with his or her preferred gender (rather than his or her biological sex)." *Doe 2 v. Shanahan*, 917 F.3d 694, 722 (D.C. Cir. 2019) (Williams, J., concurring in result) (collecting evidence); *see also id.* at 701 (Wilkins, J., concurring) (noting "the term transgender is often defined to include persons who identify with another gender but who do not wish to live or work in accordance with that preferred gender").

Nor does the Supreme Court's recent decision in *Bostock v. Clayton Cty., Georgia*, No. 17-1618, 2020 WL 3146686 (U.S. June 15, 2020), alter the equal-protection analysis here. First, *Bostock* said nothing about and did not consider anything about the Constitution. *See id.* at *17 (warning that "[t]he only question before us is whether an employer who fires someone simply for being homosexual or transgender has discharged or otherwise discriminated against that individual 'because of such individual's sex'" as that term is used in a particular provision of Title VII). Second, nothing in the Fairness Act discriminates on the basis of transgender status, so even assuming *arguendo* that *Bostock* had any relevance in a constitutional case, it would not help Plaintiffs.

In sum, the Fairness Act neither bars transgender athletes from competing in school athletics nor draws distinctions based on transgender status or gender identity. Instead, it draws distinctions solely based on biological sex, restricting *all* biological males from participating on athletic teams designated for biological females. And it does so in the same way and for the same purpose the Ninth Circuit recognized as valid in *Clark I*—"to promot[e] equality of athletic

opportunity between the sexes." 695 F.2d at 1131. Plaintiffs' challenge to the Act under the Equal Protection Clause must fail.

**CONCLUSION**

This Court should find that the substantive provisions of Idaho's Fairness Act comply with the Equal Protection Clause.

Respectfully submitted,

BART M. DAVIS, ID Bar No. 2696
United States Attorney
District of Idaho

*/s/ Peter L. Wucetich*
PETER L. WUCETICH, ID Bar No. 10557
Assistant United States Attorney
District of Idaho
1290 West Myrtle Street, Suite 500
Boise, ID 83702
Telephone: (208) 334-1211
Email: peter.wucetich@usdoj.gov

ERIC S. DREIBAND, IL Bar No. 6210456
Assistant Attorney General
Civil Rights Division

*/s/ Matthew J. Donnelly* -
MATTHEW J. DONNELLY, IL Bar No. 6281308
Attorney
United States Department of Justice
Civil Rights Division
950 Pennsylvania Avenue, NW
Washington, DC 20530
Telephone: (202) 616-2788
Email: matthew.donnelly@usdoj.gov

DATED: June 19, 2020

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on the 19th day of June, 2020, I filed the foregoing electronically through the CM/ECF system, which caused the following parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

*FOR THE PLAINTIFFS:*

Richard Eppink (REppink@acluidaho.org)

Gabriel Arkles (garkles@aclu.org)

Jame Esseks (jesseks@aclu.org

Chase Strangio (cstrangio@aclu.org)

Kathleen Hartnett (khartnett@cooley.com)

Elizabeth Prelogar (eprelogar@cooley.com)

Andrew Barr (abarr@cooley.com)

Catherine West (cwest@legalvoice.org)

*FOR THE PROPOSED INTERVENORS:*

Bruce D. Skaug (bruce@skauglaw.com)

Raul R. Labrador (raul@skauglaw.com)

Roger G. Brooks (rbrooks@ADFlegal.org)

Jeffrey A. Shafer (jshafer@ADFlegal.org)

Kristen K. Waggoner (kwaggoner@ADFlegal.org)

Parker Douglas (pdouglas@ADFlegal.org)

Christiana M. Holcomb (cholcomb@ADFlegal.org)

*FOR THE DEFENDANTS:*

Stephen L. Olsen (steven.olsen@ag.idaho.gov)

W. Scott Zanzig (scott.zanzig@ag.idaho.gov)

Dayton P. Reed (dayton.reed@ag.idaho.gov)

Matthew K. Wilde (mattwilde@boisestae.edu)

Daniel J. Skinner (danskinner@cssklaw.com)

*/s/ Matthew J. Donnelly*
MATTHEW J. DONNELLY
Attorney for the United States