LAWRENCE G. WASDEN
ATTORNEY GENERAL

STEVEN L. OLSEN, ISB #3586
DAYTON P. REED, ISB #10775
SCOTT ZANZIG, ISB #9361
Deputy Attorneys General
954 W Jefferson, 2nd Floor
P. O. Box 83720
Boise, ID  83720-0010
Telephone:     (208) 334-2400
Facsimile:      (208) 854-8073
steven.olsen@ag.idaho.gov
dayton.reed@ag.idaho.gov
scott.zanzig@ag.idaho.gov

    Attorneys for Defendants

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| LINDSAY HECOX, and JANE DOE with her next friends JEAN DOE and JOHN DOE,<br><br>    Plaintiffs,<br><br>v.<br><br>BRADLEY LITTLE, et al.,<br><br>    Defendants. | Case No. 1:20-cv-00184-DCN<br><br>**REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS (DKT. 40)** |

    This case should be dismissed because Plaintiffs lack standing, their claims are not ripe, and their facial challenges fail.

### I.  Plaintiffs Cannot Establish Standing and Ripeness

    Plaintiffs seek to rely on the somewhat relaxed standing principles that apply to certain Equal Protection challenges.  Plaintiffs rely on cases where plaintiffs challenged affirmative action policies regarding government contracts and university admissions.  They argue that they are like the plaintiffs who sought to invalidate laws providing preferences to racial minorities, who had standing to challenge the affirmative action policies because they were subject to a

REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS (DKT. 40) – 1

"barrier" that made it more difficult for them to do business with the government, *Ne. Fla. Chapter of Associated Gen. Contractors of Am. v. City of Jacksonville*, 508 U.S. 656 (1993), or because they were not able to compete for the spots in an academic program set aside for racial minorities after having been twice denied admission, *Regents of Univ. of California v. Bakke*, 438 U.S. 265 (1978). But these cases are inapposite. The majority in *Northeastern Florida* specifically addressed the *Bakke* decision, 508 U.S. at 665, and emphasized the narrowness of its holding, that "in the context of a challenge to a set-aside program, the 'injury in fact' is the inability to compete on an equal footing in the bidding process, not the loss of a contract." *Id.* at 666. This is not a case involving a racial set-aside program.[1]

---

[1] Plaintiff Doe also relies on *Susan B. Anthony List v. Driehaus*, 573 U.S. 149 (2014), to argue that she can establish standing despite the speculative nature of her claim. *See* Dkt. 55, pp. 11-12. But the circumstances in that case were very different. In *Susan B. Anthony*, plaintiffs were challenging a law that imposed criminal sanctions against a person who made false statements about political candidates. When determining that plaintiffs had standing, the court considered three other cases where the challenged laws also imposed criminal sanctions (and one making certain actions an unfair labor practice) and noted that "it is not necessary" for a person to "first expose himself to actual arrest or prosecution to be entitled to challenge a statute that he claims deters the exercise of his constitutional rights." *Id.* at 161 (citing *Steffel v. Thompson*, 415 U.S. 452, 459 (1974)).

It was against this factual backdrop, one where the plaintiff could suffer a criminal sanction for violating a statute, that the court stated that a plaintiff could bring a pre-enforcement suit when he "'has alleged an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by statute, and there exists a credible threat of prosecution thereunder.'" *Id.* at 160 (quoting *Babbitt v. Farm Workers*, 442 U.S. 289, 298 (1979)) (emphasis added). Plaintiffs omit the underlined portion of this quote. Further, when concluding that the plaintiffs had standing the Court found that the "threat of future enforcement . . . is substantial" *Id.* at 164. In the present case, there is *no* threat of criminal prosecution or other government enforcement proceedings against either Plaintiff, and no evidence suggesting any imminent threat that anyone will challenge either Plaintiff's sex.

