Bruce D. Skaug
bruce@skauglaw.com
ID Bar No. 3904
Raul R. Labrador
raul@skauglaw.com
ID Bar No. 5469
Skaug Law, P.C.
1226 E. Karcher Road
Nampa, ID 83687
(208) 466-0030
(208) 466-8903 Fax

Roger G. Brooks*
rbrooks@ADFlegal.org
NC Bar No. 16317
Alliance Defending Freedom
15100 N. 90th St.
Scottsdale, AZ 85260
(480) 444-0020
(480) 444-0028 Fax

Kristen K. Waggoner*
kwaggoner@ADFlegal.org
D.C. Bar No. 242069
Christiana M. Holcomb*
cholcomb@ADFlegal.org
D.C. Bar No. 176922
Alliance Defending Freedom
440 First St. NW, Suite 600
Washington, D.C. 20001
(202) 393-8690
(202) 347-3622 Fax

*Admitted *pro hac vice*

*Attorneys for Intervenors*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| LINDSAY HECOX, and JANE DOE with her next friends JEAN DOE and JOHN DOE,<br><br>    *Plaintiffs*,<br><br>    v.<br><br>BRADLEY LITTLE, in his official capacity as Governor of the State of Idaho, et al.,<br><br>    *Defendants*,<br><br>and<br><br>MADISON KENYON, et al.<br><br>    *Intervenor-Defendants*. | Case No. 1:20-cv-00184-DCN<br><br>**Intervenors' Opening Mootness Brief** |

## INTRODUCTION

Article III requires that "an actual, ongoing controversy exist" through-out litigation. *Bayer v. Neiman Marcus Grp., Inc.*, 861 F.3d 853, 862 (9th Cir. 2017). "It is not enough that a controversy existed at the time the complaint was filed." *Deakins v. Monaghan*, 484 U.S. 193, 199 (1988). At every stage, a plaintiff must establish an "actual controversy," not just an "abstract dispute . . . solely about the meaning of a law." *Alvarez v. Smith*, 558 U.S. 87, 93 (2009).

On June 24, 2021, following oral argument on the merits, the Ninth Circuit panel remanded so this Court could "develop the record, resolve any factual disputes, and apply the required caution and care to the initial . . . determination" as to whether Hecox's claims have become moot. (Remand Order 4, ECF No. 79.)[1] Since that time, Hecox and the State Defendants have negotiated a stipulation covering numerous facts potentially relevant to Hecox's academic and in-state status should Hecox attempt to re-enroll at Boise State University (BSU), or relevant to Hecox's financial position, Stipulated Facts, ECF No. 92 (Stip.). The Intervenor Defendants have joined in that Stipulation solely for purposes of this Court's consideration of the question of mootness as directed by the Ninth Circuit.

The stipulated facts, as it turns out, complicate rather than clarify the uncertainties that render Hecox's claims contingent and speculative at present. As a

---

[1] As the Ninth Circuit noted, "Jane Doe's claim is now moot because she graduated from high school and is planning to attend college out of state." (Remand Order 2, ECF No. 79.)

result, there is no current "case or controversy," and all claims should be dismissed as moot.

When the parties appeared before this Court for oral argument on July 22, 2020, Hecox was an enrolled student at Boise State, desiring to try out for the women's cross-country team the very next month.

On August 17, 2020, this Court granted the preliminary injunction requested by Hecox. Hecox tried out for the BSU women's cross-country team, but failed to post a qualifying time. In October 2020, just three months after Hecox appeared before this Court, Hecox dropped out of *all* BSU classes and ceased to be a BSU student. There is nothing improper about this; it simply highlights that future academic plans of college students in general, and of Hecox in particular, are inherently uncertain, even when they intend to enroll or remain enrolled.

