Kathleen R. Hartnett*
Julie M. Veroff*
COOLEY LLP
3 Embarcadero Center, 20th Floor
San Francisco, CA 94111-4004
T: (415) 693-2000
F: (415) 693-2222
khartnett@cooley.com
jveroff@cooley.com

Andrew D. Barr*
COOLEY LLP
1144 15th Street, Suite 2300
Denver, CO 80202
T: (720) 566-4000
F: (720) 566-4099
abarr@cooley.com

Katelyn L. Kang*
COOLEY LLP
55 Hudson Yards
New York, NY 10001
T: (212) 479-6000
F: (212) 479-6275
kkang@cooley.com

Elizabeth F. Reinhardt*
COOLEY LLP
500 Boylston Street
Boston, MA 02116
T: (617) 937-2300
F: (617) 937-2400
ereinhardt@cooley.com

Richard Eppink (Bar No. 7503)
Aadika Jaspal Singh*
AMERICAN CIVIL LIBERTIES UNION OF IDAHO FOUNDATION
P. O. Box 1897
Boise, ID 83701
T: (208) 344-9750
REppink@acluidaho.org
Asingh@acluidah.org

James Esseks*
Chase Strangio*
AMERICAN CIVIL LIBERTIES UNION FOUNDATION
125 Broad St.,
New York, NY 10004
T: (212) 549-2569
jesseks@aclu.org
cstrangio@aclu.org

Catherine West*
LEGAL VOICE
907 Pine Street, Unit 500
Seattle, WA 98101
T: (206) 682-9552
F: (206) 682-9556
cwest@legalvoice.org

*Attorneys for Plaintiffs*
* Admitted *pro hac vice*

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| LINDSAY HECOX, et al.,<br><br>   *Plaintiffs*,<br><br>v.<br><br>BRADLEY LITTLE, et al.,<br><br>   *Defendants*. | Case No. 1:20-cv-00184-DCN<br><br>Hon. David C. Nye<br><br>**PLAINTIFFS' OPENING BRIEF IN RESPONSE TO NINTH CIRCUIT ORDER DATED JUNE 24, 2021** |

## TABLE OF CONTENTS

**Page**

INTRODUCTION ..................................................................................................................... 1

BACKGROUND ....................................................................................................................... 1

ARGUMENT ............................................................................................................................. 4

    A.    Dismissal Based on Mootness Requires an Extremely High Showing .................. 4

    B.    Lindsay Hecox's Claim Is Not Moot. ..................................................................... 4

CONCLUSION .......................................................................................................................... 9

## TABLE OF AUTHORITIES

Page

**Cases**

*Adarand Constructors, Inc. v. Slater*,
    528 U.S. 216 (2000) ......................................................................................................... 4

*Bd. of Sch. Comm'rs v. Jacobs*,
    420 U.S. 128 (1975) ......................................................................................................... 9

*Camreta v. Greene*,
    563 U.S. 692 (2011) ......................................................................................................... 4

*City of Erie v. Pap's A.M.*,
    529 U.S. 277 (2000) ................................................................................................. 4, 5, 8

*Clark v. City of Lakewood*,
    259 F.3d 996 (9th Cir. 2001) .................................................................................. 5, 6, 8

*Dream Palace v. Cnty. of Maricopa*,
    384 F.3d 990 (9th Cir. 2004) .......................................................................................... 6

*Fox v. Bd. of Trs. of State Univ. of N.Y.*,
    42 F.3d 135 (2d Cir. 1994) .............................................................................................. 9

*Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*,
    528 U.S. 167 (2000) ......................................................................................................... 4

*Hecox v. Little*,
    479 F. Supp. 3d 930 (D. Idaho 2020) ............................................................................ 1

*Karuk Tribe of Cal. v. U.S. Forest Serv.*,
    681 F.3d 1006 (9th Cir. 2012) ......................................................................................... 4

*Luckie v. EPA*,
    752 F.2d 454 (9th Cir. 1985) .......................................................................................... 7

*McCormack v. Hiedeman*,
    900 F. Supp. 2d 1128 (D. Idaho 2013) ......................................................................... 5

*Porter v. Bowen*,
    496 F.3d 1009 (9th Cir. 2007) ........................................................................................ 7

*Rosemere Neighborhood Ass'n v. U.S. Env't Prot. Agency*,
    581 F.3d 1169 (9th Cir. 2009) ............................................................................... 6, 7, 8

