LAWRENCE G. WASDEN
ATTORNEY GENERAL

STEVEN L. OLSEN, ISB #3586
W. SCOTT ZANZIG, ISB #9361
DAYTON P. REED, ISB #10775
CORY M. CARONE, ISB #11422
Deputy Attorneys General
954 W Jefferson, 2nd Floor
P. O. Box 83720
Boise, ID 83720-0010
Telephone: (208) 334-2400
Facsimile: (208) 854-8073
steven.olsen@ag.idaho.gov
scott.zanzig@ag.idaho.gov
dayton.reed@ag.idaho.gov
cory.carone@ag.idaho.gov

*Attorneys for Defendants*

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| LINDSAY HECOX, and JANE DOE with her next friends JEAN DOE and JOHN DOE,<br><br>Plaintiffs,<br><br>v.<br><br>BRADLEY LITTLE, in his official capacity as Governor of the State of Idaho, et al.<br><br>Defendants,<br><br>and<br><br>MADISON KENYON, et al.,<br><br>Intervenors. | Case No. 1:20-cv-00184-DCN<br><br>Hon. David C. Nye<br><br>**DEFENDANTS' RESPONSE BRIEF ADDRESSING THE NINTH CIRCUIT ORDER DATED JUNE 24, 2021** |

In some cases, a stated intention to complete one or two contingencies may be enough to satisfy the case-or-controversy requirement based on a potential future injury. Here, the list of

contingencies is much longer and Hecox has shown that her intentions often change. That propensity was evident when she withdrew from Boise State within a week of failing to make the track and cross country teams, and it was reaffirmed when she changed plans for the Spring 2022 semester. On October 15, she stipulated that she planned to enroll in at least 12 credits. On November 12, she enrolled in only 9. That decision further jeopardizes her ability to satisfy the NCAA's eligibility requirements in Fall 2022, and it further suggests that she may not follow through on her other stated intentions. All this uncertainty about Hecox's future does not justify continuing to impinge Idaho's sovereignty by enjoining a law to benefit an individual that may not need the injunction. The Court should dismiss Hecox's claims without prejudice.

**I.    The Court should consider whether Hecox has an actual or imminent need for relief.**

Hecox urges the Court to place the burden on Defendants to prove that it is absolutely clear that Hecox will not suffer a future injury. Dkt. 97, pp. 8, 13. That standard breaks from the tradition of courts "repeatedly describ[ing] mootness as the doctrine of standing set in a time frame" and treating "the interest required of a litigant to attain standing [as] essentially the same as the interest required to maintain a claim under the mootness doctrine." *Nevada v. United States*, 783 F. App'x 700, 703 (9th Cir. 2019) (cleaned up); *Nelsen v. King Cnty.*, 895 F.2d 1248, 1250 (9th Cir. 1990) (citation omitted). Under that traditional framing, to avoid mootness, like to establish standing, a plaintiff must prove that her need for relief has "sufficient immediacy and reality." *Pub. Utilities Comm'n of State of Cal. v. F.E.R.C.*, 100 F.3d 1451, 1458 (9th Cir. 1996) (quotation omitted).

The standard that Hecox prefers stems from *Friends of the Earth, Inc. v. Laidlaw Env't Services (TOC), Inc.*, which clarified not the mootness standard generally but rather how courts should "determin[e] whether a case has been mooted by the defendant's voluntary conduct." 528 U.S. 167, 189 (2000). Indeed, many of the cases that Hecox cites in support of her preferred standard are voluntary cessation cases. *Adarand Constructors, Inc. v. Slater*, 528 U.S. 216, 222

DEFENDANTS' RESPONSE BRIEF ADDRESSING THE
NINTH CIRCUIT ORDER DATED JUNE 24, 2021 - 2

(2000) ("*Voluntary cessation* of challenged conduct moots a case, however, only if it is absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." (quotation omitted and emphasis added)); *United States v. Concentrated Phosphate Exp. Ass'n*, 393 U.S. 199, 203 (1968) ("The test for mootness *in cases such as this* is a stringent one. Mere voluntary cessation of allegedly illegal conduct does not moot a case; if it did, the courts would be compelled to leave the defendant free to return to his old ways." (internal marks omitted and emphasis added)); *San Francisco BayKeeper, Inc. v. Tosco Corp.*, 309 F.3d 1153, 1155 (9th Cir. 2002) (considering whether a "plaintiff can maintain a suit against a defendant firm that no longer operates the polluting facility at issue."). Voluntary cessation is not mootness, it is an exception to mootness. Dkt. 96, p. 6 (collecting cases). And it is an exception that does not apply here because Defendants have not voluntarily ceased enforcing House Bill 500.

