Kathleen R. Hartnett*
Julie M. Veroff*
COOLEY LLP
3 Embarcadero Center, 20th Floor
San Francisco, CA 94111-4004
T: (415) 693-2000
F: (415) 693-2222
khartnett@cooley.com
jveroff@cooley.com

Andrew D. Barr*
COOLEY LLP
1144 15th Street, Suite 2300
Denver, CO 80202
T: (720) 566-4000
F: (720) 566-4099
abarr@cooley.com

Katelyn L. Kang*
COOLEY LLP
55 Hudson Yards
New York, NY 10001
T: (212) 479-6000
F: (212) 479-6275
kkang@cooley.com

Elizabeth F. Reinhardt*
COOLEY LLP
500 Boylston Street
Boston, MA 02116
T: (617) 937-2300
F: (617) 937-2400
ereinhardt@cooley.com

Richard Eppink (Bar No. 7503)
Aadika Jaspal Singh*
AMERICAN CIVIL LIBERTIES UNION OF
IDAHO FOUNDATION
P. O. Box 1897
Boise, ID 83701
T: (208) 344-9750
REppink@acluidaho.org
Asingh@acluidah.org

James Esseks*
Chase Strangio*
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
125 Broad St.,
New York, NY 10004
T: (212) 549-2569
jesseks@aclu.org
cstrangio@aclu.org

Catherine West*
LEGAL VOICE
907 Pine Street, Unit 500
Seattle, WA 98101
T: (206) 682-9552
F: (206) 682-9556
cwest@legalvoice.org

*Attorneys for Plaintiffs*
\* Admitted *pro hac vice*

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| LINDSAY HECOX, et al., <br><br> *Plaintiffs*, <br><br> v. <br><br> BRADLEY LITTLE, et al., <br><br> *Defendants*. | Case No. 1:20-cv-00184-DCN <br><br> Hon. David C. Nye <br><br> **PLAINTIFFS' RESPONSE BRIEF REGARDING MOOTNESS** |

## TABLE OF CONTENTS

                                                                            **Page**

INTRODUCTION .................................................................................................................. 1

ARGUMENT .......................................................................................................................... 1

      I.      An Intent to Resume Activity Barred by H.B. 500 Preserves a Live Controversy and Defeats Mootness Under Settled Legal Standards. ..................... 1

      II.     The Record Before the Court Establishes That Lindsay's Case Is Not Moot. ................................................................................................................... 4

              A.     Lindsay Is Enrolled at Boise State and Will Begin Classes in Spring 2022, As She Always Planned, and Is in a Strong Financial Position. ................................................................................................... 4

              B.     Lindsay Intends to Play Women's Club Soccer at Boise State in Spring 2022 and Cannot Do So Absent This Court's Injunction. ............... 5

              C.     Lindsay Intends to Try Out for the Boise State Women's Cross-Country and Track Teams in 2022 and Cannot Do So Without This Court's Injunction. ..................................................................................... 7

              D.     No "Contingency" Exists Here to Prevent Jurisdiction. ........................... 9

CONCLUSION ..................................................................................................................... 10

# TABLE OF AUTHORITIES

Page

**Cases**

*A&M Recs., Inc. v. Napster, Inc.*,
 284 F.3d 1091 (9th Cir. 2002) ...................................................................................................7

*Bayer v. Neiman Marcus Grp., Inc.*,
 861 F.3d 853 (9th Cir. 2017) .....................................................................................................1

*City of Erie v. Pap's A.M.*,
 529 U.S. 277 (2000).....................................................................................................................1

*Clark v. City of Lakewood*,
 259 F.3d 996 (9th Cir. 2001) ..................................................................................................3, 9

*Doe No. 1 v. Reed*,
 697 F.3d 1235 (9th Cir. 2012) .................................................................................................10

*Fox v. Board of Trustees of State University of New York*,
 42 F.3d 135 (2d Cir. 1994).........................................................................................................4

*Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC) Inc.*,
 528 U.S. 167 (2000)....................................................................................................................2

*Gemtel Corp. v. Community Redevelopment Agency of City of Los Angeles*,
 23 F.3d 1542 (9th Cir. 1994) .....................................................................................................2

*Hall v. Beals*,
 396 U.S. 45 (1969)....................................................................................................................10

*Hecox v. Little*,
 479 F. Supp. 3d 930 (D. Idaho 2020) ............................................................................... passim

*Inland Empire Waterkeeper v. Corona Clay Co.*,
 17 F.4th 825 (9th Cir. 2021) .....................................................................................................2

*Lawrence v. Texas*,
 539 U.S. 558 (2003)....................................................................................................................7

*Lujan v. Defs. of Wildlife*,
 504 U.S. 555 (1992)....................................................................................................................2

*Ne. Florida Chapter of the Associated Gen. Contractors of Am. v. City of Jacksonville*,
 508 U.S. 656 (1993)....................................................................................................................8

## TABLE OF AUTHORITIES
(cont'd)

**Page**

*Rosemere Neighborhood Ass'n v. E.P.A.*,
    581 F.3d 1169 (9th Cir. 2009) ...................................................................................2, 3

*S. Oregon Barter Fair v. Jackson Cnty.*,
    372 F.3d 1128 (9th Cir. 2004) ........................................................................................2

*Texas v. United States*,
    523 U.S. 296 (1998)......................................................................................................10

*Trump v. New York*,
    141 S. Ct. 530 (2020)....................................................................................................10

*United States v. King*,
    891 F.3d 868 (9th Cir. 2018) .........................................................................................2

*United States v. Munsingwear*,
    340 U.S. 36 (1950)........................................................................................................10

**INTRODUCTION**

Plaintiff Lindsay Hecox's declared intention to subject herself to activity governed by H.B. 500 is sufficient to maintain a live controversy. And her actions fully support her declared intent—she has registered for Spring semester classes at Boise State, signed up for academic support, amassed considerable savings, worked diligently to qualify for in-state residency, and arranged to join the Boise State women's club soccer team this Spring, and she continues to run in preparation for trying out for the Boise State women's cross-country and track teams at the first available opportunity in Fall 2022. Absent this Court's injunctive relief, Lindsay would be unable to play women's sports at Boise State. This case thus presents "an actual, ongoing controversy" for which this Court can provide "effective relief." *Bayer v. Neiman Marcus Grp., Inc.*, 861 F.3d 853, 862 (9th Cir. 2017). It is not moot.

**ARGUMENT**

**I.  An Intent to Resume Activity Barred by H.B. 500 Preserves a Live Controversy and Defeats Mootness Under Settled Legal Standards.**

Defendants and Intervenors raise several meritless arguments in an effort to minimize their mootness burden, but none disturbs Plaintiffs' correct articulation of the mootness standard. (ECF No. 97 (Pltf. Br.) at 4–7.)

*First*, Defendants and Intervenors suggest that *City of Erie v. Pap's A.M.*, 529 U.S. 277 (2000), is not applicable here because that case involved a concern about a party's effort to "manipulate the Court's jurisdiction." *Id.* at 288. (ECF No. 96 (Def. Br.) at 7; ECF No. 95 (Intrv. Br.) at 6.) But as Plaintiffs noted in their Opening Brief, courts regularly apply *Erie*'s mootness standard in cases where that consideration is not present. (Pltf. Br. at 5 n.2.)[1]

---

[1] Intervenors seek to distinguish some of Plaintiffs' cases by noting that they "involved threats to First Amendment rights, where chilling is of special concern," (Intrv. Br. 7), but cite no authority holding that the mootness analysis works differently in the First Amendment context. It does not. Plaintiffs have cited non-First Amendment cases where the Ninth Circuit has applied the same

