UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| LINDSAY HECOX,<br><br>    Plaintiff,<br><br>v.<br><br>BRADLEY LITTLE, et al.,<br><br>    Defendants. | Case No. 1:20-cv-00184-DCN<br><br>**MEMORANDUM DECISION AND ORDER** |

## I. INTRODUCTION

Before the Court is Defendants' Motion to Strike Notice of Voluntary Dismissal. Dkt. 147. Plaintiff Lindsay Hecox opposes the Motion. Dkt. 150. Upon review, and for the reasons set forth below, the Court GRANTS Defendant's Motion and STRIKES Hecox's Notice of Voluntary Dismissal.[1]

## II. BACKGROUND

This case has a long factual and procedural history. The Court assumes the reader's general familiarity with this case and will only give a brief recitation of those facts necessary to put today's discussion in context.[2]

On March 30, 2020, Idaho Governor Bradley Little signed the Fairness in Women's

---

[1] The Court finds the facts and legal arguments are adequately presented and will decide the Motion on the record and without oral argument. Dist. Idaho Loc. Civ. R. 7.1(d)(1)(B).

[2] For a more detailed review, the Court points the reader to its original decision and the Ninth Circuit's subsequent affirmances. *See Hecox v. Little*, 479 F. Supp. 3d 930, 972 (D. Idaho 2020), *aff'd*, No. 20-35813, 2023 WL 1097255 (9th Cir. Jan. 30, 2023), and *aff'd*, 79 F.4th 1009 (9th Cir. 2023), and *aff'd in part, vacated in part, remanded*, 104 F.4th 1061 (9th Cir. 2024), *as amended* (June 14, 2024).

Sports Act (the "Act") into law. The Act went into effect on July 1, 2020. Idaho Code § 33-6201. Hecox is a transgender female athlete who sought to participate in women's sports at Boise State University but was precluded from doing so under the Act. Hecox (and another Plaintiff[3] who has since been dismissed) sued, and the Court preliminarily enjoined the Act. Little appealed and the Ninth Circuit affirmed. Intervening changes in the rule of law—regarding the scope of injunctions—and changes regarding the Plaintiffs' standing—including academic status and continued interest in sports—took the case back and forth between this Court and the Ninth Circuit for some time.

Following the Ninth Circuit's most recent decision in this matter—affirming in part, vacating in part, and remanding (Dkt. 124)—Little sought a writ of certiorari with the United States Supreme Court. *See* Dkt. 130. On August 2, 2024, the Court held an informal video conference with the parties to discuss case management moving forward. Dkt. 131. Central to that discussion was the parties' desire to stay all proceedings in this case pending the outcome of Little's cert petition. *See generally id*.

The parties subsequently filed a stipulation regarding a stay. Dkt. 135. The parties disagreed on a single aspect of the stay: whether briefing on an additional motion to intervene should be allowed during the stay. *Id*. at 10–11. Plaintiffs advocated for the stay to prohibit any action, including briefing on the proposed motion to intervene, while Little and the Proposed Intervenors felt the stay should exempt motion. *Id*. The Court ultimately agreed with Hecox and stayed all proceedings. Dkt. 137, at 4. The Court also specifically

---

[3] The previously dismissed Plaintiff was not transgender. She was a cisgender female athlete who sued because the new law subjected her to treatment differently than a cisgender male.

MEMORANDUM DECISION AND ORDER - 2

noted that any motion to intervene would have to wait until "after the stay is lifted." *Id*.

On July 3, 2025, the United States Supreme Court granted Little's petition for certiorari. *Little v. Hecox*, 145 S. Ct. 2871 (2025). The Supreme Court also granted review in a similar case out of West Virginia. Briefing before the Supreme Court commenced.

On September 2, 2025, Hecox filed a Notice of Voluntary Dismissal (the "Notice") pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(i). Dkt. 141. Hecox simultaneously filed a Suggestion of Mootness with the Supreme Court. Hecox's Notice was a simple one-line dismissal; however, she has subsequently represented that the Notice was motivated by significant personal and family challenges—including negative publicity from this case—and her decision to no longer pursue collegiate sports. Dkt. 150, at 6.