For similar reasons, Plaintiffs' reliance on *Melendres v. Arpaio*, 695 F.3d 990 (9th Cir. 2012), is also misplaced. In *Melendres*, the defendants had a practice of targeting Hispanics for vehicle stops. Each of the plaintiffs had been subjected to those traffic stops, which the court determined violated their Fourth Amendment rights. In addition, plaintiffs presented evidence that the defendants had an ongoing policy of saturation patrols or sweeps targeting Latinos. All this evidence supported the district court's conclusion that "future injury was 'sufficiently likely' given the Defendants' stated policy and practice." *Id.* at 998. In contrast, in this case no one has

Moreover, even in Equal Protection claims challenging affirmative action,

> Article III standing to bring an equal protection challenge is not without limits. The rule that a plaintiff must assert a particularized injury, rather than a generalized grievance, applies with as much force in the equal protection context as in any other. Even if the government has discriminated on the basis of race, only those who are "personally denied" equal treatment have a cognizable injury under Article III.

*Braunstein v. Arizona Dep't of Transp.*, 683 F.3d 1177, 1185 (9th Cir. 2012) (internal citations and punctuation omitted).  Put another way, mere stigmatizing injury caused by an allegedly discriminatory law is not enough to establish standing; the plaintiff must establish that he or she actually and personally has been harmed.  *See Allen v. Wright*, 468 U.S. 737, 755 (1984).

In addition, a plaintiff must establish constitutional ripeness, which overlaps with standing.

> To satisfy the constitutional ripeness requirement, a case must present issues that are definite and concrete, not hypothetical or abstract.  Sorting out where standing ends and ripeness begins is not an easy task, so constitutional ripeness is often treated under the rubric of standing because ripeness coincides squarely with standing's injury in fact prong.

*Safer Chemicals, Healthy Families v. EPA*, 943 F.3d 397, 411 (9th Cir. 2019) (internal citations and punctuation omitted).

In *Safer Chemicals*, the plaintiffs sought to challenge yet-to-be promulgated EPA rules. To determine whether the plaintiffs could establish standing and ripeness, the court applied rules from "two analogous contexts," *id.* at 414, designed to decide whether "a claimed injury is actually and non-speculatively impending," thus making the claim justiciable. *Id.* at 415.

> In the context of pre-enforcement challenges to agency rules governing the behavior of regulated parties, we have recognized that neither the mere existence of a proscriptive statute nor a generalized threat of prosecution satisfies the case or controversy requirement.  Rather, for a claim to be ripe, the plaintiff must be subject to a genuine threat of imminent prosecution.  In evaluating the existence of any such genuine threat, we look at three criteria: (1) whether the plaintiff has

---

challenged either Plaintiff's sex and Defendants have no policy or practice to mount such challenges in the future.  A plaintiff's fear, unsubstantiated by evidence of imminent harm from a defendant's actions, does not create standing and jurisdiction.

REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS (DKT. 40) – 3

> articulated a concrete plan to violate the law in question; (2) whether the prosecuting authorities have communicated a specific warning or threat to initiate proceedings; and (3) the history of past prosecution or enforcement under the challenged statute.
>
> In the context of benefit-conferring rules, we have applied a "firm prediction rule" to determine constitutional ripeness. Under that rule, drawn from Justice O'Connor's concurring opinion in *Reno v. Catholic Social Services, Inc.* and adopted by our court in *Freedom to Travel Campaign v. Newcomb*, 82 F.3d 1431 (9th Cir. 1996), we ask whether we can make a firm prediction that the plaintiff will apply for the benefit at issue, and that the agency will deny the application by virtue of the challenged rule.

*Id.* at 414-15 (internal citations and punctuation omitted). The court concluded that plaintiffs could not establish standing and ripeness because the court could not accurately "predict whether Petitioners will be harmed in the way they claim." *Id.* at 415.

Plaintiffs' claims in this case fare no better. Neither Plaintiff can establish that they have been harmed by HB 500. Both allegedly fear future harm, but the fears are based on misinterpretations of the law and speculation about potential actions third parties not before the Court might take in the future.