Hecox did *not* enroll for the Spring 2021 term. The oral argument before the Ninth Circuit came and went, and though the panel raised mootness concerns, Hecox did not register for the Fall 2021 term. Hecox asserts an intent to enroll for Spring 2022 classes as soon as registration opens on November 12, 2021. Whether Hecox has in fact registered for this coming semester will be known by the time this briefing is completed; whether Hecox will complete Spring 2022 once registered, or will again withdraw for personal reasons, cannot be known until later. But even if Hecox enrolls for Spring 2022 classes, Hecox's claims will rest on so many speculations and contingencies as to be moot.

I.     **Hecox's claims are moot because the only facts in the record make it not only speculative, but positively unlikely that Hecox will qualify for the BSU women's cross-country or track teams.**

BSU is a Division I school with an impressive women's cross-country and track program. In early 2021, the BSU Broncos finished ninth at the NCAA Cross Country National Championships.[2] Needless to say, the BSU women's cross-country team recruits highly qualified young women, and a place on such a winning varsity team is achievable only by the most elite athletes. These young women have invested countless hours to training across their high school years and have excelled and earned places in the record books. The Intervenor Defendants, both of whom were recruited to attend Idaho State University as women's cross-country athletes, are deeply and personally aware of both the difficulty and the honor of winning a place on such a team.

BSU does provide an opportunity for so-called "walk-on" try-outs. The minimum recruiting and walk-on standards for the BSU women's cross-country and track teams are posted by the Athletic Department.[3] There has never been any allegation—much less evidence—that Hecox has *ever* posted a time that would qualify for the BSU women's cross-country (or track) teams, whether competing under a male or female gender identity. The only evidence in the record about Hecox's capability as

---

[2] *Women's Cross Country/Track and Field Newcomers,* Boise State University Athletics (Aug, 8, 2021, 3:05 PM), https://broncosports.com/news/2021/8/4/womens-cross-country-track-and-field-newcomers.aspx (last visited Nov. 10, 2021).

[3] *Boise State University Cross Country and Track & Field Recruiting Standards 2021-22,* Runcruit, https://runcruit.com/standards/boise-state-university (last visited Nov. 10, 2021).

a cross-country runner is that Hecox was unable to post a qualifying time for the BSU women's cross-country team in Fall 2020. There is no evidence that Hecox's times have improved since.

According to the Stipulation, Hecox intends to try out again for the cross-country team for the Fall 2022 season, almost a year from now. But given the objective facts above and in the absence of facts that would show any likelihood of a significant change—even if Hecox enrolls and even if Hecox again tries out—Hecox will not qualify for the team. An ideological attack on Idaho's Fairness in Women's Sports Act by a student who cannot demonstrate any likelihood of being adversely affected by the Act is precisely an "abstract dispute." *Alvarez*, 558 U.S. at 93. If the available evidence reasonably suggests that Hecox cannot post a qualifying time for the women's cross-country team, there is no need to decide constitutional questions. *See Franks v. Bowman Transp. Co.*, 424 U.S. 747, 755–56 n.8 (1976) (describing the general policy of the Court "to avoid passing prematurely on constitutional questions" (citation omitted)).

## II.  Hecox's eligibility to participate in BSU women's sports in the Fall of 2022 is further speculative due to academic and financial contingencies.

For the most part, Hecox's academic eligibility and financial capability are topics outside Intervenor Defendants' knowledge, and Intervenor Defendants leave any detailed explication of those issues to the State Defendants. But Intervenor Defendants note that unless Hecox has actually enrolled by the time the Court evaluates the question of mootness, then the precedents teach that Hecox will lack

standing for this additional reason:  the Fairness in Women's Sports Act applies only to "students." IDAHO CODE ANN. § 33-6203(2).