*S.F. BayKeeper, Inc. v. Tosco Corp.*,
    309 F.3d 1153 (9th Cir. 2002) ..................................................................................... 4, 5

*S. Or. Barter Fair v. Jackson Cnty.*,
    372 F.3d 1128 (9th Cir. 2004) ...................................................................................5, 6, 7, 8

*United States v. Concentrated Phosphate Exp. Ass'n*,
    393 U.S. 199 (1968)..................................................................................................................4

*United States v. Larson*,
    302 F.3d 1016 (9th Cir. 2002) ................................................................................................4

## INTRODUCTION

Plaintiff Lindsay Hecox has a concrete and live stake in the outcome of this case, which is not moot. She will return to Boise State University ("Boise State" or "BSU") as a student in early January 2022, at the start of the spring semester, and she faces no barriers in doing so. Indeed, she has already registered for classes. She has saved significant funds from working full-time over the last year and is on track to qualify for Idaho residency and in-state tuition. She intends to join the women's club soccer team in the spring of 2022, which will subject her to the Idaho Fairness in Women's Sports Act ("H.B. 500") and which, as a club sport, is not subject to NCAA rules. She also intends to again try out for the women's cross-country and track teams in the fall of 2022 and will satisfy all the NCAA eligibility requirements, either directly or via an available exception.

Under Supreme Court and Ninth Circuit precedent, an expressed intention to resume activity targeted by a challenged law is sufficient to demonstrate a live controversy. Lindsay has made that showing and more, and her claim is not moot.

## BACKGROUND

In March 2020, Idaho enacted H.B. 500, a law that "excludes transgender women from participating on women's sports teams." *Hecox v. Little*, 479 F. Supp. 3d 930, 943 (D. Idaho 2020). Shortly thereafter, Plaintiff Lindsay Hecox, then in her freshman year at Boise State, filed this lawsuit challenging H.B. 500's constitutionality. Lindsay, "a life-long runner," planned to try out for Boise State's women's cross-country and track teams. *Id.* at 946. In August 2020, this Court entered an order for a preliminary injunction, holding that Lindsay was likely to succeed on the merits of her claim that H.B. 500 violates the Equal Protection Clause. *Id.* at 988.

In October 2020, a few weeks after Defendants and Intervenors noticed their appeals of the preliminary injunction, *see* ECF Nos. 64–65, Lindsay tried out for but did not make the Boise State women's cross-country and track teams. (*See* Declaration of Lindsay Hecox ("Hecox Decl.") ¶ 2.)

1

Naturally, she was disappointed, but she remained committed to continuing to train athletically so that she could try out again. (*Id.* ¶¶ 23–24.)

Later that month, after careful thought and input from family and school officials, Lindsay decided to take a temporary leave of absence from Boise State. (*Id.* ¶¶ 4–6.) Like many students, Lindsay was struggling with the fully online learning environment necessitated by the COVID-19 pandemic. (*Id.* ¶ 3.) She was also working part-time to pay for her living expenses and had difficulty juggling the demands of her part-time work and full-time school obligations. (*Id.* ¶¶ 2–4.) Lindsay realized that she would perform better academically if she did not have the additional stress from working. (*Id.* ¶ 5.) Lindsay consulted with Boise State officials in the Financial Aid and Registrar's Offices and decided to take a temporary leave of absence from Boise State for one year, during which time she would work in Idaho full-time so that she could then establish in-state residency and pay lower tuition when she returned to school. (*Id.* ¶¶ 6–7; ECF No. 92 (Stipulated Facts) ("Stip.") ¶ 8.) On October 26 and 28, 2020, Lindsay withdrew from her classes before Boise State's second withdrawal deadline to avoid receiving an "F" marked on her transcript for her dropped classes. (*See* Stip. ¶ 11.)

Plaintiffs alerted the Ninth Circuit of these developments at the first opportunity, in their answering brief filed on December 14, 2020. (*See* Ninth Circuit Dkt. No. 65 at 17 n.4.) At oral argument on May 3, 2021, the Ninth Circuit panel raised questions about whether Lindsay's equal protection claim against H.B. 500 is moot because of her leave of absence. (*See* Stip. at 1–2.) After receiving supplemental letter briefs on mootness, the Ninth Circuit remanded the case to this Court to determine whether Lindsay's claim is moot. (*See* ECF No. 79.)