If, as Hecox suggests, the voluntary cessation standard applies in all mootness cases, then it is an exception that swallows the rule. Worse, blurring the lines between mootness and voluntary cessation would ignore the distinct interests animating each doctrine. The voluntary cessation exception protects against strategic evasion of judicial review while mootness, as an extension in time of Article III's case-or-controversy requirement, prevents advisory opinions and furthers principles of federalism and representative government in cases seeking to enjoin state laws. Dkt. 96, pp. 7–9. The standards for mootness and the voluntary cessation exception should be tailored to serve those distinct interests.

II. **Hecox has not satisfied the case-or-controversy requirement based on her emergent interest in soccer.**

Hecox's own claim exemplifies why the standards for mootness and the voluntary cessation exception should not be joined. Standing and mootness are both rooted in Article III's case-or-controversy requirement. *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006)

DEFENDANTS' RESPONSE BRIEF ADDRESSING THE
NINTH CIRCUIT ORDER DATED JUNE 24, 2021 - 3

(citations omitted). A plaintiff has the burden to establish standing, and standing is generally analyzed based on the facts as they existed when the complaint was filed. *Skaff v. Meridien N. Am. Beverly Hills, LLC*, 506 F.3d 832, 838 (9th Cir. 2007). When Hecox filed her complaint, she alleged an interest in running on the women's track and cross country teams. Dkt. 96, pp. 10–11. So when this Court first determined whether Hecox could satisfy the case-or-controversy requirement (*i.e.*, whether she had standing), the proper inquiry was whether Hecox could prove an injury in fact—a real and imminent injury—based on her interest in running for Boise State.

Not long after the Court found that Hecox had standing and issued an injunction so she could try out, she failed to make the team and then within a week withdrew from Boise State. That withdrawal created enough uncertainty about her NCAA eligibility and her interest in remaining a student at Boise State to cause the Ninth Circuit to question whether Hecox's claims still satisfied the case-or-controversy requirement (*i.e.*, whether they were moot).

Facing that scrutiny, Hecox asserted a new injury: an interest in playing soccer on the club team. Dkt. 97-1, p. 6, ¶ 25. Hecox did not mention soccer in her complaint. She never carried *her burden* of establishing that she had a real and imminent interest in playing soccer on the women's club soccer team, that House Bill 500 caused her to be unable to play club soccer, and that an injunction would redress that injury. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992). Hecox now asks the Court to require Defendants to carry the burden of proving that it is absolutely clear that Hecox does not need an injunction to play soccer—the opposite of the standing standard. Under that approach, Hecox would permanently sidestep her burden of establishing standing based on her interest in soccer.

There are two paths the Court can take to avoid that untenable outcome: (1) require Hecox to amend her complaint to include allegations about her interest in soccer and how House Bill 500

affects that interest so the Court can perform a standing analysis of her interest in soccer, or (2) treat mootness as standing set in a time frame by placing the burden on Hecox to prove that she has a real and imminent need for relief based on her new interest in soccer.

Under either approach, the current record has too many gaps to justify allowing the case to proceed based on Hecox's interest in club soccer. To start, Hecox's interest in soccer is fleeting. She apparently picked up the sport seven months ago and plays not even every week. Dkt. 97-1, p. 6, ¶ 25. Even if she remains interested in this new sport, all she's done to pursue playing at the next level is review the club team's webpage and email the president. *Id.* Whether Hecox is actually willing to make the financial and time commitment to play at the club level has yet to be seen, and a state's law should not be enjoined in the interim based on this emergent interest. But even if Hecox decides to play, the record suggests she will be allowed to join the team. As Hecox has said, all a student must do to join the team is contact the team's president or attend a practice. Dkt. 97-1, p. 6, ¶ 25. When Hecox emailed the team president, she received an email "welcoming me to join and explaining that the only requirement to play was paying $275 in dues per semester." *Id.* Nothing in the record suggests that House Bill 500 prevents Hecox from joining the club soccer team. She thus has not plausibly alleged or shown that she faces a real or imminent threat of being unable to play club soccer because of House Bill 500. Thus, she has not established a need for relief based on her interest in soccer.