1

*Second*, Defendants assert that they do not have the burden to show mootness because this is not a case involving voluntary cessation by a defendant. (Def. Br. 7–8.) But the Ninth Circuit has held that "[t]he party asserting mootness bears the burden of establishing that there is no effective relief remaining that the court could provide" even in cases where the *plaintiff* ceased the relevant conduct. *S. Oregon Barter Fair v. Jackson Cnty.*, 372 F.3d 1128, 1134 (9th Cir. 2004) (holding defendant had burden where plaintiff had not applied for subsequent permit in case involving plaintiff's challenge to county's permitting procedure).[2] Ultimately, however, where the burden lies is immaterial to resolving the instant mootness question. Even if the burden were Lindsay's, she plainly meets it as set forth in her opening brief and herein.

*Third*, Defendants posit that "in cases involving democratic and federalism concerns," it might be appropriate for courts, separate from any mootness inquiry, to require a plaintiff to establish standing throughout the litigation and not just at the outset. (Def. Br. 10.) But the Ninth Circuit just last month confirmed that "standing is evaluated based on the facts 'as they exist when the complaint is filed.'" *Inland Empire Waterkeeper v. Corona Clay Co.*, 17 F.4th 825 (9th Cir. 2021) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 569 n.4 (1992)). Moreover, the "injury in fact" required for standing and the "legally cognizable interest" required to defeat mootness "are

---

"stated intention to resume the actions that led to the litigation" test. (Pltf. Br. 7 (quoting *Rosemere Neighborhood Ass'n v. E.P.A.*, 581 F.3d 1169, 1174 (9th Cir. 2009)).) Intervenors also misread *Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC) Inc.*, 528 U.S. 167 (2000), which noted that all cases in which mootness is an issue necessarily have "been brought and litigated," and did not announce any special mootness consideration for cases at a particularly "advanced stage." *Id.* at 192; (*see* Intrv. Br. 7.)

[2] The two cases Defendants cite to suggest Lindsay has the burden to defeat mootness are inapposite. (Def. Br. 8–9.) In both, the party arguing against mootness did not present even a *prima facie* case that they would benefit from their requested relief. *See Gemtel Corp. v. Community Redevelopment Agency of City of Los Angeles*, 23 F.3d 1542, 1554–55 (9th Cir. 1994) (developer's requests for injunctive and declaratory relief concerning labor policy at hotel it had been contracted to build were moot because plans to build the hotel had been "irrevocably" abandoned and the developer "put forward no evidence of any reasonable likelihood that the hotel would be built"); *United States v. King*, 891 F.3d 868, 869–71 (9th Cir. 2018) (defendant challenging the charge underlying his revocation of supervised release did not present any evidence showing that he might suffer collateral consequences from the charge).

2

for all practical purposes synonymous," so Defendants' exposition about standing is largely academic. *Clark v. City of Lakewood*, 259 F.3d 996, 1011 n.7 (9th Cir. 2001).[3] Even if Lindsay were required to establish standing today, she clearly could. Just as when she filed this lawsuit, Lindsay is a transgender woman enrolled at Boise State who plans to join a women's sports team there—something H.B. 500 forbids her from doing absent relief. *Hecox v. Little*, 479 F. Supp. 3d 930, 959–64 (D. Idaho 2020) (holding that Lindsay has standing).

*Fourth*, Defendants and Intervenors wrongly contend that Lindsay's case cannot satisfy Article III until she actually tries to join a women's sports team. (Def. Br. 18; Intrv. Br. 8–9.) This is contrary to the Ninth Circuit's repeated holding that a plaintiff's claims are not moot where they had announced an intention to act in the future, even though they had not yet acted. *See, e.g.*, *Rosemere*, 581 F.3d at 1174–75; *Clark*, 259 F.3d at 1006. And here, as this Court already explained, "[t]he harm Lindsay alleges—the inability to participate on women's teams—arose when the Act went into effect on July 1, 2020," even before she had "tried out for BSU athletics or been subject to a dispute process." *Hecox*, 479 F. Supp. 3d at 960.[4]