Shortly after Hecox's filing, Defendants contacted the Court and requested an opportunity to respond to Hecox's Notice. Dkt. 142. Based upon informal communications between the Court and counsel, a briefing schedule was outlined allowing the parties to fully address the matter. *See* Dkts. 142, 150.

Little moved to Strike Hecox's Notice on September 8, 2025. Dkt. 147. Hecox responded (Dkt. 150) and Little replied (Dkt. 152). The matter is ripe for review.

### III. DISCUSSION

The parties' dispute centers on the interplay between the Court's stay order and Rule 41. The Court begins with the text of those two items. It will then discuss the parties arguments and summarize its own research.

First, the Court's stay order provided that ". . . the proceedings in this case are **STAYED** until the United States Supreme Court finally disposes of the petition for a writ

MEMORANDUM DECISION AND ORDER - 3

of certiorari in *Little v. Hecox*, No. 24-38, and issues a judgment, and if applicable, the Ninth Circuit issues its Mandate in Appeal Nos. 20-35813 and 20-35815." Dkt. 137, at 4 (emphasis in original).

Second, under Rule 41, a Plaintiff may voluntarily dismiss his or her case "without a court order by filing [] a notice of dismissal before the opposing party serves either an answer or a motion for summary judgment[.]" Fed. R. Civ. P. 41(a)(1)(A)(i). While this case is over five years old, no party has filed an answer. Thus, Hecox filed her Notice consistent with Rule 41(a)(1)(A)(i).

The question then, is what effect the prior stay has on Hecox's Notice, if any. Hecox believes she is within her right to file the Notice and, once she did so, the dismissal was perfected. In other words, Hecox believes this case is already complete.

Little, for his part, argues the Court's stay precludes Hecox's Notice and, as a result, the Court should strike the same. Little primarily bases his Motion on three inter-related legal principles and three legal cases.

First, Little alleges Hecox's Notice is simply void. Because a stay is currently in place, Hecox cannot file any new documents (including dismissal documents) without first lifting the stay. Second, and relatedly, Little claims Hecox is judicially estopped from filing her Notice because doing so directly contradicts her agreement to stay these proceedings. Little emphasizes that Hecox herself pushed for an all-inclusive stay—one which barred the Court from addressing a nonparty's motion to intervene. Third, Little also contends Hecox waived her right to file the Notice because she agreed to stay this case *until* the Supreme Court issues a final ruling and/or the Ninth Circuit issues a mandate.

Little relies mainly on three cases to support his arguments. First, he claims the Supreme Court's recent decision in *Smith v. Spizzirri* makes clear a court cannot dismiss a case when a stay is in place. 601 U.S. 472, 477 (2024). Second, Little highlights another recent Supreme Court decision that held a court-ordered stay prevents any proceedings from occurring and a voluntary dismissal qualifies as a "proceeding" under the Rules. *Waetzig v. Halliburton Energy Services, Inc.*, 604 U.S. 305 (2025). Third, Little points to *USX Corporation v. Penn Central Corporation*, and the Third Circuit's holding that a court-ordered stay precludes a voluntary dismissal. 130 F.3d 562 (3d Cir. 1997).

Hecox begins her opposition by arguing Rule 41 does not even permit the Court to examine her Notice and that her Notice was effective immediately. In fact, Hecox goes so far as to say the Court has "los[t] jurisdiction and cannot exercise discretion with respect to the terms and conditions of the dismissal." Dkt. 150, at 9 (citing *Com. Space Mgmt. Co. v. Boeing Co.*, 193 F.3d 1074, 1076 (9th Cir. 1999)).

Hecox also disagrees with Little's allegations that she is taking an inconsistent position or otherwise thwarting the stay, arguing she has not done anything to move this case forward (which is what the stay prevented). Quite the opposite: she wishes to end this case altogether.

Hecox next distinguishes Little's supporting caselaw by noting those cases addressed issues not relevant here—*Spizzirri* dealt with whether the Federal Arbitration Act allowed a court to dismiss, rather than stay, a case subject to arbitration; *Waetzig* held a voluntary dismissal was a final proceeding *under Rule 60(b)*; and *USX* held courts of appeals should defer to district courts' understandings of their own stay orders.