Plaintiff Doe says she fears that under yet-to-be promulgated rules, (1) someone might challenge her sex, and (2) that she might then be required to undergo an unwanted medical examination. The first fear is purely speculative. There is no evidence that anyone intends to challenge her sex. The second fear is based on a misguided view of the law. There is no way the Court can firmly predict that anyone will challenge Doe's sex. And there is no valid basis to predict that even if someone did, Doe would be required to undergo an unwanted medical examination. The law does not require it; no official has communicated any warning or threat to require it; and there is no history of any official requiring it. Instead, Doe would be able to respond to any hypothetical challenge to her sex through the routine sports physical required of all athletes.[2]

---

[2] Defendants addressed Doe's flawed interpretation of HB 500 in their Response to Motion for Preliminary Injunction. *See* Dkt. 41, p. 6 & n.4. The flaw in Doe's argument is perhaps best demonstrated by simply comparing HB 500's original language to the amended language actually approved by the legislature and signed into law by the Governor. The bill's

REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS (DKT. 40) – 4

Plaintiff Hecox faces similar problems. She fears that the mere existence of HB 500 will prohibit her from trying out, regardless whether any person challenges her sex. Her argument depends entirely on her interpretation of HB 500 as self-executing. But HB 500 requires a third party to act before any portion of the statute would operate to preclude Hecox from participating on a women's team. It is true that the statute states that "Athletic teams or sports designated for females, women, or girls shall not be open to students of the male sex." Idaho Code § 33–6203(2). However, this provision has no independent enforcement mechanism. Instead, HB 500 provides for third parties to raise the issue through disputing an athlete's sex under section 33–

---

original and amended language are available at:
https://legislature.idaho.gov/sessioninfo/2020/legislation/H0500/

As originally introduced, section 33-6203(3) provided:

(3) If disputed, a student may establish sex by presenting a signed physician's statement that shall indicate the student's sex based solely on:

(a) The student's internal and external reproductive anatomy;

(b) The student's normal endogenously produced levels of testosterone; and

(c) An analysis of the student's genetic makeup.

After substantial amendment in the Senate, section 33-6203(3) provides:

(3) A dispute regarding a student's sex shall be resolved by the school or institution by requesting that the student provide a health examination and consent form or other statement signed by the student's personal health care provider that shall verify the student's biological sex. The health care provider may verify the student's biological sex as part of a routine sports physical examination relying only on one (1) or more of the following: the student's reproductive anatomy, genetic makeup, or normal endogenously produced testosterone levels. The state board of education shall promulgate rules for schools and institutions to follow regarding the receipt and timely resolution of such disputes consistent with this subsection.

The amendment makes clear that a disputed high school student is not limited to providing a physician's statement based solely on the three criteria mentioned. The "health examination and consent form" that accompanies every high school student athlete's required examination suffices. *See* Dkt. 41, Appendix 2.

REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS (DKT. 40) – 5

6203(3)[3]; or bringing a lawsuit for the deprivation of an athletic opportunity or retaliation under section 33–6205.  Third parties must act before HB 500 affects anyone's ability to participate on a women's team.  Hecox's alleged harm, the inability to participate on a women's team, depends on third parties taking actions that may never happen.

The harms that Plaintiffs allege depend upon contingent future events that may not occur as anticipated, or indeed may not occur at all.  *Texas v. United States*, 523 U.S. 296, 300 (1998).  It is by no means "inevitable" that someone will challenge either Plaintiff's sex, and there is no evidence upon which the Court could make a firm prediction that a third party will bring a challenge.  Plaintiffs lack standing to bring their claims for relief from alleged speculative, future harms, and those claims are not ripe at this time.[4]

## II.   Plaintiffs' Facial Challenges Must Be Dismissed

In addition to their standing and ripeness problems, Plaintiffs have no valid basis for their facial challenges to HB 500.