Any challenge to the Act based merely on an asserted intention to enroll *in the future* would rest on contingencies—including potential future changes of heart (a real possibility, as illustrated by Hecox's previous withdrawal as a student partway through the Fall 2020 semester) and future changes of financial position or priorities. "[S]peculative contingencies afford no basis for . . . passing on the substantive issues." *Hall v. Beals*, 396 U.S. 45, 49 (1969) (per curiam). An individual's "bare statement of intention [to reenroll] is insufficient to escape mootness." *Fox v. Bd. of Trs. of State Univ. of N.Y.*, 42 F.3d 135, 143 (2d Cir. 1994). Article III jurisdiction cannot be based on "contingent future events that may not occur as anticipated, or indeed may not occur at all." *Texas v. United States*, 523 U.S. 296, 300 (1998) (citation omitted).

And even if Hecox has enrolled for the Spring 2022 semester by the time the Court reviews these briefs, a planned future attempt by Hecox to try out for the women's cross-country team will remain highly contingent, based on nothing more than a declaration of intent about a rather distant future plan. When the Court first heard argument, Hecox was currently enrolled and seeking to participate in tryouts just a few weeks away. Now, the tryouts that Hecox claims an intention to participate in are not until August 2022—almost a year in the future. And in addition to personal contingencies and a physical-exam requirement (Stip. ¶ 13), Hecox must first successfully complete the full Spring 2022 academic semester and register and be prepared to pay for the Fall 2022 semester, all to be eligible for those tryouts. The

Stipulation and the State Defendants' brief identify significant additional financial, academic, and eligibility contingencies before that can happen. (Stip. ¶¶ 4-6, 13-17.) In short, Hecox's stated intention to try out 10 months from now is just that—a "bare statement of intention." *Fox*, 42 F.3d at 143. It is extensively dependent on "contingent future events that may not occur as anticipated, or indeed may not occur at all." *Texas*, 523 U.S. at 300 (citation omitted).

In arguing before the Ninth Circuit for a more lenient mootness standard, Plaintiff relied heavily on *City of Erie v. Pap's A.M.*, 529 U.S. 277 (2000). There, a "nude dancing establishment" challenged a city ordinance banning public nudity and obtained an injunction against the ordinance in the lower courts. *Id.* at 282-83. The establishment had closed by the time its case reached the Supreme Court, yet the Court held that the case was not moot. *Id.* at 289.

But there was more to the picture, such that *City of Erie* is not analogous. The plaintiff there claimed to have ceased operating, and argued for mootness, for the first time only *after* the Supreme Court had granted certiorari, threatening the injunction obtained below. The Supreme Court suspected the establishment was trying to game the process to keep the injunction in place and concluded that the Court's "interest in preventing litigants from attempting to manipulate the Court's jurisdiction to insulate a favorable decision from review . . . counsel[ed] against a finding of mootness." *Id.* at 288. There is no such question or risk of "manipulation" of the Court's jurisdiction here.

The Plaintiff also cited a scattershot of other cases in which courts found disputes to be not moot, but all were influenced by considerations absent here. Some involved threats to First Amendment rights, where chilling is of special concern. Other decisions were influenced by the inefficiency of dismissing a case at "an advanced stage." *See, e.g., Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 191-92 (2000). Here, Hecox's withdrawal from BSU occurred at an *early* stage of the litigation, before any discovery, evidentiary hearing, or ruling on the merits.

## III.   Hecox's cursory assertion of desires to participate in *other* women's athletics at BSU are entirely speculative.

Hecox asserts a general intent "to *continue* playing sports and have sports be a part of her college experience" (Stip. ¶ 25). But it is conceded that Hecox "has *never* practiced or participated in intercollegiate athletics," whether varsity or club (Stip. ¶ 19 (emphasis added)), so Hecox cannot "continue" to do so. Hecox's arguments for continued standing rest on aspirations and new intentions, not history and fact.

In the recent Stipulation, Hecox points to athletic ambitions beyond cross-country as a basis for standing. Hecox claims a desire to participate on the BSU women's track team, a spring season sport for which Hecox could not be even potentially eligible until the Spring 2023, well more than a year from now. (Stip. ¶ 25.) As with cross-country, BSU has a highly competitive Division I team for women's track and field. And as with cross-country, there are no record facts suggesting that Hecox has ever run a qualifying time in any BSU women's track team event, or that Hecox has anything more than a remote and unrealistic prospect of doing so.