After remand, to aid the Court in its mootness assessment, the parties met and conferred and filed a set of Stipulated Facts addressing the seven questions posed by the Ninth Circuit in its

remand order, which concerned Lindsay's decision to take a leave of absence, her ability and plans to re-enroll, and her plans to play women's sports at BSU. (*Id.* at 4.) Lindsay also has submitted the instant declaration accompanying this brief.

The Stipulated Facts, along with Lindsay's declaration, establish as follows:

*First*, Lindsay faces no barriers to re-enrolling in classes at Boise State. (*See* Stip. ¶ 1.) Indeed, as of the date of this filing, November 12, 2021, she has registered for classes for the Spring 2022 semester, which begin on January 10, 2022. (Hecox Decl. ¶¶ 8, 10–13.)

*Second*, Lindsay has firm plans to try out for women's sports teams at Boise State upon her return—actions that, but for this Court's preliminary injunction, H.B. 500 would bar her from taking. Specifically, Lindsay plans to join the Boise State women's club soccer team in Spring 2022 and then to try out for the women's cross-country and track teams in Fall 2022. (*See* Stip. ¶ 25; Hecox Decl. ¶ 25.) If she does not make the cross-country and track teams in Fall 2022, she will try out again the following year. (*See* Stip. ¶ 25; Hecox Decl. ¶ 24.) Club soccer is not an NCAA sport and thus not subject to the NCAA's eligibility rules. Cross-country and track are NCAA sports, and Lindsay is poised to satisfy all relevant NCAA eligibility requirements or to meet the criteria qualifying her for an exception to those requirements. (*See* Stip. ¶¶ 14–23.)

*Third*, Lindsay is in a far stronger financial position today than she was when she took her leave of absence from Boise State a year ago. By working full-time since December 2020, Lindsay now has almost $24,000 in savings—nearly $9,000 more than a year ago—that she can use for tuition, textbooks, living expenses, and other costs associated with attending Boise State. (*See* Stip. ¶ 6.) Lindsay is also on track to satisfy Idaho's residency requirements by the time she begins classes at Boise State in January 2022. (*Id.* ¶¶ 4–5; Hecox Decl. ¶¶ 14–16.) Idaho residents pay significantly lower tuition than out-of-state residents—$4,030 per semester as compared to

3

$12,490 per semester. (*See* Stip. ¶ 3.) With greater savings and reduced tuition, Lindsay will face less financial pressure to balance work and school and will be better able to focus on her academic success.[1] (Hecox Decl. ¶¶ 9, 18–22.)

## ARGUMENT

**A.  Dismissal Based on Mootness Requires an Extremely High Showing.**

The party claiming mootness bears a "heavy burden of persuasion." *S.F. BayKeeper, Inc. v. Tosco Corp.*, 309 F.3d 1153, 1159 (9th Cir. 2002) (quoting *United States v. Concentrated Phosphate Exp. Ass'n*, 393 U.S. 199, 203 (1968)). Specifically, to obtain dismissal of Lindsay's claim as moot, Defendants must show that it is "'*absolutely clear*' that [Lindsay] no longer ha[s] 'any need of the judicial protection that [she] sought.'" *Karuk Tribe of Cal. v. U.S. Forest Serv.*, 681 F.3d 1006, 1017 (9th Cir. 2012) (en banc) (quoting *Adarand Constructors, Inc. v. Slater*, 528 U.S. 216, 224 (2000) (per curiam)) (emphasis added); *see also Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 193 (2000) (same). "It is no small matter to deprive a litigant of the rewards of its efforts," and thus Lindsay's case should not be dismissed as moot unless it is "absolutely clear" that Lindsay will never again be subject to H.B. 500. *United States v. Larson*, 302 F.3d 1016, 1020 (9th Cir. 2002) (quoting *Adarand*, 528 U.S. at 224); *see also Camreta v. Greene*, 563 U.S. 692, 703 (2011) ("[I]f the person who initially brought the suit may again be subject to the challenged conduct, she has a stake in preserving the court's holding. . . .").

**B.  Lindsay Hecox's Claim Is Not Moot.**

Lindsay Hecox "has a concrete stake in the outcome of this case," which is therefore not moot. *City of Erie v. Pap's A.M.*, 529 U.S. 277, 288 (2000). As detailed below, the Supreme

---

[1] Lindsay will still re-enroll in Boise State even if, for some unforeseen reason, she does not qualify for in-state tuition. (Hecox Decl. ¶ 16.)