**III.   Hecox lacks a real or imminent need for relief to run on the women's track or cross country teams because her claim is riddled with contingencies and speculation.**

The next tryout for the track and cross country teams is in the Fall 2022 semester. Dkt. 92, p. 7, ¶ 13. To justifiably need an injunction in Fall 2022 to run on the women's track and cross country teams, Hecox must: (1) decide she wants to stay in school at Boise State through Fall 2022, (2) avoid or overcome the financial pressures of college that led her to withdraw in Fall 2020, (3)

avoid or overcome the psychological pressures of college that led her to withdraw in Fall 2020, (4) try out and run faster to make the track or cross country teams in Fall 2022, and (5) perform well enough in school to satisfy the NCAA eligibility requirements. Her claim thus rests on "contingent future events that may not occur as anticipated, or indeed may not occur at all." *Texas v. United States*, 523 U.S. 296, 300 (1998) (quotation omitted). That is not enough to satisfy the case-or-controversy requirement, as the Court faces "a significant degree of guesswork" to conclude that Hecox needs relief. *Id.*; *Trump v. New York*, 141 S. Ct. 530, 536 (2020).

Even if stated intentions are enough in some cases to avoid mootness, Hecox has repeatedly demonstrated that her plans frequently change, often much faster than the many months between now and the next tryout. That propensity makes predictions about Hecox's future too speculative and unreliable to satisfy the case-or-controversy requirement. For example, when the Court granted Hecox's request for a preliminary injunction in August 2020 it appeared that she may need relief because she was a student at Boise State and tryouts were imminent. Dkt. 1, p. 6, ¶ 6. Just two months later, Hecox decided she "needed a break from school" and withdrew from Boise State (she calls it a "leave of absence," but Boise State records show that she "never requested a 'leave of absence' from BSU, and nothing in our records indicate such a status for her"). Dkt. 97-1, p. 3, ¶ 5; Appeal Dkt. 136-2, p. 3, ¶ 7. As a result, Hecox no longer needed any relief because House Bill 500 applies only to students. Idaho Code § 33-6203(2). Shortly after her withdrawal, Hecox figured she would *maybe* try out for the track and cross country teams one more time. Dawn Ennis, *Outsports Transgender Athlete Advocate of the Year: Lindsay Hecox*, OUTSPORTS (Dec. 29, 2020). At that time, even if Hecox were enrolled at Boise State it would've been unclear whether she needed an injunction because House Bill 500 would apply to her only if she definitely, not maybe, planned to try out for the team. Or if she tried out only once more, this case would become

moot when she again failed to make the team. Facing questions about mootness, she has again changed her intentions, saying she will definitely (not maybe) try out not just once, but twice, more. Dkt. 92, p. 10, ¶ 25.

Most recently, Hecox has changed her plans for enrollment during the Spring 2022 semester. On October 15, 2021, the parties stipulated—based on Hecox's representations—that she planned to take at least 12 credits in the Spring 2022 semester. Dkt. 92, pp. 7–8, ¶¶ 14, 16. Less than a month later, Hecox opted to instead take 9 credits. Dkt 97-1, p. 4, ¶ 13. That change in plans jeopardizes her NCAA eligibility in Fall 2022. If she cannot satisfy the NCAA eligibility requirements, then an injunction would provide her no relief because the NCAA eligibility rules, not House Bill 500, would prevent her from running for Boise State.

By enrolling in only 9 credits, Hecox is unlikely to satisfy Bylaw 14.4.3.1(b) in Fall 2022. That Bylaw requires Hecox to complete 18 credits during the 2021–2022 school year. Dkt. 92, p. 8, ¶ 17. She completed 0 credits during the Fall 2021 semester, and now seeks to complete only 9 credits in the Spring 2022 semester—9 credits short of Bylaw 14.4.3.1(b)'s 18-credit requirement. Hecox presumably hopes to invoke one of two exceptions to Bylaw 14.4.3.1(b), but her change in plans makes it less likely for her to qualify for those exceptions, too.