Finally, Defendants offer the truism that "plans can change," (Def. Br. 12), but that is not an appropriate basis for ruling a case moot. Were that the standard (which it is not), no person could ever sustain a challenge to an illegal law, for it will always be possible to generate a series

---

[3] Defendants' claim of harm to their sovereignty, (Def. Br. 2–4, 8), rings hollow given that Defendant Boise State had within its knowledge in October 2020 that Lindsay had temporarily withdrawn to establish in-state residency and planned to return in Spring 2022, yet Defendants said nothing to the Ninth Circuit about any mootness concerns in their briefing. (*See* Stip. ¶¶ 5, 8.)

[4] Defendants' and Intervenors' argument is further inconsistent with the position taken elsewhere in their briefs that Lindsay's case was sufficiently concrete to satisfy Article III when this Court heard oral argument on and decided the preliminary injunction motion (*see* Intrv. Br. 2,5; Def. Br. 3), which was *before* Lindsay had tried out for the women's cross-country and track teams. Defendants and Intervenors offer no principled reason why Lindsay's case was live months before she last tried out for the women's cross-country and track teams but is not now, when she is several weeks away from joining the women's club soccer team (and, as before, several months away from trying out for the women's cross-country and track teams).

3

of "what ifs" about changing plans. That is especially so for student-athletes, for whom there can never be complete certainty as to future school enrollment and athletic eligibility. As Intervenors put it, "future academic plans of college students in general . . . are inherently uncertain, even when they intend to enroll or remain enrolled." (Intrv. Br. 2.) This Court should reject Defendants' and Intervenors' effort to manipulate mootness doctrine to foreclose judicial review.

## II. The Record Before the Court Establishes That Lindsay's Case Is Not Moot.

Lindsay has re-enrolled at Boise State, declared her intent to play women's sports, and taken concrete actions toward that goal. She is thus subject to H.B. 500, and her case is not moot.

### A. Lindsay Is Enrolled at Boise State and Will Begin Classes in Spring 2022, As She Always Planned, and Is in a Strong Financial Position.

There is no question whether Lindsay will return to Boise State. She has met with her academic advisor, registered for Spring 2022 classes on the very first day Boise State allowed her to do so, and signed up to receive academic coaching and support.[5] (ECF No. 97-1 ("Hecox Decl.") ¶¶ 10–13.) In the face of Lindsay's certain return to Boise State, Defendants and Intervenors offer a series of misleading statements about her commitment to school and financial stability—none of which undermine her intended course of action or establish mootness.

First, Defendants and Intervenors suggest that Lindsay's decision about returning to school was in flux, (Def. Br. 12–13, Intrv. Br. 2), but Lindsay has consistently intended to return to Boise State in Spring 2022, after working for one year to establish Idaho residency. Defendants and Intervenors know this: Lindsay discussed her plan with an official at Boise State's registrar's office in October 2020 (Stip. ¶ 8), and Plaintiffs produced to Defendants and Intervenors a November

---

[5] Intervenors misleadingly claim that Lindsay needs to be "reaccepted" to Boise State. (Intrv. Br. 8.) As the Stipulated Facts provide, Lindsay faced no barriers to re-enrolling. (Stip. ¶ 1.) *Fox v. Board of Trustees of State University of New York*, 42 F.3d 135, 143 (2d Cir. 1994) (*see* Intrv. Br. 5), where there was "no indication that any of the plaintiffs ha[d] even applied to the" school system whose policy the plaintiffs were challenging, "much less been accepted," is thus inapposite.