MEMORANDUM DECISION AND ORDER - 5

In sum, Hecox asserts it was her right to file the Notice and there is nothing Little, or the Court, can do about it.

The Court has conducted its own independent research on the question presented. Unfortunately, a clear answer remains elusive. Thus, what follows is the Court's analysis and interpretation of certain principles *as applied solely to this case.*

To begin, Hecox is correct that a notice of dismissal under Rule 41(a)(1)(A)(i) is *normally* self-executing[4] and that "[t]here is nothing the defendant can do to fan the ashes of that action into life and the court has no role to play." *Pedrina v. Chun*, 987 F.2d 608, 610 (9th Cir. 1993) (cleaned up). But this supposes a dismissal cannot be supplanted by other factors. Such a premise is false. By way of example, numerous courts have held a Rule 41 dismissal in the prisoner context is "subordinate to" the statutory provisions of 28 U.S.C. § 1915A. *Aldrich v. United States*, 2015 WL 4448118, at *1 (D. Mass. July 17, 2015) (collecting cases).[5]

---

[4] The Court can represent this principle is not well understood. On almost a weekly basis, the Court receives a notice of dismissal pursuant to subsection (i) or (ii) of Rule 41(a)(1)(A) in one of its cases. After verifying the dismissal meets the requirements of the Rule, the Court simply closes the case in its Case Management System—without a court order. Roughly half the time this happens it isn't long before one of the parties emails or calls the Court asking when the Court is going to enter a dismissal order. The Court's law clerks explain an order is unnecessary under Rule 41(a)(1)(A). If the party persist in seeking an order for a specific purpose, the Court will often oblige. For example, sometimes a pro se party is confused if the case is "really closed" or a state agency is a party and requests a formal order from the Court confirming the case is terminated so that it can undertake other related action. Entering such an order takes the Court less than five minutes. And to the extent it helps a party, the Court does not necessarily mind the request. But to reiterate, such an order is completely unnecessary under the Rule. It is, to borrow a phrase from the bankruptcy court, something akin to a "comfort order."

[5] Rule 41 itself outlines that a dismissal without a court order is "subject to" various rules and provisions. Now, there does not appear to be any applicable rule or provision barring Hecox's Notice in this case, only the Court's stay. Thus, the question remains how much weight the Court should give its own stay.

MEMORANDUM DECISION AND ORDER - 6

Stepping back, the Court has the "inherent power to control [its] docket." *See In re Phenylpropanolamine (PPA) Prods. Liab. Litig.*, 460 F.3d 1217, 1227 (9th Cir. 2006). The Court sees no reason suggesting why that power should not apply to dismissal notices—when necessary. For example, if a notice was filed in error or failed to comply with Rule 41, the Court would be within its power to reject the notice or grant the filing party leave to amend or refile. Here, the Court has imposed a stay. And that stay was for "the proceedings in this case;" nothing was exempted. Dkt. 137, at 4. The Court has the authority to interpret its stay order and control its docket and any filings as it deems appropriate and in accordance with Rule 1's mandate to "secure the just, speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1.

In short, the Court finds it has jurisdiction to evaluate a notice of voluntarily dismissal for compliance with Rule 41 and, as here, its own order.

The question then becomes whether dismissals are exempt from a stay. Within the cases Little cites are several lines which are, on balance, helpful to his argument that dismissals are prohibited when a stay is in place. But the Court also agrees with Hecox that those helpful lines were written in different contexts: the FAA, Rule 60, and the interplay between appellate and district courts. None of the cases squarely state a party cannot dismiss his or her own case while a stay is in effect.

What little caselaw the Court independently located did not directly answer the question of whether a stay voids or completely bars subsequent filings—including

dismissal.⁶ In like manner, however, the Court could also not locate any case suggesting a Rule 41 dismissal takes precedence over a valid stay, let alone a stay of all proceedings the dismissing party readily agreed to in the first place.⁷ Generally speaking, the Court agrees with Little that there is an absence of caselaw indicating a party can unilaterally cancel or nullify a stay by filing a Rule 41 dismissal and doing so seems contrary to the point of a stay. Though in fairness to Hecox, the Court could also not locate any case indicating that such action is forbidden. In short, Little's "voidness" argument, while attractive, lacks clear legal support.