Plaintiffs argue that HB 500 can be found facially invalid, despite many of its applications being valid, because those valid applications are irrelevant to transgender people.  But that is plainly not the test for facial invalidity.  A law is only facially invalid if no set of circumstances exists under which it would be valid.  *United States v. Salerno*, 481 U.S. 739, 745 (1987).  Plaintiffs may not insist that the Court ignore what they concede are valid applications of HB 500 that happen to be inconvenient to their position.

---

[3] HB 500 has no effect on either Plaintiff until a dispute is brought.  However, there can be no dispute brought until rules and regulations are promulgated under the statute as to "the receipt and timely resolution" of these disputes. Idaho Code § 33–6203(3).

[4] Plaintiffs argue that the Court need not separately analyze both Plaintiffs' ability to establish standing and ripeness.  That might be true if both Plaintiffs were asserting identical claims, but they are not.  Their claims are markedly different.  Where multiple plaintiffs have different claims, each must establish standing in order to make his or her claims justiciable.  *See Leonard v. Clark*, 12 F.3d 885, 888 (9th Cir. 1994) (noting that even though district court determined union plaintiff had standing, the court was required to examine other plaintiffs' standing because union had waived certain rights at issue and therefore could not assert certain claims at issue).

REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS (DKT. 40) – 6

HB 500 provides that any student—not just transgender students—may be subject to a challenge to their sex if they participate in women's sports.  This includes male students who are not transgender.  And as the Ninth Circuit held in *Clark*, preventing males from participating in women's sports is constitutionally permissible.  *Clark ex rel. Clark v. Arizona Interscholastic Ass'n*, 695 F.2d 1126, 1129 (9th Cir. 1982).

Plaintiffs argue that *Salerno* "does not represent the Supreme Court's standard for adjudicating facial challenges." Dkt. 55, p. 17.  The Ninth Circuit disagrees.  *E.g.*, *Alphonsus v. Holder*, 705 F.3d 1031, 1042 nn.10-11 (9th Cir. 2013) (except in free speech cases and challenges to abortion statutes, *Salerno's* "no set of circumstances" standard applies to facial challenges "'[u]ntil a majority of the Supreme Court directs otherwise'") (quoting *Hotel & Motel Ass'n of Oakland v. City of Oakland*, 344 F.3d 959, 972 (9th Cir. 2003)).  This Court has recognized that *Salerno*'s test is required by Ninth Circuit precedent. *Almerico v. Denney*, 378 F. Supp. 3d 920, 924 (D. Idaho 2019), reconsideration denied, No. 1:18-CV-00239-BLW, 2019 WL 2527560 (D. Idaho June 17, 2019).  Plaintiffs are bound by *Salerno*.

Plaintiffs rely on *City of Los Angeles v. Patel*, 576 U.S. 409 (2015), in attempting to sidestep *Salerno*. However, *Patel* does not save Plaintiffs' facial challenge.  *Patel* actually quotes the *Salerno* test with approval.  *Id.* at 417-18.  *Patel* stands for the proposition that, when assessing whether a statute is facially unconstitutional, courts consider "only applications of the statute in which it actually authorizes or prohibits conduct." *Id.* at 418.  The *Patel* court examined *Planned Parenthood of Southeastern Pa. v. Casey*, 505 U.S. 833 (1992), and the challenged law requiring a woman to notify her husband before obtaining an abortion.  *Patel*, 576 U.S. at 418.  The *Patel* court explained that those defending the abortion law could not defeat a facial challenge by arguing that most women voluntarily notify their husbands about a planned abortion; a law requiring notification would be irrelevant to those that provided a notification voluntarily, independent of the statute.  *Id.*  Such women would provide that notification without needing authorization from the statute to do so, and they would not be prohibited from obtaining an abortion by the law after they provided the voluntary notification.

REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS (DKT. 40) – 7

Hence, women who provided the notification voluntarily would not be affected by the challenged statute, and "[l]egislation is measured for consistency with the Constitution by its impact on those whose conduct it affects. . . . The proper focus of the constitutional inquiry is the group for whom the law is a restriction, not the group for whom the law is irrelevant." *Id.* (quoting *Casey*, 505 U.S. at 894).