In the Stipulation, Hecox also claims—for the very first time—an intention to plan "to try to join" a BSU women's club soccer team, a fall sport. (Stip. ¶ 25.) (Hecox's complaint nowhere suggests that Hecox ever has, or ever wished, to play soccer.) The women's club soccer webpage announces that to join, all one needs to do is "attend a practice."[4] During freshman year, Hecox could have done this, but did not. And during sophomore year, weeks before Hecox withdrew from school, Hecox again could have done this, but did not. The *only* thing Hecox has ever done in this regard is to "browse[ ] the women's club soccer team's webpage." (Stip. ¶ 25.) This is very far from presenting a present case and controversy.

## CONCLUSION

The Intervenor Defendants should not be compelled to race against biologically male athletes because being forced to do so denies them fair and equal athletic opportunities as women. But they would rather run than spend time and emotional energy on "abstract" litigation that is not currently necessary and may not ever become necessary. For the reasons reviewed above, Intervenor Defendants respectfully suggest that Plaintiffs claims became moot upon the graduation of Jane Doe, and the withdrawal from BSU of Hecox. The best course would be to dismiss this case as moot. If, in the future, Hecox (1) reenrolls at BSU, (2) is reaccepted at BSU, (3) maintains academic standing at BSU, (4) remains at BSU long enough to tryout for a women's sports team, and (5) tries out and qualifies to participate on a women's

---

[4] *Boise State Women's Soccer Club,* Boise State University, https://www.boisestate.edu/recreation/sports/clubsports/womenssoccer/ (last visited Nov. 10, 2021).

sports team but cannot do so because of the Act, then Hecox can simply re-file this

lawsuit.

Respectfully submitted this 12th day of November, 2021.

Kristen K. Waggoner*
Christiana M. Holcomb*
Alliance Defending Freedom
440 First Street, NW
Suite 600
Washington, DC 20001
(202) 393-8690
kwaggoner@ADFlegal.org
jbursch@ADFlegal.org
cholcomb@ADFlegal.org

Bruce D. Skaug
Raul R. Labrador
Skaug Law. P.C.
1226 E. Karcher Road
Nampa, ID 83687
(208) 466-0030
bruce@skauglaw.com
raul@skauglaw.com

By: */s/Roger G. Brooks*
Roger G. Brooks*
Alliance Defending Freedom
15100 N. 90th Street
Scottsdale, AZ 85260
(480) 444-0020
rbrooks@ADFlegal.org

*Admitted *pro hac vice*

*Counsel for Intervenors*

## CERTIFICATE OF SERVICE

I hereby certify that on November 12, 2021, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which sent a Notice of Electronic Filing to the following persons:

Kathleen R. Hartnett
(khartnett@cooley.com)

Julie M. Veroff
(jveroff@cooley.com)

Andrew D. Barr
(abarr@cooley.com)

Katelyn K. Kang
(kkang@cooley.com)

Elizabeth F. Reinhardt
(ereinhardt@cooley.com)

Richard Eppink
(REppink@acluidaho.org)

Aadika Jaspal Singh
(Asingh@acluidaho.org)

James Esseks
(jesseks@aclu.org)

Chase Strangio
(cstrangio@aclu.org)

Catherine West
(cwest@legalvoice.org)

*Attorneys for Plaintiffs*

Cory M. Carone
(cory.carone@ag.idaho.gov)

Steven L. Olson
(steven.olsen@ag.idaho.gov)

W. Scott Zanzig
(scott.zanzig@ag.idaho.gov)

Dayton P. Reed
(dayton.reed@ag.idaho.gov)

Matthew K. Wilde
(mattwilde@boisestate.edu)

*Attorneys for Defendants*

/s/ Roger G. Brooks
Roger G. Brooks
*Counsel for Intervenors*