4

Court and the Ninth Circuit have held repeatedly that an intent to resume activity implicating a challenged law establishes a live controversy. Here, the undisputed factual record establishes Lindsay's clear and definite intent to return to Boise State imminently and to try out for women's sports teams, which will subject her to the challenged law. She has taken multiple concrete steps in furtherance of that goal, and no known barriers stand in her way. Her challenge is not moot.

Several cases illustrate the fundamental mootness principles at issue and confirm that Lindsay's claim remains live. In *Pap's A.M.*, a strip club challenging a city ordinance banning public nudity had closed by the time the case reached the Supreme Court. 529 U.S. at 287. Not only had the club closed, but the building in which it had been located had been sold to a real estate developer, a comedy club had moved in, and the strip club's owner was 72 years old and retired. *Id.* at 303–04 (Scalia, J., concurring). Nonetheless, the Court held that "[s]imply closing" the business was "not sufficient to render [the] case moot" because the plaintiff "could again decide to operate a nude dancing establishment in Erie." *Id.* at 287. So long as the plaintiff "ha[d] an interest in resuming operations," the Court explained, it "ha[d] an interest in preserving the judgment" below and "a concrete stake in the outcome of [the] case." *Id.* at 288.[2]

Similarly, in *Clark v. City of Lakewood*, the Ninth Circuit considered a situation where a business owner's license to operate had expired after the district court issued its decision. 259 F.3d 996, 1011 (9th Cir. 2001). Even though the owner had not sought to renew the license, his "stated intention [was] to return to business." *Id.* at 1012. Given that stated intent, the Ninth

---

[2] Although the mootness question in *Pap's A.M.* arose in an unusual posture—the plaintiff sought to dismiss the case as moot after having prevailed below, and the defendant wished to obtain Supreme Court review to determine the nudity ordinance's constitutionality, *see* 529 U.S. at 288—its holding has been widely applied in cases like this one, where a defendant seeks to dismiss a plaintiff's claim or case as moot. *See, e.g., S. Or. Barter Fair v. Jackson Cnty., Or.*, 372 F.3d 1128, 1133–34 (9th Cir. 2004) (citing *Erie* as the standard for mootness where defendant raised mootness); *S.F. BayKeeper, Inc.*, 309 F.3d at 1159 (same); *McCormack v. Hiedeman*, 900 F. Supp. 2d 1128, 1138 (D. Idaho 2013), *aff'd sub nom. McCormack v. Herzog*, 788 F.3d 1017 (9th Cir. 2015) (same).

Circuit held that the case was not moot. *Id.*; *see also id.* at 1012 n.9 (explaining that the owner's "stated intention to return to business if the Ordinance is declared unconstitutional" meant that the case was not moot); *Dream Palace v. Cnty. of Maricopa*, 384 F.3d 990, 1001 (9th Cir. 2004) (holding that an overbreadth challenge to a business license requirement that did not presently apply to the plaintiff was not moot "[g]iven the county's expressed intention to amend the ordinance so as to have it apply to [the plaintiff]").

Likewise, in *Southern Oregon Barter Fair v. Jackson County*, the Ninth Circuit considered a nonprofit community fair's First Amendment challenge to a county's permitting procedures. 372 F.3d 1128, 1134 (9th Cir. 2004). The county argued mootness because the fair's challenge had been spurred by a specific encounter between the county and the fair, but the fair had not applied for another permit or undertaken any preparations for another fair since. *Id.* The Ninth Circuit explained that the case would be moot "if the Fair had entirely ceased to operate, left the business, and no longer sought or intended to seek a license." *Id.* But that was not the case; the fair's "stated intention [was] to return to business," and the fair had taken steps in that direction, including trying to raise funds and looking for an appropriate venue, thus rendering the case non-moot. *Id.* (quoting *Clark*, 259 F.3d at 1011–12 & n.9).