The first exception, provided under Bylaw 14.4.3.6(a), grants a one-time exception to Bylaw 14.4.3.1(b)'s 18-credit requirement for students who have withdrawn from school. Dkt. 92, p. 8, ¶ 18. If Hecox invokes the exception in Fall 2022, her credit requirement would be prorated to a total of 36 credits. *Id*. Hecox has completed only 24 credits at Boise State, so she needs to complete 12 credits during the Spring 2022 semester. *Id*. Based on her representation on October 15 that she would enroll in 12 credits, it seemed like Hecox was on track to satisfy that prorated

DEFENDANTS' RESPONSE BRIEF ADDRESSING THE
NINTH CIRCUIT ORDER DATED JUNE 24, 2021 - 7

requirement. *Id.* at pp. 7–8, ¶¶ 14, 16. But three weeks later, Hecox changed plans to reduce that to 9 credits and now is no longer on track. Dkt 97-1, p. 4, ¶ 13.

The second exception, provided under Bylaw 14.4.3.6(b), grants a one-time exception to Bylaw 14.4.3.1(b)'s 18-credit requirement for students that were not recruited and have not participated in athletics. Dkt. 92, pp. 8–9, ¶ 19. A requirement to invoke the exception is that the student has "never practiced or participated in intercollegiate athletics." *Id.* Hecox previously appeared on track to satisfy that requirement, but now her new plans to play club soccer suggest she will be unable to satisfy the requirement. Bylaw 12.8.3.7 suggests that playing club soccer counts as participation in intercollegiate athletics, as an individual participating on a club team "is charged with a season of competition for participation in intercollegiate competition." NCAA Division I Manual, p. 88 (available at https://web3.ncaa.org/lsdbi/reports/getReport/90008). The Bylaws also explain that student-athletes participate in intercollegiate athletics if they participate in a required athletic activity at the direction of or under the supervision of a school's coaching staff, compete in the school's uniform, or represent the institution in any contest against outside competition no matter how the competition is classified. Bylaws 14.02.9, 17.02.1, 17.02.8, NCAA Division I Manual, pp. 165, 248–49. The team webpage that Hecox references in her declaration lists a head coach and an assistant coach, so it seems any practices would be under the supervision of the coaching staff. Dkt. 97-1, p. 6, ¶ 25; www.boisestate.edu/recreation/sports/clubsports/womenssoccer/. And the team's webpages[1] suggest they wear a Boise State uniform and play teams from other schools. What's more, the NCAA's definition of intercollegiate competition creates an exception for participation on club teams, but only if the

---

[1] https://www.facebook.com/bsuwomensclubsoccer/; https://bsuwomensclubsoccer.wixsite.com/bsuwomensclubsoccer.

DEFENDANTS' RESPONSE BRIEF ADDRESSING THE
NINTH CIRCUIT ORDER DATED JUNE 24, 2021 - 8

school does not have a varsity team in the same sport. NCAA Bylaw 17.02.8.2, NCAA Division I Manual, p. 249. If participation on club teams didn't constitute participation in intercollegiate competition, then that exception would be unnecessary. And the exception does not apply here because Boise State has a varsity women's soccer team. *See* https://broncosports.com/sports/womens-soccer.

At bottom, Hecox's decision to enroll for only 9 credits in Spring 2022 and her newly expressed desire to participate on the club soccer team suggest that in Fall 2022 she will be unable to satisfy Bylaw 14.4.3.1(b)'s credit requirement or invoke the exceptions to that requirement provided under Bylaw 14.4.3.6(a) and Bylaw 14.4.3.6(b). If so, then she won't be eligible to compete in Fall 2022 unless the NCAA grants her a waiver. Boise State does not submit waiver requests until after a student makes the team, Dkt. 92, pp. 9–10, ¶ 23, and the current record suggests Hecox will probably not make the team as last time she failed to make the first cut, Appeal Dkt. 136-3, pp. 2–3, ¶¶ 3–4. Even if Hecox does make the team, the NCAA decides whether to grant a waiver, and its guidelines provide that waivers can be granted for "unforeseeable hardships." Dkt. 92, pp. 9–10, ¶ 23. Hecox's inability to satisfy the NCAA's credit requirement stems from her decisions to withdraw because of the expense of out-of-state tuition, to enroll in only 9 credits in Spring 2022 despite knowing about the credit requirements, and to play club soccer despite knowing that it would disqualify her for an exception. It's unclear why the NCAA would consider that string of voluntary decisions an "unforeseeable hardship."