2020 email conversation between Lindsay and that official confirming her intention to return in Spring 2022 (*id.* ¶ 5).[6]

Defendants next bizarrely and incorrectly claim that Lindsay is now "worse off financially" than she was when she left Boise State in Fall 2020. (Def. Br. 14.) As the Stipulated Facts confirm, however, Lindsay is in a far stronger financial position today—she has nearly $9,000 *more* in savings than she had a year ago to spend on tuition and related expenses. (Stip. ¶ 6; *see also* Pltf. Br. 3–4.) She also will receive up to $3,248 in federal grants and $6,500 in federal loans for Spring 2022, and is applying for scholarships. (Hecox Decl. ¶ 20; Ex. 1 (Suppl. Hecox Decl.) ¶ 3.)

Defendants then imply that it is uncertain whether Lindsay receives less than 50% of her financial support from her parents, as required to qualify for Idaho residency. (Def. Br. 14.) To prove less than 50% support, the Idaho Board of Education requires a sworn statement,[7] and Lindsay has declared that she "receive[s] far less than 50% of [her] financial support from [her] parents." (Hecox Decl. ¶ 15.) She will provide the sworn statement when she applies for residency and is on track to satisfy the other residency requirements. (*Id.* ¶¶ 14–16; Stip. ¶¶ 4–5.)

### B. Lindsay Intends to Play Women's Club Soccer at Boise State in Spring 2022 and Cannot Do So Absent This Court's Injunction.

Lindsay's intent to join the Boise State women's club soccer team this Spring establishes a live controversy. Although Defendants claim that it is "unclear whether [Lindsay] needs an injunction to join the [club soccer] team," (Def. Br. 11), she does. H.B. 500 expressly applies to "club" sports. Idaho Code Ann. § 33-6203(1); *see also Hecox*, 479 F. Supp. 3d at 983.

---

[6] Plaintiffs' counsel misspoke when he stated during oral argument before the Ninth Circuit that Lindsay intended to return to Boise State "in the fall." (Def. Br. 13.) Plaintiffs confirmed in their Letter Brief to the Ninth Circuit, filed shortly after the argument, that Lindsay planned to return to Boise State in Spring 2022. *See* 9th Cir. Dkt. 135-1 at 4.
[7] *See* Idaho State Bd. of Educ., Residency Determination Worksheet (last updated Mar. 25, 2020), https://boardofed.idaho.gov/resources/residency-determination-worksheet/.

Defendants dismiss Lindsay's plan to join the women's club soccer team as a "minimal interest" insufficient to satisfy Article III, but Lindsay has done everything necessary to participate this Spring short of actually joining the team—which she cannot do until the semester starts. She has been playing soccer for the last seven months, reviewed the team's webpage to learn how to join, contacted the club's president to express her interest in joining, received a response welcoming her to join, and made plans to pay the required dues. (Hecox Decl. ¶ 25.)

Intervenors fault Lindsay for not having joined the club soccer team in the past, (Intrv. Br. 8), but that fact does not undermine her stated intention to do so this Spring, while she waits to try out for the cross-country and track teams in the Fall. Lindsay has been clear from the beginning of this litigation that being on a sports team helps her personally and academically. (*See* ECF No. 1 ¶¶ 25, 31, 38; ECF No. 22-6 ¶¶ 4, 6–8, 30–31; *see also* ECF No. 22-5 (Fry Decl.) (discussing benefits from participating in athletics).) These reasons drive Lindsay's desire to join the women's cross-country and track teams, and to play on a women's club soccer team in the meantime.

Finally, Defendants suggest that the preliminary injunction may not properly extend to Lindsay's participation on the women's club soccer team, (Def. Br. 11), but the preliminary injunction was not limited to Lindsay's involvement with the cross-country and track teams. This Court granted Plaintiffs' request "for a preliminary injunction prohibiting defendants . . . from enforcing any of the provisions of House Bill 500" against Lindsay. (ECF No. 22); *Hecox*, 479 F. Supp. 3d at 980. That order plainly covers Lindsay's participation in women's club soccer.