Likewise, the doctrine of judicial estoppel appears helpful to Little's argument at first blush. The Court does not like the idea that Hecox is, essentially, "seeking a second advantage by taking an incompatible position." *Helfand v. Gerson*, 105 F.3d 530, 534 (9th Cir. 1997) (cleaned up). But Hecox argues her position here is not, strictly speaking, incompatible with her prior position. The Court agrees it is difficult to determine whether ending a case is incompatible with staying a case. In one sense staying a case and

---

⁶ Not every stay precludes future filings, including voluntary dismissal. The Court has, on prior occasions, imposed limited or targeted stays as opposed to a stay of "all proceedings." For example, the Court has stayed briefing or deadlines pending the outcome of other actions. Stays are entered in cases for various reasons and their scope can vary widely. Here, the stay was, by all accounts, as broad as possible.

⁷ The Court reviewed its own cases and found is has not been consistent in how it has handled the interplay between stays and dismissals in the past. For example, there have been occasions when a case was stayed, and the parties notified the Court the matter settled. The Court simply termed the case (without lifting the stay) and entered an order dismissing the case (while the stay was arguably still in effect). *See, e.g.,* Case No. 2:22-cv-00399-DCN, Dkts. 143, 152. Other times, parties agreed to stay proceedings for a set period pending settlement negotiations. In some cases, the settlement occurred *before* the expiration of the stay and, as before, the Court entered a dismissal order without first lifting the stay. *See, e.g.,* Case No. 1:22-cv-00195-DCN, Dkts. 49, 51. Other unique circumstances have occurred. *See, e.g.,* Case No. 4:21-cv-00263-DCN, Dkts. 22, 25 (Case stayed pending arbitration. Once arbitration was complete, the parties stipulated to dismissal and the Court ordered the same (without officially lifting the stay); Case No. 1:20-cv-00477-DCN, Dkts. 9, 13 (Case stayed pending decision by MDL panel. MDL panel decided to take the case, and the case was transferred (without lifting the stay). The above orders were procedural and not published on Westlaw; therefore, the Court has included its own internal case numbers and docket citations for reference.

MEMORANDUM DECISION AND ORDER - 8

dismissing a case seem incongruent, but as noted in the Court's examples, *see infra* footnote 6, parties often stay cases *because* a settlement or dismissal is imminent. In this case, however, the Court is not aware of any indications *when the parties agreed to the stay* that settlement or dismissal was on the table. Thus, under the circumstances, it does seem Hecox's position now is incongruent with her earlier position.

The Court is somewhat persuaded by the idea that Hecox waived her right to file a notice of voluntary dismissal—at least temporarily. Waiver can occur unless expressly prohibited—not the other way around. As the Supreme Court outlined in *United States v. Mezzanatto*, ". . . absent some affirmative indication of Congress' intent to preclude waiver," the Court has "presumed that statutory provisions are subject to waiver by voluntary agreement of the parties." 513 U.S. 196, 201 (1995). Thus, the party claiming waiver is unavailable "bears the responsibility of identifying some affirmative basis for [so] concluding." *Id*. at 204. Here, Hecox has not pointed to any language in Rule 41 suggesting dismissal is immune from wavier. And while Rule 41 is not a "statutory provision," it is reasonable to assume the same principles of equity and fair play outlined in *Mezzantto* allowing for waiver by voluntary agreement as to statutory rights applies to the Rules of Civil Procedure as well.[8]

The Court has, thus far, shared its concerns and oscillated between arguments it finds more, or less, appealing than others. It has referenced its own procedures and noted the lack of strict uniformity. To put it simply, the Court has struggled with the correct

---

[8] As the Court noted above, however, the applicability of a case holding vis-a-vis related principles or situations is a balance.

MEMORANDUM DECISION AND ORDER - 9

outcome in this matter. Ultimately, the Court finds it appropriate to grant Little's Motion to Strike based on the idea that the stay in this matter was universal and Little's arguments surrounding equity. The Court feels this approach is more holistic and adequately weighs all interests, including the Court's interests in organization and fairness.