In contrast, HB 500 authorizes challenges to the sex of any person participating in women's sports, including males as well as transgender and non-transgender females. Based on the results of this verification, HB 500—by its plain language—would prohibit a male from participating in women's sports. HB 500 was passed to protect athletic opportunities for women in Idaho, to protect the progress made in overturning the historical gross inequality in athletics that has long sidelined women. HB 500 is relevant to males, like the plaintiff in *Clark*, who may attempt to participate in women's sports, displacing women and threatening athletic opportunities for women. And as the Ninth Circuit held in *Clark*, prohibiting males from participating in women's sports is constitutionally permissible. Therefore, there is a relevant application of HB 500 that the Ninth Circuit has already held permissible. Plaintiffs' facial challenges fail.

Plaintiffs also argue that their as-applied challenges to HB 500 are not barred by *Salerno*. This is correct. But the only as-applied challenges Plaintiffs have raised are their requests for relief A and B, seeking a declaration that HB 500 violates *their* constitutional rights and rights under Title IX. *See* Dkt. 1, p. 53. All their other requests for relief, found in paragraphs C, D, and E, Dkt. 1, pp. 53-54, including all requests for injunctive relief, would be available only if Plaintiffs could satisfy *Salerno* and prevail on a facial challenge. *See Italian Colors Restaurant v. Becerra*, 878 F.3d 1165, 1175 (9th Cir. 2018) (enjoining a "law in its entirety" is "appropriate only if plaintiffs had prevailed on a facial challenge"). All facial claims purportedly justifying the broad requests for relief in paragraphs C, D, and E should be dismissed.

REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS (DKT. 40) – 8

### III.  Conclusion

The Court should grant the motion to dismiss because Plaintiffs lack standing, their claims are not ripe, and their facial challenges fail.

DATED this 6th day of July, 2020.

                                      STATE OF IDAHO
                                      OFFICE OF THE ATTORNEY GENERAL

                              By:  /s/  *Dayton P. Reed*
                                    DAYTON P. REED
                                    Deputy Attorney General

## CERTIFICATE OF SERVICE

      I HEREBY CERTIFY that on July 6, 2020, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which sent a Notice of Electronic Filing to the following persons:

| | |
|---|---|
| Richard Eppink<br>AMERICAN CIVIL LIBERTIES UNION<br>OF IDAHO FOUNDATION<br>REppink@acluidaho.org | Matthew K. Wilde<br>BOISE STATE UNIVERSITY<br>OFFICE OF GENERAL COUNSEL<br>mattwilde@boisestae.edu |
| Gabriel Arkles<br>James Esseks<br>Chase Strangio<br>AMERICAN CIVIL LIBERTIES FOUNDATION<br>garkles@aclu.org<br>jesseks@aclu.org<br>cstrangio@aclu.org | *Attorney for Defendants Boise State University and Marlene Tromp*<br><br>Bruce D. Skaug<br>Raul R. Labrador<br>bruce@skauglaw.com<br>raul@skauglaw.com |
| Kathleen Hartnett<br>Elizabeth Prelogar<br>Andrew Barr<br>COOLEY LLP<br>khartnett@cooley.com<br>eprelogar@cooley.com<br>abarr@cooley.com | Roger G. Brooks<br>Jeffrey A. Shafer<br>ALLIANCE DEFENDING FREEDOM<br>rbrooks@ADFlegal.org<br>jshafer@ADFlegal.org |
| Catherine West<br>LEGAL VOICE<br>cwest@legalvoice.org<br><br>*Attorneys for Plaintiffs* | Kristen K. Waggoner<br>Parker Douglas<br>Christiana M. Holcomb<br>ALLIANCE DEFENDING FREEDOM<br>kwaggoner@ADFlegal.org<br>pdouglas@ADFlegal.org<br>cholcomb@ADFlegal.org<br><br>*Attorneys for Proposed Intervenors* |

                                                /s/ Dayton P. Reed