Finally, the Ninth Circuit applied these same principles in *Rosemere Neighborhood Association v. United States Environmental Protection Agency*, 581 F.3d 1169 (9th Cir. 2009). The plaintiff, a non-profit organization focused on improving municipal services in low-income communities, sued the EPA to compel agency action after its Office of Civil Rights ("OCR") failed to timely respond to two of the organization's administrative complaints. *Id.* at 1171–72. The OCR then alerted the organization that it was investigating, and the EPA moved to dismiss the case against it as moot. *Id.* Although the organization presented evidence that the EPA's OCR

6

"had missed its regulatory deadlines in almost every complaint filed with the agency in recent years," the district court granted the motion to dismiss for mootness, concluding that because the organization did not have any further pending claims before OCR, the organization could not establish a sufficient likelihood of harm from future delays. *Id.* at 1172. The Ninth Circuit reversed. It first explained that "the burden [was] not on Rosemere to show it *will* file another complaint," but rather, "[t]he burden [was] on the EPA to show that Rosemere *will not* do so." *Id.* at 1174. It then reaffirmed the "important[]" principle that "when there is an argument about whether a plaintiff will again encounter a challenged activity, this court has required little more than what Rosemere has already supplied: a stated intention to resume the actions that led to the litigation." *Id.*; *see also Porter v. Bowen*, 496 F.3d 1009, 1017 n.6 (9th Cir. 2007) (determining case not moot where plaintiffs stated intention to set up challenged websites in the future). Because Rosemere had "stated its intention to file another complaint with the EPA, . . . the burden [was] on the EPA to show that there [was] 'very little chance' of further delays in the processing of the complaints, or that Rosemere face[d] an 'insurmountable' hurdle to filing another complaint." *Id.* at 1174–75 (quoting *Luckie v. EPA*, 752 F.2d 454, 458 (9th Cir. 1985); *Jackson Cnty, Or.*, 374 F.3d at 1134). EPA had not done so, and its mootness argument therefore failed. *Id.*

Lindsay's claim is not moot for the same reasons the Supreme Court and the Ninth Circuit held the above cases were not moot. And indeed, the argument against mootness is far stronger here than in any of those cases, as Lindsay has not only expressed "an interest" in resuming the challenged activity, but she has also taken concrete steps to facilitate her re-enrollment at Boise State in early January 2022, and to resume participation in college athletics in the spring of 2022. As all parties have stipulated, there are no barriers that prevent Lindsay from re-enrolling at Boise State. (Stip. ¶ 1.) On November 12, 2021, Lindsay registered for classes for the Spring 2022

7

semester. (Hecox Decl. ¶ 13.) Furthermore, Lindsay is poised to qualify for in-state tuition at Boise State, as she has actively worked to establish residency in Idaho over the past year, including by leasing a residence in Boise, Idaho; procuring an Idaho ID card; and working full-time in Idaho. (Stip. ¶¶ 4–5; Hecox Decl. ¶¶ 14–16.) By meeting the requirements for in-state tuition, as well as saving money to fund her education, Lindsay has helped ensure that her forthcoming semesters at Boise State will be less stressful for her personally. (*See* Stip. ¶¶ 3, 6.)

Finally, Lindsay intends to try out for and play women's sports at Boise State. Most immediately, she plans to join the women's club soccer team this coming spring, as she has been playing soccer almost weekly in a Boise indoor soccer league for the last seven months and wishes for sports to be a part of her college experience. (*Id.* ¶ 25; Hecox Decl. ¶ 25.) Boise State's women's club soccer team is not an NCAA sport, and thus Lindsay can play regardless of the NCAA's eligibility rules. Lindsay also intends to try out for the women's track and cross-country teams during the Fall 2022 semester, and, if she is unsuccessful, to try out again the next year. (*See* Stip. ¶ 25; Hecox Decl. ¶ 24.) Track and cross-country are NCAA sports, and Lindsay is poised to satisfy the NCAA eligibility requirements, either directly or through meeting the criteria to receive an exception. (*See* Stip. ¶¶ 13–23.) No NCAA policy presents an "insurmountable" bar to Lindsay's participation.[3] *Rosemere*, 581 F.3d at 1175.

In short, by taking multiple, concrete actions in furtherance of her plans to re-enroll and participate in women's sports at Boise State, Lindsay has done *more* than the plaintiffs whose

---

[3] Lindsay is currently in good academic standing (Stip. ¶ 15); plans to complete at least 9 credit hours during her Spring 2022 semester, which will satisfy the NCAA Bylaws' minimum-credit-load requirement *(id.* ¶¶ 14, 16; Hecox Decl. ¶¶ 12–13); and is poised to otherwise satisfy the applicable NCAA requirements (*see* Stip. ¶¶ 19–21). And even if Lindsay were deemed not to satisfy NCAA requirements, Boise State could submit a waiver request to the NCAA on her behalf. (*Id.* ¶ 23.) Boise State has committed to "treat Lindsay Hecox the same as all other student athletes and submit a waiver request" if there is a "reasonable and good-faith justification for doing so." (*Id.*)