In sum, less than a month after the parties agreed to the stipulated facts, Hecox changed her plans and seemingly undermined her eligibility for the track and cross country teams in Fall 2022. As a result, the NCAA's rules, not House Bill 500, appear likely to impede Hecox's interest

DEFENDANTS' RESPONSE BRIEF ADDRESSING THE
NINTH CIRCUIT ORDER DATED JUNE 24, 2021 - 9

in running for Boise State. Enjoining House Bill 500 thus won't provide her any relief, rendering the case moot.

Even if Hecox changes her plans again to take enough credits in Spring 2022 to satisfy the NCAA's requirements, her latest decision to take 9 credits instead of 12 credits in Spring 2022 is a microcosm of the larger issue: Hecox's constant change in plans makes it impossible to reliably predict whether she will qualify for an injunction in Fall 2022. That uncertainty makes her stated intentions insufficient to keep this case alive, otherwise the parties will need to re-litigate mootness each time her plans change—which the record shows could happen as quickly as three weeks from now. The long list of actions Hecox needs to take between now and Fall 2022 and her propensity for changing plans means the Court is left with a case "riddled with contingencies and speculation that impede judicial review." *Trump*, 141 S. Ct. at 535.

## CONCLUSION

Defendants respectfully request that the Court dismiss without prejudice Hecox's claims. She should be unable to sidestep her burden to establish standing based on her new interest in soccer. Hecox's ability to run track and cross country in Fall 2022 requires predicting too many contingencies, which is impossible to do accurately given her propensity for changing plans. If closer to Fall 2022 the facts have developed such that it appears Hecox may be able to run for Boise State, she can re-file and seek an injunction then.

DATED this 3rd day of December, 2021.

> STATE OF IDAHO
> OFFICE OF THE ATTORNEY GENERAL
>
> By: */s/ Scott Zanzig*
> W. SCOTT ZANZIG
> Deputy Attorney General

# CERTIFICATE OF SERVICE

      I HEREBY CERTIFY that on December 3, 2021, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which sent a Notice of Electronic Filing to the following persons:

Richard Eppink
Aadika Jaspal Singh
AMERICAN CIVIL LIBERTIES UNION
OF IDAHO FOUNDATION
REppink@acluidaho.org
asingh@acluidaho.org

James Esseks
Chase Strangio
AMERICAN CIVIL LIBERTIES FOUNDATION
garkles@aclu.org
jesseks@aclu.org
cstrangio@aclu.org

Catherine Ann West
LEGAL VOICE
cwest@legalvoice.org

Kathleen Hartnett
Andrew Barr
Julie Veroff
Elizabeth Reinhardt
Katelyn Kang
COOLEY LLP
khartnett@cooley.com
abarr@cooley.com
jveroff@cooley.com
ereinhardt@cooley.com
kkang@cooley.com

*Attorneys for Plaintiffs*

Matthew K. Wilde
BOISE STATE UNIVERSITY
OFFICE OF GENERAL COUNSEL
mattwilde@boisestae.edu

*Attorney for Defendants Boise State University and Marlene Tromp*

Roger G. Brooks
Kristen K. Waggoner
Jeffrey A. Shafer
Christiana M. Holcomb
ALLIANCE DEFENDING FREEDOM
rbrooks@ADFlegal.org
kwaggoner@ADFlegal.org
jshafer@ADFlegal.org
cholcomb@ADFlegal.org

Bruce D. Skaug
Raul R. Labrador
SKAUG LAW
bruce@skauglaw.com
raul@skauglaw.com

*Attorneys for Intervenors*

                                            */s/ Scott Zanzig*
                                            W. SCOTT ZANZIG
                                            Deputy Attorney General