Defendants vaguely assert, without any supporting evidence, that "[s]occer is a different sport that implicates different interests" than track or cross-country (Def. Br. 11), but nothing in this Court's Equal Protection Clause analysis turned on the specifics of running as compared to other sports. *See Hecox*, 479 F. Supp. 3d at 980. Just the opposite—this Court evaluated whether

6

H.B. 500 is substantially related to important government interests by considering transgender women athletes' participation in athletics generally. *See, e.g.*, *id.* at 979 (noting the "absence of any empirical evidence that sex inequality or access to athletic opportunities are threatened by transgender women athletes in Idaho"); *id.* at 981 ("Millions of student-athletes have competed in the NCAA since 2011, with no reported examples of any disturbance to women's sports as a result of transgender inclusion."); *id.* at 982 ("[T]he 'absolute advantage' between transgender and cisgender women athletes is based on overbroad generalizations without factual justification.").

Defendants also cite the Court's irreparable harm analysis recognizing that Lindsay would "permanently lose a year of NCAA eligibility that she can never get back," with respect to track and cross-country, *id.* at 987, (Def. Br. 11), but Lindsay likewise would lose the experience of playing on the women's club soccer team absent injunctive relief. Indeed, this Court held that being "categorically barred from participating on BSU's women's teams" is an irreparable harm. *Id.* at 968. The Court further held that Lindsay faces irreparable harm due to the deprivation of her constitutional rights and the fact that H.B. 500 "communicates the State's 'moral disapproval' of her identity." *Id.* (quoting *Lawrence v. Texas*, 539 U.S. 558, 582–83 (2003)). Such harms accrue regardless of the specific women's team that H.B. 500 bars Lindsay from joining.

The Court's preliminary injunction covers Lindsay's participation on the women's club soccer team. But even if this Court were to conclude otherwise, it can and should exercise its "inherent authority to modify [the] preliminary injunction in consideration of" Lindsay's plans to join the team this Spring. *A&M Recs., Inc. v. Napster, Inc.*, 284 F.3d 1091, 1098 (9th Cir. 2002).

### C. Lindsay Intends to Try Out for the Boise State Women's Cross-Country and Track Teams in 2022 and Cannot Do So Without This Court's Injunction.

With respect to her intent to try out for cross-country and track in 2022, Defendants and Intervenors claim that Lindsay cannot satisfy Article III's case-or-controversy requirement

7

because it is not certain that she will make the team or be deemed eligible under the NCAA's rules. That argument seeks to relitigate issues already decided by this Court, misunderstands the law, and lacks any factual support.

As this Court already held, H.B. 500 harms Lindsay because it prevents her from even trying out for a place on the women's cross-country and track teams; whether she ultimately makes the team is "irrelevant." *Hecox*, 479 F. Supp. 3d at 960. That is so because "[t]he Supreme Court has long held that the 'injury in fact' required for standing in equal protection cases is denial of equal treatment resulting from the imposition of a barrier, not the ultimate inability to obtain the benefit." *Id.* (quoting *Ne. Florida Chapter of the Associated Gen. Contractors of Am. v. City of Jacksonville*, 508 U.S. 656, 666 (1993)) (collecting cases).

But in any event, Lindsay is a strong runner who has a reasonable chance of making the women's cross-country and track teams. Nothing about her running ability has materially changed since the complaint was filed that would render her claims moot. *Id.* at 960 n.15 (noting that Lindsay's allegations that "she has been training hard to qualify for such teams, that she is a life-long runner who competed on track and cross-country teams in high school, and that she will try out for the cross-country [and track] team[s] . . . are sufficient to establish standing for Lindsay's claims."). Lindsay "continue[s] to run and train athletically," (Hecox Decl. ¶ 23.) She also will maintain her fitness by playing women's club soccer this Spring. (*Id.* ¶ 25.) That Lindsay did not post a fast enough run during Fall 2020 tryouts does not mean she is incapable of ever making the team. Not every athlete performs their best every time they compete; even outstanding athletes sometimes have disappointing finishes. This is particularly true when an athlete is the subject of intense scrutiny and a state law that stigmatizes and demoralizes them. *Hecox*, 479 F. Supp. 3d at 987.