While a Plaintiff is the master of his or her complaint, the Plaintiff is still bound by principles of fairness and economy. The State of Idaho has defended this case vigorously for years. It would be fundamentally unfair to abandon the issue now on the eve of a final resolution.[9] The Court does not mean to romanticize the issue, but Hecox (and similarly situated individuals), as well as the citizens of Idaho, deserve to have these important legal questions answered. And while the West Virginia case will, by all accounts, continue before the Supreme Court, the two states' laws and the two cases are slightly different. Simply put, the parties and the public have a vested interest in finality on the issues presented in this case.

Litigation involves strategy, but strategy should not overshadow impartiality and justice. Hecox has prevailed thus far in the litigation. The current Ninth Circuit decision is, therefore, the governing law on this issue. Notably, the Ninth Circuit relied significantly on its decision in this case to reach a similar conclusion regarding Arizona's women's sports laws. *See Doe v. Horne*, 115 F.4th 1083, 1102 (9th Cir. 2024) (*citing Hecox v. Little*, 104 F.4th 1061, 1079 (9th Cir. 2024)). Other cases—including cases the undersigned

---

[9] The problem, of course, is now the Court is requiring a party to litigate a case that party no longer wishes to pursue. Such a course of action seems problematic. But again, Hecox agreed to a stay of all proceedings in this case. She cannot escape the realities of that agreement (or the impact of the Court's order) simply because she has had a change of heart.

MEMORANDUM DECISION AND ORDER - 10

currently presides over or which are on appeal—have also relied on the Ninth Circuit's decision in this case. *See, e.g., Sexuality & Gender All. v. Critchfield,* 2025 WL 2256884, (D. Idaho Aug. 7, 2025); *Jones v. Critchfield,* 2025 WL 2430468 (D. Idaho Aug. 23, 2025). A dismissal at this stage without a vacatur of the Ninth Circuit's related decisions—which this Court does not have the authority to impose and which Hecox does not request—would leave these critical questions in limbo. Idaho has secured a writ of certiorari. It has a fair right to have its arguments heard and adjudicated once and for all.[10]

### IV. CONCLUSION

The Court does not make this decision lightly. The Court is also not affirmatively finding that one type of procedural mechanism—a stay or dismissal—unequivocally supersedes the other. What the Court is finding is that, based on the unique circumstances *in this case*, Hecox's Notice contravenes the stay currently in place and flaunts principles of equity and fairness and is, thus, void.[11]

As noted, a similar motion is currently pending before the Supreme Court. The Court does not know the Supreme Court's timing or how it will ultimately resolve the issue.

---

[10] Hecox flatly states that Little (and Idaho) should be happy she is dismissing this suit because it is getting what it wanted—its law in effect without a legal challenge or injunction. But again, if Hecox dismisses this case and the Ninth Circuit's decision is vacated, what is to prevent another individual from taking up Hecox's mantel and bringing an identical suit. The parties (and the Court) would be back to square one.

[11] As a final matter, Hecox requests that in the event the Court finds her Notice invalid, it should, nonetheless, dismiss the case under Rule 41(a)(2) on mootness grounds. First, the Court never reaches these arguments as it finds Hecox's notice is invalid, the stay is still in place, and the only information the Court has regarding mootness came in the current briefing. Second, the Court (and the Ninth Circuit) have been down this path before. *See* Dkts. 105, 107. While it appears more likely than before that Hecox will not re-engage in collegiate sports, she could still change her mind. Third and finally, the Court feels this mootness argument is, as above, somewhat manipulative to avoid Supreme Court review and should not be endorsed. *See City of Erie v. Pap's A.M.*, 529 U.S. 277, 288 (2000). Accordingly, the Court finds it inappropriate to dismiss the case on mootness grounds.

However, should the Supreme Court disagree with the undersigned's analysis, the undersigned will, of course, defer. For its part, however, the Court finds it appropriate to grant Little's Motion to Strike for the reasons outlined above. Hecox's Notice of Dismissal is, therefore, STRICKEN from the record. This case remains pending (albeit stayed).

## V. ORDER

1. Little's Motion to Strike (Dkt. 147) is GRANTED.
2. Hecox's Notice of Voluntary Dismissal (Dkt. 141) is STRICKEN.
3. This case remains active and pending.

DATED: October 14, 2025

_____
David C. Nye
Chief U.S. District Court Judge