8

claims were not moot in *Pap's A.M.*, *Clark*, *Jackson County*, and *Rosemere*. Those plaintiffs had taken *no* actions in furtherance of their intentions to continue their challenged conduct, and yet were deemed to have live controversies; it thus follows that Lindsay's claim is not moot. Further, Lindsay is wholly *unlike* the plaintiffs in two student mootness cases cited in the Ninth Circuit's remand order, who had either graduated from school or not even applied to the defendant school system. (*See* ECF No. 79 at 2–3 (citing *Bd. of Sch. Comm'rs v. Jacobs*, 420 U.S. 128, 129 (1975) (concerning graduated plaintiff); *Fox v. Bd. of Trs. of State Univ. of N.Y.*, 42 F.3d 135, 143 (2d Cir. 1994) (holding case moot where there was "no indication that any of the plaintiffs ha[d] even applied to the" challenged school system, "much less been accepted")). In stark contrast, Lindsay has multiple semesters of school ahead of her at Boise State and on November 12, enrolled in Spring 2022 semester classes at Boise State, which begin on January 10, 2022. Because Lindsay soon will be re-subject to H.B. 500, her claims are not moot.

## CONCLUSION

It is Defendants' "heavy" burden to show that it is "absolutely clear" that Lindsay will not be subject to H.B. 500, and they cannot meet that burden here. For the foregoing reasons, Lindsay Hecox's claim is not moot.

Dated: November 12, 2021                                Respectfully submitted,

                                                        /s/ Kathleen Hartnett

| | |
|---|---|
| Kathleen R. Hartnett*<br>Julie M. Veroff*<br>COOLEY LLP<br>3 Embarcadero Center, 20th Floor<br>San Francisco, CA 94111-4004<br>T: (415) 693-2000<br>F: (415) 693-2222<br>khartnett@cooley.com<br>jveroff@cooley.com | Richard Eppink (Bar No. 7503)<br>Aadika Jaspal Singh*<br>AMERICAN CIVIL LIBERTIES UNION OF IDAHO<br>FOUNDATION<br>P. O. Box 1897<br>Boise, ID 83701<br>T: (208) 344-9750<br>REppink@acluidaho.org<br>Asingh@acluidah.org |
| Andrew D. Barr*<br>COOLEY LLP<br>1144 15th Street, Suite 2300<br>Denver, CO 80202<br>T: (720) 566-4000<br>F: (720) 566-4099<br>abarr@cooley.com | James Esseks*<br>Chase Strangio*<br>AMERICAN CIVIL LIBERTIES UNION<br>FOUNDATION<br>125 Broad St.,<br>New York, NY 10004<br>T: (212) 549-2569<br>jesseks@aclu.org<br>cstrangio@aclu.org |
| Elizabeth F. Reinhardt*<br>COOLEY LLP<br>500 Boylston Street<br>Boston, MA 02116<br>T: (617) 937-2300<br>F: (617) 937-2400<br>ereinhardt@cooley.com | Catherine West*<br>LEGAL VOICE<br>907 Pine Street, Unit 500<br>Seattle, WA 98101<br>T: (206) 682-9552<br>F: (206) 682-9556<br>cwest@legalvoice.org |
| Katelyn L. Kang*<br>COOLEY LLP<br>55 Hudson Yards<br>New York, NY 10001<br>T: (212) 479-6000<br>F: (212) 479-6275<br>kkang@cooley.com | *Attorneys for Plaintiffs*<br><br>* Admitted *pro hac vice* |

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on November 12, 2021, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which sent a Notice of Electronic Filing to the following persons:

Bruce D. Skagg (bruce@skauglaw.com)
Roger G. Brooks (rbrooks@ADFlegal.org)
Kristin Waggoner (kwaggoner@ADFlegal.org)
Raul R. Labrador (raul@skauglaw.com)
Christiana Holcomb
(cholcomb@ADFlegal.org)

*Attorneys for Intervenors*

Cory M. Carone (cory.carone@ag.idaho.gov)
Steven L. Olsen (steven.olsen@ag.idaho.gov)
W. Scott Zanzig (scott.zanzig@ag.idaho.gov)
Dayton P. Reed (dayton.reed@ag.idaho.gov)
Matthew K. Wilde
(mattwilde@boisestate.edu)

*Attorneys for Defendants*

*/s/ Kathleen Hartnett*
Kathleen Hartnett