Lindsay also faces no "insurmountable" barrier to NCAA eligibility. *Clark*, 259 F.3d at 1012. Rather, she is poised to satisfy all relevant NCAA eligibility requirements, either directly or via an exception or waiver. (Pltf. Br. 3, 8 & n.3; Stip. ¶¶ 14–23; Ex. 2 (Ellen Staurowsky Decl.).) Lindsay is in good academic standing, having so far earned a 3.38 cumulative GPA. (Stip. ¶ 15.) Even assuming she were to earn merely a 1.0 GPA this Spring, she would *still* have a cumulative GPA above the minimum 2.0 required to be in good academic standing. (*Id.* (discussing NCAA Bylaw 14.01.2.1).) Lindsay also needs to complete just six credits this Spring to satisfy NCAA Bylaw 14.4.3.2, which requires a student-athlete to complete 40% of the requirements for her degree program by the start of her third year. (*Id.* ¶ 14.) She is enrolled in nine credits. (Hecox Decl. ¶ 12.) And if Lindsay makes the cross-country or track team, she can seek to qualify for the exception to NCAA Bylaw 14.4.3.1(b) set forth in 14.4.3.6(b). (Stip. ¶ 19.) If she does not qualify for the exception, Boise State can submit a waiver request on her behalf to the NCAA, consistent with its "general practice" of doing so for any student athlete "when there is a reasonable and good-faith justification for the request." (Stip. ¶ 23.)

Despite the clear path to satisfying all the NCAA's eligibility requirements for her to run track and cross-county in 2022, Defendants nonetheless contend that there is no live controversy because "much can change in a year," and Lindsay's eligibility depends on future events that are not preordained. (Def. Br. 17.) That is not the standard for assessing mootness. Indeed, if the lack of complete certainty about eligibility were enough to defeat Article III, *no* student athlete would ever be able to sustain a challenge to an athletics policy, because there will always be some possibility the student loses eligibility before competition begins.

### D. No "Contingency" Exists Here to Prevent Jurisdiction.

Not only is Lindsay's case not moot, but it is wholly unlike the cases Defendants and Intervenors cite in which courts declined to exercise jurisdiction because of "contingencies." (Def.

9

Br. 12, 15, 17; Intrv. Br. 5–6.) *Hall v. Beals*, 396 U.S. 45 (1969) (per curiam) held that a challenge to a state electoral policy became moot after the legislature abandoned the policy and the plaintiffs were no longer adversely affected. *Id*. at 48. Although the plaintiffs objected to an amended version of the policy, the Court held that those concerns rested on "speculative contingencies" unsupported by any evidence—specifically, the "unlikely" possibility that the plaintiffs would "move out of the State and then reestablish residence there within two months of the [next] presidential election." *Id*. at 49. There are no such far flung hypotheticals here. And *Doe No. 1 v. Reed*, 697 F.3d 1235 (9th Cir. 2012) held that a case seeking to enjoin state officials from releasing the names of people who signed petitions supporting a state referendum was moot because the petitions had already been made publicly available, so no effective relief could be granted. *Id*. at 1238. Unlike in Doe, here, effective relief can still be granted.[8]

## CONCLUSION

Lindsay is enrolled at Boise State and will begin classes there shortly. H.B. 500 prevents her from playing and trying out for women's sports teams there, as she intends to do. That is a live controversy requiring relief from this Court. Her case is not moot.[9]

---

[8] The other two cases they cite are *ripeness* cases, and do not involve any consideration of mootness. In *Texas v. United States*, 523 U.S. 296 (1998), the State sought a declaratory judgment that Section 5 of the Voting Rights Act did not apply to a complex state policy for sanctioning school districts. *Id.* at 297–300. The Supreme Court held that the claim was not ripe because the policy had never been deployed, and it was unclear whether or how it would ever be applied let alone how it would affect voting. *Id.* at 301–02. In *Trump v. New York*, 141 S. Ct. 530 (2020) (per curiam), the Supreme Court held that the plaintiffs' action was "premature" because they offered only "conjecture" as to how the government might implement its general policy goal. *Id.* at 535–37. Here, there is no uncertainty as to how H.B. 500 will affect Lindsay.

[9] Defendants suggest in a footnote that the Court should vacate any portions of the preliminary injunction decision that grant relief only to Kayden Hulquist (formerly Jane Doe) or analyze only her claims. *See* Def. Br. 2 n.1. Plaintiffs oppose that request. *United States v. Munsingwear*, 340 U.S. 36 (1950), addresses a possible procedure when an entire case is rendered moot. *Id.* at 39–40. Defendants do not cite any case where one of many plaintiffs was dismissed and a court then vacated the portions of an opinion referring to that plaintiff. Because vacatur is outside the scope of the instant briefs, Plaintiffs request the opportunity to submit separate briefing on the *Munsingwear* question should the Court wish to consider Defendants' request.

Dated: December 3, 2021

Respectfully submitted,

/s/ Kathleen Hartnett

Richard Eppink (Bar No. 7503)
Aadika Jaspal Singh*
AMERICAN CIVIL LIBERTIES UNION OF IDAHO FOUNDATION
P. O. Box 1897
Boise, ID 83701
T: (208) 344-9750
REppink@acluidaho.org
Asingh@acluidah.org

James Esseks*
Chase Strangio*
AMERICAN CIVIL LIBERTIES UNION FOUNDATION
125 Broad St.,
New York, NY 10004
T: (212) 549-2569
jesseks@aclu.org
cstrangio@aclu.org

Catherine West*
LEGAL VOICE
907 Pine Street, Unit 500
Seattle, WA 98101
T: (206) 682-9552
F: (206) 682-9556
cwest@legalvoice.org

Kathleen R. Hartnett*
Julie M. Veroff*
COOLEY LLP
3 Embarcadero Center, 20th Floor
San Francisco, CA 94111-4004
T: (415) 693-2000
F: (415) 693-2222
khartnett@cooley.com
jveroff@cooley.com

Andrew D. Barr*
COOLEY LLP
1144 15th Street, Suite 2300
Denver, CO 80202
T: (720) 566-4000
F: (720) 566-4099
abarr@cooley.com

Elizabeth F. Reinhardt*
COOLEY LLP
500 Boylston Street
Boston, MA 02116
T: (617) 937-2300
F: (617) 937-2400
ereinhardt@cooley.com

Katelyn L. Kang*
COOLEY LLP
55 Hudson Yards
New York, NY 10001
T: (212) 479-6000
F: (212) 479-6275
kkang@cooley.com

*Attorneys for Plaintiffs*

\* Admitted *pro hac vice*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on December 3, 2021, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which sent a Notice of Electronic Filing to the following persons:

Bruce D. Skaug (bruce@skauglaw.com)
Roger G. Brooks (rbrooks@ADFlegal.org)
Kristin Waggoner (kwaggoner@ADFlegal.org)
Raul R. Labrador (raul@skauglaw.com)
Christiana Holcomb (cholcomb@ADFlegal.org)

*Attorneys for Intervenors*

Cory M. Carone (cory.carone@ag.idaho.gov)
Steven L. Olsen (steven.olsen@ag.idaho.gov)
W. Scott Zanzig (scott.zanzig@ag.idaho.gov)
Dayton P. Reed (dayton.reed@ag.idaho.gov)
Matthew K. Wilde (mattwilde@boisestate.edu)

*Attorneys for Defendants*

*/s/ Kathleen Hartnett*
Kathleen Hartnett